# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL AURANDT, on Behalf of Herself and All Others Similarly Situated, | **Case No. 3:15-cv-00275 KRG** |
| Plaintiff, | |
| v. | |
| CAREY V. BROWN, RONALD BEAVER, CREDIT PAYMENT SERVICES, INC. ("CPS"), MYCASHNOW.COM, INC. ("MYCASHNOW"), CREDIT PROTECTION DEPOT, INC. ("CPD"), ACH FEDERAL, LLC, ("ACH FEDERAL"), DISCOUNT ADVANCES, INC. ("DISCOUNT ADV."), PAY DAY MAX, LTD. ("PAYDAYMAX"), OWLS NEST, LLC ("OWLS NEST"), MILLENIUM FINANCIAL CONCEPTS INC. ("MILLENIUM"), SUPPORT SEVEN, LLC ("SUPPORT SEVEN"), AND ADDITIONAL UNKNOWN DEFENDANTS, | **JUDGE KIM R. GIBSON** |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

I.   Background ...................................................................................................2

II.  Argument ....................................................................................................2

    A.   Standard for Dismissal Based Upon Failure to State A Claim ............2

    B.   Plaintiff's RICO Conspiracy Claim Should be Dismissed Since
        it is Time-Barred, Plaintiff has Failed to State a Claim, and
        Plaintiff Lacks Standing .......................................................................3

        1.   Plaintiff's Conspiracy Count is Time-Barred ............................4

        2.   Plaintiff's Failure To Comply With Local Rule 7.1
            Requiring a RICO Case Statement Mandates Dismissal
            of the RICO Conspiracy Count...................................................6

        3.   Plaintiff Has Failed to State A Claim Because the RICO
            Conspiracy Count is Speculative and Conclusory.....................7

            a.   Plaintiff Has Not Alleged A RICO Enterprise ................8

            b.   Plaintiff has not pled an agreement among the
                defendants. .......................................................................9

            c.   Plaintiff has not pled knowledge. .................................11

        4.   Plaintiff Lacks Standing............................................................12

    C.   Plaintiff's Pennsylvania Usury Claim is Barred by the Statute of
        Limitations and the Usury Count Fails to State A Claim As to
        the Other States and the District of Columbia ....................................13

    D.   The Complaint Fails to State A Claim for Relief For Violations
        of the Fair Debt Collections Practices Act ("FDCPA").....................14

        1.   The Complaint Fails to Allege that Any of the
            Defendants are a "Debt Collector" Subject to Liability
            under the FDCPA......................................................................14

2. Plaintiff Fails to Allege Specific Conduct by a Defendant that Violated the FDCPA .........................................................17

E. Plaintiff Has Failed to State A Claim for Relief for Breach of Fiduciary Duty, Breach of Implied Duty of Confidentiality, and Invasion of Privacy.................................................................................18

1. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Because the Law Does Not Recognize a Fiduciary Relationship Between a Borrower and a Lender. .....................18

2. Plaintiff Fails to State A Claim For Counts Four and Five Because There Is No Private Right of Action Under the GLBA .....................................................................................19

F. Plaintiff's Claims Must Be Dismissed Because the Putative Class is an Impermissible Fail-Safe Class ..........................................20

G. Filing of the Complaint Violated the Arbitration Provision in the Loan Agreement, Which Serves As An Alternative Basis to Dismiss the Complaint in its Entirety ..................................................22

III. Conclusion ....................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
    483 U.S. 143 (1987)..................................................................4

*American Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ................................................9

*Anderson v. Ayling*,
    396 F.3d 265 (3d Cir. 2008) ...................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................2, 3, 13, 20

*Beck v. Prupis*,
    529 U.S. 494 (2000)................................................................12

*Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*,
    585 F.2d 39 (3d Cir. 1978) ......................................................25

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................17

*Brown v. Card Serv. Ctr.*,
    464 F.3d 450 (3d Cir. 2006) ...................................................15

*Burnett v. Mortgage Elec. Registration Sys., Inc.*,
    706 F.3d 1231 (10th Cir. 2013) ..............................................18

*Castle v. Crouse*,
    No. 03-5252, 2004 WL 257389 (E.D. Pa. Feb. 11, 2004)..................10

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)..................................................................8

*Cetel v. Kirwan Fin. Group, Inc.*,
    460 F.3d 494 (3d Cir. 2006) .................................................4, 5

*Digital Signal, Inc. v. VoiceStream Wireless Corp.*,
   156 Fed. Appx. 485 (3d Cir. 2005) ..................................................................22

*District 1199P Health and Welfare Plan v. Janssen, L.P.*,
   Nos. 06-3044, 07-2608, & 07-2860, 2008 WL 5413105 (D.N.J.
   Dec. 23, 2008) ...............................................................................................10

*Dunmire v. Morgan Stanley DW, Inc.*,
   475 F.3d 956 (8th Cir. 2007) .........................................................................20

*Eichorn v. AT&T Corp.*,
   248 F.3d 131 (3d Cir. 2001) ...........................................................................10

*F.T.C. v. Check Inv'rs, Inc.*,
   502 F.3d 159 (3d Cir. 2007) ...........................................................................15

*Figueroa Ruiz v. Alegria*,
   896 F.2d 645 (1st Cir. 1990) .............................................................................6

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) .............................................................................12

*Forbes v. Eagleson*,
   228 F.3d 471 (3d Cir. 2000) .........................................................................4, 5

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) .......................................................................3, 18

*Heimbecker v. 555 Associates*,
   No. 01–6140, 2003 WL 21652182 (E.D. Pa. Mar. 26, 2003) .............................4

*Hornicek v. Cardworks Servicing, LLC*,
   2011 WL 2623274 (E.D. Pa. Jun. 29, 2011) ....................................................25

*Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*,
   602 F.3d 237 (3d Cir. 2010) ...........................................................................11

*Hughes v. Technology Licensing Consultants, Inc.*,
   815 F. Supp. 847 (W.D. Pa. 1992)...............................................................10, 11

*In re Insurance Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ..........................................................................7, 8

*In re Insurance Brokerage Antitrust Litigation*,
   618 F.2d at 369 ..................................................................................9

*Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc.*,
   998 F.2d 145 (3d Cir. 1993) ..............................................................24

*Johnston v. Baker*,
   445 F.2d 424 (3d Cir. 1971) ..............................................................10

*Kucher v. Alternative Treatment Center of Paterson, LLC*,
   No. 05-cv-3733, 2006 WL 2527851 (E.D.N.Y. Aug. 29, 2006).......................11

*Kurz v. Mairone*,
   No. 86-5587, 1987 WL 28360 (E.D. Pa. Dec. 18, 1987) ....................................6

*In re Lenz*,
   448 B.R. 832 (Bankr. D. Or. 2011) ....................................................20

*Lightning Lube v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ..................................................................7

*Maio v. Aetna, Inc.*,
   221 F.3d 472 (3d Cir. 2000) ..............................................................12

*Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*,
   792 F.2d 341 (3d Cir. 1986) ..................................................................7

*McCracken v. Ford Motor Co.*,
   588 F. Supp. 2d 635 (E.D. Pa. 2008).....................................................4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)............................................................................23

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
   460 U.S. 1, 103 S.Ct. 927 (1983).................................................23, 24

*Odesser v. Continental Bank*,
   676 F. Supp. 1305 (E.D. Pa. 1987)......................................................8

*Owens v. JP Morgan Chase Bank*,
   No. 12-1081, 2013 WL 2033149 (W.D. Pa. May 14, 2013)............................15

*Palcko v. Airborne Express, Inc.*,
   372 F.3d 588 (3d Cir. 2004) ..............................................................................22

*Paradise Hotel Corp. v. Bank of Nova Scotia*,
   842 F.2d 47 (3d Cir. 1988) ................................................................................18

*Parness v. Christie*,
   No. 15-3505, 2015 WL 4997430 (D.N.J. Aug, 19, 2015)...................................4

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) ..............................................................................2

*Petrochem Insulation, Inc. v. Northern Cal. & Northern Nevada Pipe Trades Council*,
   No. 90-CV-3628, 1992 WL 131162 (N.D. Cal. Mar. 19, 1992),
   aff'd, 8 F.3d 29 (9th Cir. 1993) ...........................................................................6

*Pleskovich v. Ford Motor Co.*,
   Nos. 12cv05748 & 12cv0547, 2012 WL 1893578 (W.D. Pa. May 24, 2012). Civil ................................................................................................4

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   7 F.3d 1110 (3d Cir. 1993) ................................................................................24

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*,
   359 F.3d 226 (3d Cir. 2004) ...........................................................................4, 5

*Rivera v. AT&T Corp.*,
   141 F. Supp. 2d 719 (S.D. Tx. 2001).................................................................9

*Ruff v. Am.'s Servicing Co.*,
   No. 07-0489 ......................................................................................................15

*Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*,
   633 F. Supp. 386 (D. Del. 1986)......................................................................10

*Shearson/American Express, Inc. v. McMahan*,
   42 U.S. 220 (1986)......................................................................................24, 25

*Sherer v. Green Tree Servicing LLC*,
   548 F.3d 379 (5th Cir. 2008) ...........................................................................25

*Somerset Consulting, LLC v. United Capital Lenders, LLC*,
   832 F. Supp. 2d 474 (E.D. Pa. 2011) ................................................................22

*Sundance Land Corp. v. Community First Federal Sav. and Loan
   Ass'n*,
   840 F.2d 653 (9th Cir. 1988) ............................................................................8

*Temp-Way Corp. v. Cont'l Bank*,
   139 B.R. 299 (E.D. Pa. 1992) *aff'd*, 981 F.2d 1248 (3d Cir. 1992) .................19

*U.S. v. Riccobene*,
   709 F.2d 214 (3d Cir. 1983) ..........................................................................8, 9

*United Nat'l Ins. Co. v. Equip. Ins. Managers*,
   Nos. 95-0116 & 95-2892, 1995 WL 631709 (E.D. Pa. Oct. 27,
   1995) ................................................................................................................10

*Warren v. Wells Fargo Bank, N.A. ex rel. Wells Fargo Bank Minn.,
   N.A.*,
   No. 2:15-CV-1067, 2015 WL 6393111 (W.D. Pa. Oct. 21, 2015) ....................17

*Washington Steel Corp. v. TW Corp.*,
   602 F.2d 594 (3d Cir. 1979), overruled on other grounds by *Clark
   v. K-Mart Corp.*, 979 F.2d 965 (3d Cir. 1992) ................................................19

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
   80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) .....................................................21, 22

*Zavala v. Wal-Mart Stores, Inc.*,
   No. 2:10–05301, 2013 WL 396133 (D.N.J. Jan. 31, 2013) ................................4

**Statutes**

*15 U.S.C. § 1692* ..................................................................................................21

15 U.S.C. §§ 1692a–1692o .................................................................................14

15 U.S.C. § 1692a(4) ...........................................................................................15

15 U.S.C. § 1692a(6) ...........................................................................................15

15 U.S.C. §§ 6801–6809 .....................................................................................19

15 U.S.C. § 6805 ..................................................................................................20

18 U.S.C. §§ 1961-1968 ........................................................................6

18 U.S.C. § 1962 .............................................................................12, 13

18 U.S.C. § 1962(c) ......................................................................*passim*

18 U.S.C. § 1962(d) ......................................................................*passim*

18 U.S.C. § 1964 .................................................................................12

Fair Debt Collection Practices Act, 15 U.S.C. § 1692a – 1692o...................1, 2, 14

41 PA. CONS. STAT. §§ 201 and 502 .....................................1, 2, 13, 14

*Pennsylvania Usury Laws* .................................................................21

Racketeer Influenced and Corrupt Organizations Act.....................*passim*

Telephone Consumer Protection Act ....................................................17

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................2, 3

Fed. R. Civ. P. 8 and 23 ..............................................................21, 22

Fed. R. Civ. P. 12(a)(4)(A) ...............................................................25

Fed. R. Civ. P. 12(b)(6)........................................................1, 2, 4, 17

Fed. R. Civ. P.(b)(2)(E) ....................................................................27

Local Civ. R. 7 ....................................................................................1

Local Civil Rule 7.1 .............................................................................6

## BRIEF OF THE MOVING DEFENDANTS IN SUPPORT OF THEIR MOTION
## TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Carey V. Brown ("Brown"), ACH Federal LLC ("ACH Federal"), Credit

Payment Services, Inc. ("CPS"), Credit Protection Depot, Inc. ("CPD"), Owls Nest, LLC ("Owls

Nest"), and Millenium Financial Concepts Inc. ("Millenium") (collectively, the "Moving

Defendants"), move this Court to dismiss this action for failure to state a claim under Fed. R.

Civ. P. 12(b)(6).[1] The Moving Defendants make this Motion on the grounds that (i) Plaintiff's

allegation of RICO conspiracy under 18 U.S.C. § 1962(d) is time-barred; (ii) Plaintiff has failed

to adhere to this Court's standing order under Local Civ. R. 7; (iii) Plaintiff has not pled the

elements of enterprise, knowledge, or agreement as required to sustain a RICO conspiracy claim

under 18 U.S.C. § 1962(d); (iv) Plaintiff lacks standing under 18 U.S.C. § 1962(d); (v) Plaintiff's

allegation of usury under 41 PA. CONS. STAT. §§ 201 and 502 is time-barred; (vi) Plaintiff has

not pled the elements required to sustain an allegation of usury in violation of  any jurisdiction

other than Pennsylvania; (vii) Plaintiff has not pled the elements of "debt collector" or specific

misconduct under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a –

1692o; (viii) Plaintiff's allegations of breach of fiduciary duty and breach of the implied duty of

confidentiality fail because, as a matter of law, Defendants do not owe Plaintiff a fiduciary duty;

(ix) Plaintiff's allegations of breach of fiduciary duty, breach of the implied duty of

confidentiality, and invasion of privacy fail because the Gramm-Leach-Bliley Act ("GLBA")

does not create a private right of action; (x) Plaintiff's putative class is an impermissible fail-safe

---

[1] This Motion is filed solely on behalf of the Moving Defendants because, to date, none of the
remaining Defendants have been properly served. Defendants reserve the right to file a Motion to
Dismiss on behalf of MyCashNow, Discounts Advances, Inc., PayDayMax, or Support Seven,
should they be properly served in a timely manner. Even if Plaintiff properly serves Ronald
Beaver, counsel for the Moving Defendants does not intend to represent him in this matter.

class; and (xi) Plaintiff's claims are subject to arbitration, not litigation.[2]

## I.      Background

On October 9, 2009, Plaintiff Crystal Aurandt ("Plaintiff") and Defendant MyCashNow executed a Loan Agreement, attached and incorporated herein as Exhibit 1.[3] Compl. ¶39. Within "weeks of receiving the loan," Plaintiff repaid it. *Id.* ¶¶24, 40. Nearly six years later, on or about October 23, 2015, Plaintiff filed a Complaint against Defendants in the United States District Court for the Western District of Pennsylvania, alleging various federal and state law claims stemming from the October 9, 2009 loan agreement. Dkt. 1. Specifically, Plaintiff alleges the following counts against Defendants:

> Count 1: Conspiracy to violate RICO, 18 U.S.C. §1962(d)
> Count 2: Usury, 41 PA. CONS. STAT. §§ 201 and 502 (Count 2)
> Count 3: Violation of the FDCPA, 15 U.S.C. §§1692a – 1692o
> Counts 4 and 5: Breach of Fiduciary Duty and Breach of Implied Duty of Confidentiality; or, in the alternative Invasion of Privacy.[4]

## II.     Argument

### A.      Standard for Dismissal Based Upon Failure to State A Claim

Fed. R. Civ. P. 12(b)(6) allows a defendant to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A complaint will be dismissed under Fed. R. Civ. P. 12 (b)(6) where the factual allegations are insufficient to establish a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A complaint must contain more than an "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* Moreover, Fed. R. Civ. P.

---

[2] Plaintiff uses the term "fraudulent" throughout the Complaint, and refers to Defendants' alleged "participation in a scheme to defraud the Plaintiff." Compl. ¶1, 35-37, 42, 75. Despite these allegations, none of Plaintiff's causes of action sound in fraud or allege a violation of any fraud statutes. Therefore, these allegations should be disregarded.
[3] It is well-established that a defendant may attach an undisputedly authentic document to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).
[4] Plaintiff does not identify the statute or common law authority for Counts 4 or 5.

8, which governs general pleading matters, provides: "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Under Rule 8, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

District courts presented with a motion to dismiss for failure to state a claim must conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual matters averred from the legal conclusions, accepting the well-pleaded facts as true and disregarding the legal conclusions. *Id.* Second, the district court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679). Bald allegations stating entitlement to relief are insufficient to avoid dismissal: "[a] complaint has to 'show' such an entitlement with its facts."  *Id.* at 211 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234– 35 (3d Cir. 2008)). To that end, "legal conclusions" and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy a plaintiff's burden to demonstrate that she is entitled to the relief she seeks. *Iqbal*, 556 U.S. at 678.

    **B.    Plaintiff's RICO Conspiracy Claim Should be Dismissed Since it is Time-Barred, Plaintiff has Failed to State a Claim, and Plaintiff Lacks Standing**

Plaintiff speciously alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").[5]  Four independent grounds exist to support dismissal of Plaintiff's RICO claim. First, Plaintiff's claim is time-barred as the cause of action accrued

---

[5] Although ¶54 of Plaintiff's Complaint specifically refers to the collection of unlawful debts, in violation of 18 U.S.C. § 1962(c), Plaintiff has only alleged a conspiracy, in violation of 18 U.S.C. § 1962(d).

outside of the four-year statute of limitations that governs civil RICO claims. Second, Plaintiff has failed to file a RICO case statement as required by this Court's standing order. Third, Plaintiff has failed to comply with Rule 8's pleading requirements.[6] Fourth, Plaintiff has not alleged an injury and, thus, lacks standing.

### 1.    Plaintiff's Conspiracy Count is Time-Barred

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) based upon statute of limitations is proper where "the complaint facially shows noncompliance with the limitations period and the affirmative defense appears on the face of the pleading." *McCracken v. Ford Motor Co.*, 588 F. Supp. 2d 635, 642 (E.D. Pa. 2008) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994)); *see also Pleskovich v. Ford Motor Co.*, Nos. 12cv05748 & 12cv0547, 2012 WL 1893578, at *2 n. 2 (W.D. Pa. May 24, 2012). Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). The Third Circuit applies an "injury discovery" rule to civil RICO claims. *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006); *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233-36 (3d Cir. 2004); *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000). The injury discovery rule also applies to claims under § 1962(d) for RICO conspiracy. *See, e.g., Zavala v. Wal-Mart Stores, Inc.*, No. 2:10–05301, 2013 WL 396133, at *2 (D.N.J. Jan. 31, 2013); *Parness v. Christie*, No. 15-3505, 2015 WL 4997430, at *8 (D.N.J. Aug, 19, 2015); *Heimbecker v. 555 Associates*, No. 01–6140, 2003 WL 21652182,

---

[6] The allegations raised in the Complaint in this action are nearly identical to those in the August 12, 2014 indictment filed by the Manhattan district attorney's office in New York. *See* Dkt. 23-6. For example, the Complaint states "Defendant CPS is a Nevada corporation that provided origination, funding, underwriting and processing of payday loans dispensed by defendant MYCASHNOW and affiliated internet lenders DiscountAdvances and PayDayMax.com. The purpose of CPS was to enable the issuance of payday loans by Defendants' internet lenders." Compl. at ¶10. The New York indictment states "Defendant CPS provided all origination, funding, underwriting, and processing of payday loans dispensed by defendant MyCashNow and affiliated internet lenders DiscountAdvances.com and PayDayMax.com. Defendant CPS's sole purpose was to enable the issuance of payday loans by the Payday Syndicate's internet lenders..." Dkt. 23-6 at pg. 3. There are many other similar examples. It appears that Plaintiff merely duplicated allegations from the New York Indictment, rather than relying upon actual facts that would support a claim.

at *13-14 (E.D. Pa. Mar. 26, 2003).

The four-year statutory period begins to run when a plaintiff "has discovered or, by the exercise of reasonable diligence, should have discovered (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct." *Forbes*, 228 F.3d at 485. However, even under the "injury discovery rule," a RICO claim that is filed within four years from plaintiff's discovery of the injury is still untimely if a reasonable person exercising due diligence would have discovered the injury more than four years before the suit was filed. *See, e.g., Cetel*, 460 F.3d at 506-09; *Prudential Ins. Co. of Am.*, 359 F.3d at 235.

Plaintiff claims that "the members of the Class were injured in their property by the debiting of their bank accounts by Defendants." Compl. ¶55. Thus, the alleged injury triggering the running of the statute of limitations is the debiting of Plaintiff's bank account when the loan was repaid. Plaintiff applied for and received the loan from MyCashNow on or about October 9, 2009. *Id.* ¶39. The Complaint specifically alleges that the loan was a "payday loan," described as a "short-term (typically a matter of weeks) high fee, closed-end loan;" and that Plaintiff "is of the belief that the loan was repaid several years ago." *Id* ¶¶24, 39-40.[7] Therefore, in the exercise of reasonable diligence, Plaintiff should have discovered the injury no more than "a matter of weeks" after October 9, 2009 – the date on which Plaintiff received, read, and agreed to the terms of the loan agreement. The Complaint in this action was not filed until October 23, 2015, nearly six years after Plaintiff applied for, received, and repaid the loan (and at which time Plaintiff's bank account was debited). Therefore, the statute of limitations for the civil RICO claim ran in the Fall of 2013, four years after the date on which Plaintiff repaid the loan. As such, Plaintiff's civil RICO conspiracy claim is time-barred and must be dismissed.

///

///

---

[7] Thus, taking the allegations in Plaintiff's Complaint as true, the only reasonable inference that can be drawn from the allegations in Plaintiff's Complaint is that the latest Plaintiff's account could have been debited was "several weeks" after October 9, 2009.

### 2.   Plaintiff's Failure To Comply With Local Rule 7.1 Requiring a RICO Case Statement Mandates Dismissal of the RICO Conspiracy Count

Local Civil Rule 7.1 unambiguously provides that "[a]ny party filing a civil action under 18 U.S.C. §§ 1961-1968 shall file with the complaint, or within fourteen (14) days thereafter, a RICO case statement." Plaintiff's Complaint was filed on October 23, 2015. Dkt. 1. To date, Plaintiff has not filed any RICO case statement. Federal courts have found that failure to comply with an order requiring a RICO case statement warrants dismissal of the RICO cause of action. *See, e.g., Figueroa Ruiz v. Alegria*, 896 F.2d 645, 648-49 (1st Cir. 1990) (affirming dismissal of RICO claim *with prejudice* as a sanction for failure to comply with order requiring plaintiffs to file a detailed explanation of the facts supporting the claim); *Petrochem Insulation, Inc. v. Northern Cal. & Northern Nevada Pipe Trades Council*, No. 90-CV-3628, 1992 WL 131162 (N.D. Cal. Mar. 19, 1992) (dismissing plaintiff's RICO claim based upon plaintiff's failure to comply with the court's standing order regarding pleading with particularity in RICO cases), aff'd, 8 F.3d 29 (9th Cir. 1993).

Because "[t]he mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants," it is critical that "[i]n fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz*, 896 F.2d at 650. A standing order requiring the filing of a RICO case statement is intended to accomplish this precise goal. *Kurz v. Mairone*, No. 86-5587, 1987 WL 28360, at *4 (E.D. Pa. Dec. 18, 1987) ("This court notes [in granting defendants' 12(b)(6) motion to dismiss] that the failure of plaintiffs to comply with the RICO case standing order, and thus produce a set of facts which would support their claim and entitle them to relief under 18 U.S.C. §§ 1961–1968 will result in this court's determination that no such set of facts exist and the complaint will be dismissed with prejudice"). Plaintiff's blatant failure to comply with this

Court's standing order warrants dismissal of the frivolous RICO conspiracy count.

### 3. Plaintiff Has Failed to State A Claim Because the RICO Conspiracy Count is Speculative and Conclusory

Plaintiff alleges that Defendants conspired to violate 18 U.S.C. § 1962 (c), in violation of 18 U.S.C. § 1962(d). "A § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)); *see also Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

Section 1962(c)prohibits "... any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through ... collection of unlawful debt." 18 U.S.C. § 1962(c). An unlawful debt includes any "debt (A) ... which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with ... the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." *Id.* § 1961(6). Thus, to sustain a Section 1962(c) claim, Plaintiff must allege: "(1) there was a RICO enterprise, (2) its activities affected interstate commerce, and (3) the individual defendants were employed by or associated with the enterprise." *Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 348 (3d Cir. 1986), citing *Durante Bros. and Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239, 248 (2d Cir. 1985). Additionally, Plaintiff must allege facts sufficient to prove that: "(1) the debt was

unenforceable in whole or in part because of state or federal laws relating to usury, (2) the debt was incurred in connection with the 'business of lending money ... at a [usurious] rate,' ... (3) the usurious rate was at least twice the enforceable rate ... [and] (4) as a result of the above confluence of factors, it was injured in its business or property." *Sundance Land Corp. v. Community First Federal Sav. and Loan Ass'n*, 840 F.2d 653 (9th Cir. 1988), citing *Durante Bros.*, 755 F.2d at 248.

A RICO conspiracy claim under section 1962(d) requires the plaintiff to allege two additional elements. First, the claim must allege the existence of an "agreement to participate in an endeavor which, if completed, would constitute a violation" of the RICO statute. *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 373; *see also Odesser v. Continental Bank*, 676 F. Supp. 1305, 1312 (E.D. Pa. 1987). Second, a RICO conspiracy claim must allege knowledge that the predicate acts were part of the endeavor to violate section 1962 (a), (b), or (c). *Odesser*, 676 F. Supp. at 1312.

As discussed below, Plaintiff has failed to allege that (1) there was a RICO enterprise, (2) an agreement existed among the defendants to violate Section 1962(c), and (3) defendants knew about the alleged collection of unlawful debt.

### a. Plaintiff Has Not Alleged A RICO Enterprise

"To establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). To establish an enterprise, a plaintiff must allege facts showing that: (1) the enterprise is an ongoing organization with some framework for making or carrying out decisions; (2) the members of the enterprise function as a continuing unit with established duties; and (3) the enterprise is separate and apart from the pattern of activity in which it engages. *U.S. v.*

*Riccobene*, 709 F.2d 214, 221 (3d Cir. 1983); *In re Insurance Brokerage Antitrust Litigation*, 618 F.2d at 369.

Plaintiff alleges neither an enterprise nor any facts to suggest that an enterprise existed "separate and apart" from the activity in which the payday lending businesses engaged. The Complaint characterizes "payday lenders" generally as "offering loans at usurious and unconscionable rates," Compl. ¶3, and makes the sweeping unsupported assertion that "[c]ertain payday lenders, such as defendants, make use of the Internet to circumvent these [state law] prohibitions [on payday loans] and offer payday loans to consumers residing in these states while ignoring the laws prohibiting those very loans []." *Id.* ¶5. Thus, the Complaint does not allege an "enterprise aside and apart from the pattern of activity in which it engages." *Riccobene*, 709 F.2d at 221. At least one district court has dismissed a RICO complaint premised on collection of unlawful debts where "Plaintiffs' own allegations demonstrate that the allegedly usurious acts were committed as part of each corporation's [] business." *Rivera v. AT&T Corp.*, 141 F. Supp. 2d 719, 725-26 (S.D. Tx. 2001). Here, as in *Rivera*, Plaintiff has failed to plead facts supporting the allegation that Defendants were engaged in an enterprise "aside and apart" from their businesses.

### b.   Plaintiff has not pled an agreement among the defendants.

Plaintiff's conclusory allegations fail to adequately plead the element that an agreement existed between two or more persons to collect an unlawful debt in violation of section 1962(c). To survive a motion to dismiss, a plaintiff alleging a RICO conspiracy claim must plausibly allege a meeting of the minds. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010). Here, the following conclusory allegations in the Complaint fail to satisfy this "plausibility" standard:

In furtherance of their agreement, Defendants or their agents or employees agreed to take

certain acts to facilitate the collection of unlawful debts:

a.   Defendants or agents or employees acting on their behalf, agreed to initiate the transactions whereby borrowers' bank accounts were debited and the unlawful debts collected in violation of 18 U.SC. § 1962(c) again through interstate wires and/or interstate telephone lines...

Accordingly, Defendants conspired and agreed to directly and indirectly conduct and participate in the collection of unlawful debts, in violation of 18 U.S.C. § 1962(c).

Compl. ¶¶53-54. Beyond this conclusory language, Plaintiff states no facts supporting *even an inference* that any defendant entered into an agreement with one or more other persons to collect an unlawful debt.

Regardless, the agreement alleged is only an intra-corporate conspiracy, which cannot support the RICO Conspiracy Count. It is well-settled in this Circuit that a corporation cannot conspire with itself. *See, e.g.*, *Eichorn v. AT&T Corp.*, 248 F.3d 131, 139 (3d Cir. 2001) (finding single entity in a parent-subsidiary relationship "incapable" of conspiring to violate antitrust laws); *Johnston v. Baker*, 445 F.2d 424, 427 (3d Cir. 1971) ("A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.").[8]  It is also established that managing agents of a corporation, acting in the scope their employment, cannot conspire with each other. *United Nat'l Ins. Co. v. Equip. Ins. Managers*, Nos. 95-0116 & 95-2892, 1995 WL 631709, at *6 (E.D. Pa. Oct. 27, 1995) (dismissing section 1962(d) count where plaintiffs did not allege that the defendants "acted solely for their own interest and personal benefit, and not for the benefit of" the corporate defendant); *see also, e.g.*, *Castle v. Crouse*, No. 03-5252, 2004 WL 257389, at *6 (E.D. Pa. Feb. 11, 2004); *Hughes v. Technology Licensing Consultants, Inc.*, 815 F. Supp. 847, 851 (W.D. Pa. 1992); *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 633 F. Supp. 386, 405

---

[8] "Since the law in this area of RICO is unsettled, district courts have looked to antitrust cases for guidance."  *District 1199P Health and Welfare Plan v. Janssen, L.P.*, Nos. 06-3044, 07-2608, & 07-2860, 2008 WL 5413105, at *14 (D.N.J. Dec. 23, 2008).

n.23 (D. Del. 1986). In *Hughes*, this district court dismissed a RICO conspiracy count against

corporate officers, and noted that:

> [A] corporation cannot conspire with itself because a corporation can act only through its
> officers and employees. While conducting company business, they cannot conspire with the
> corporation of which they form an indispensable part. A corporate conspiracy also requires
> more than the collective judgment of two individuals within the same entity, for their
> conduct, if challenged, becomes that of the single, corporate entity.

815 F. Supp. at 851 (quoting *Jagieski v. Package Mach. Co.*, 489 F. Supp. 232, 233 (E.D. Pa.

1980)).

Plaintiff alleges that the corporate defendants are owned and/or controlled by Carey

Brown ("Brown"), and managed by Ronald Beaver ("Beaver"). Compl. ¶¶8-9. Because, as

alleged, Brown and Beaver were personally involved in, responsible for, and/or participated in

all business decisions made by the corporate defendants, by definition, they could not have

conspired with each other or with the corporate defendants. Compl. ¶¶8-9.

### c.     Plaintiff has not pled knowledge.

It is well-settled in the Third Circuit that "to survive dismissal [a Complaint] does not

suffice to simply say that the defendants had knowledge; there must be factual allegations to

plausibly suggest as much." *Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*, 602 F.3d

237 (3d Cir. 2010). Plaintiff makes no such "plausible" factual showing of knowledge. "While [a

defendant] need not have personally participated in the commission or attempted commission of

any predicate acts... the complaint must at least include some factually based allegation that [the

defendant] knew about and agreed to facilitate an alleged scheme." *Kucher v. Alternative*

*Treatment Center of Paterson, LLC*, No. 05-cv-3733, 2006 WL 2527851, at *5 n.3 (E.D.N.Y.

Aug. 29, 2006).

The Complaint makes the conclusory allegation that "Defendant knew payday loans were

illegal and unenforceable" and that "Defendant knew that certain collection techniques involving

the use of interstate wires and/or interstate telephone lines were contrary to provisions of federal law." Compl. ¶53a-c. However, Plaintiff fails to plead any facts supporting the Complaint's bare conclusory allegations that any of the Moving Defendants knew about or had any involvement in the collection of an unlawful debt, which is the predicate for RICO conspiracy count. *Rose*, 871 F.2d at 366.

### 4. Plaintiff Lacks Standing.

The standing limitation set forth in 18 U.S.C. § 1964 is intended to limit the class of plaintiffs who can bring a civil RICO action. To have standing, a plaintiff is required to demonstrate: "(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000); *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir. 1994). In other words, a plaintiff alleging RICO conspiracy must "allege injury from an act that is analogous to an 'act of tortious character,'...meaning an act that is independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505-506 (2000). Moreover, a plaintiff must show injury by the commission of an overt act in furtherance of the conspiracy. *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2008).

Here, Plaintiff merely alleges that "as a direct and proximate result of Defendants [*sic*] conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff and the members of the Class were injured in their property by the debiting of their bank accounts by Defendants and such injury was reasonably foreseeable." Compl. ¶55. While this allegation addresses the "injury to business or property" prong of the standing analysis, it wholly fails on the "proximate cause" prong. Rather, this conclusory statement without alleging additional facts to support it, merely regurgitates the minimal pleading requirements of a civil RICO claim. This is precisely the sort of formulaic recitation of the

elements prohibited by *Iqbal*. As such, Plaintiff has failed to allege any facts demonstrating that

Defendants' alleged violation of section 1962 proximately caused Plaintiff a concrete financial

loss.

> **C.     Plaintiff's Pennsylvania Usury Claim is Barred by the Statute of Limitations
> and the Usury Count Fails to State A Claim As to the Other States and the
> District of Columbia**

Plaintiff's second cause of action alleging violations of the usury statutes of thirteen

states (including Pennsylvania) and the District of Columbia fails for two reasons. Compl. ¶¶4,

31, 43. First, Plaintiff's cause of action under the Pennsylvania usury statute is barred by the

four-year statute of limitations. Second, the Complaint fails to allege the statutory elements or

any facts supporting a cause of action for allegedly violating the usury statutes of twelve other

states and the District of Columbia.

Plaintiff's cause of action is untimely under 41 PA. CONS. STAT. § 502[9], which provides:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of
> that provided for by this act or otherwise by law or has paid charges prohibited or in
> excess of those allowed by this act or otherwise by law may recover triple the amount of
> such excess interest or charges in a suit at law against the person who has collected such
> excess interest or charges: Provided, That no action to recover such excess shall be
> sustained in any court of this Commonwealth unless the same shall have been
> commenced within four years from and after the time of such payment. . .

Hence, Section 502 limits causes of action to those "commenced within four years from and after

the time of such payment."  As discussed in more detail in Section B(1), *supra*, the only payment

which Plaintiff alleges to have made is repayment within "a matter of weeks" after receipt of the

loan on October 9, 2009. Compl. ¶¶24, 39-40. As such, the statute of limitations for the

Pennsylvania state usury claim ran in the Fall of 2013, four years after the date on which Plaintiff

made the payment. Therefore, Plaintiff's cause of action for usury in violation of 41 PA. CONS.

---

[9] 41 PA. CONS. STAT. § 502 provides:

STAT. §§ 201 and 502[10] must be dismissed as time-barred.

Second, to the extent that Plaintiff brings a cause of action for usury under the laws of Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Vermont, West Virginia and the District of Columbia, those claims must also be dismissed for failure to state a claim. Compl. ¶32. The only state whose statute Plaintiff identifies is Pennsylvania. Compl. ¶58-63. The only allegedly usurious loan Plaintiff identifies is the one Plaintiff applied for in Pennsylvania, and the only alleged collection of usurious interest in excess of a statutory cap occurred in Pennsylvania. Compl. ¶39, 61. Because Plaintiff has not identified the statutes of the other states or the District of Columbia, nor articulated facts giving rise to a violation of those statutes, any claim for relief for usury under those statutes must be dismissed for failure to state a claim.

### D. The Complaint Fails to State A Claim for Relief For Violations of the Fair Debt Collections Practices Act ("FDCPA")

#### 1. The Complaint Fails to Allege that Any of the Defendants are a "Debt Collector" Subject to Liability under the FDCPA

In the third claim for relief, Plaintiff alleges that *all* Defendants—both named and Unknown—violated the FDCPA[11] by attempting to collect payday loans allegedly extended to Plaintiff and an unnamed class of other consumers. The Complaint fails to provide any information about these alleged Unknown Defendants. Generally, the FDCPA regulates "debt collectors" and prohibits them from taking certain actions or making certain representations in connection with collecting a consumer debt as explicitly described in the statute. *See* 15 U.S.C.

---

[10] Plaintiff's claim under § 502 appears to be premised on an allegation that Defendants collected interest at a rate greater than 6% per annum, in violation of 41 PA. CONS. STAT. § 201. Compl. ¶59, 61.

[11] Defendants assume that Plaintiff intended to claim relief under the "*Fair* Debt Collections Practices Act," as opposed to the "*Federal* Debt Collections Practices Act" as they refer to the statute in their Third Claim for Relief.

§§ 1692a–1692o (the "FDCPA"). As discussed in more detail below, to establish liability, a plaintiff must demonstrate that a defendant is a "debt collector" under the statute. The Complaint fails to state a claim for relief for violations of the FDCPA because it does not allege that any of the Defendants qualify as "debt collectors" under 15 U.S.C. § 1692a(6).

A "debt collector" is defined as a person who regularly collects or attempts to collect debts owed to "another."  15 U.S.C. § 1692a(6); *see Pollice v. Nat'l Tax Funding*, L.P., 225 F.3d 379, 403 (3d Cir. 2000). Entities that "offer or extend credit creating a debt" or those "to whom a debt is owed" are "creditors" not "debt collectors."  15 U.S.C. § 1692a(4). Moreover, even creditors that collect debts owed to them are not "debt collectors," and are not subject to the FDCPA. *Pollice*, 225 F.3d at 403.

The Third Circuit has consistently held that "the FDCPA's provisions 'generally apply only to debt collectors [as defined in the FDCPA].'"  *Owens v. JP Morgan Chase Bank*, No. 12-1081, 2013 WL 2033149, at *3 (W.D. Pa. May 14, 2013) (quoting *Schaffhauser v. Citibank (S.D.) N.A.*, 340 Fed. Appx. 128, 130 (3d Cir. 2009)). A defendant's status as a "debt collector" is a necessary prerequisite to liability under the FDCPA. Where the Complaint fails to allege that Defendants are debt collectors, it fails to state a claim. *See, e.g.*, *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006) (determining, as a prerequisite before reaching the alleged misconduct, that the defendant *could* be liable under the FDCPA because it met the statutory definition of "debt collector" under section 1692a(6)). Creditors, "as opposed to 'debt collectors'—generally are not subject to the FDCPA."  *Pollice*, 225 F.3d at 400. Further, "an assignee of a creditor is also not a 'debt collector' where the loan is not in default at the time of assignment." *Ruff v. Am.'s Servicing Co.*, No. 07-0489, 2008 WL 1830182, at *5 (W.D. Pa. Apr. 23, 2008) (citing *Pollice*, 225 F.3d at 403); *see also F.T.C. v. Check Inv'rs, Inc.*, 502 F.3d 159,

172–74 (3d Cir. 2007).

The Complaint alleges that Defendants violated the FDCPA and are liable to Plaintiff; but it fails to allege that any defendant is a "debt collector," which is a necessary element for liability. Plaintiff alleges that CPS "provided origination, funding, underwriting and processing," but does not allege that CPS was a "debt collector." Compl. ¶10. Similarly, Plaintiff alleges that ACH Federal was an electronic payment system, but does not allege that it was a debt collector. *Id.* ¶12. Plaintiff alleges that CPD purchased loans, but does not allege it was a debt collector, nor does Plaintiff state whether the loans were in default when they were allegedly purchased or whether CPD engaged in any collections activity and, if it did, whether that activity violated the FDCPA. Likewise, the Complaint states no facts to support a conclusion that CPS, ACH Federal, or CPD have ever been involved in collections activities; that any of them were responsible for any call to Plaintiff; or that a call placed by any of them actually violated the FDCPA. The Complaint states that Owls Nest was a "holding company" and Millenium was a company "incorporated to funnel profits," but again not that either entity is (or ever was) a "debt collector." Compl. ¶¶17–18. As such, the allegations in the Complaint with respect to CPS, ACH Federal, CPD, Owls Nest, and Millenium fail to raise a claim that any of these entities were "debt collectors" subject to the FDCPA or that they violated the provisions of that statute.

With respect to Defendant Brown, Plaintiff lumps him in with the other entities alleging that he "owned and/or controlled" them and was "personally involved and responsible for all of the business decisions the corporate defendants made." Compl. ¶8. The Complaint states no facts even suggesting that Brown was a "debt collector," nor that he was involved with any

companies that were "debt collectors" under the FDCPA.[12]

### 2. Plaintiff Fails to Allege Specific Conduct by a Defendant that Violated the FDCPA

The third claim for relief also fails to allege actual conduct by a defendant that violated the FDCPA.[13]  Rather than state facts to show that Defendants committed a violation, the Complaint merely cut-and-pastes language from the list of potential violations set out in the statute at section 1692(d), (e), and (f), which Plaintiff attempts to pass off as collections activity undertaken by the Defendants.[14]  Mere recitation of the elements are insufficient to plead a claim for relief because it deprives Defendants "fair notice of what the  . . . claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555.

As a result, the Court must disregard these recitations when considering this motion to dismiss under Rule 12(b)(6). *Warren v. Wells Fargo Bank, N.A. ex rel. Wells Fargo Bank Minn., N.A.*, No. 2:15-CV-1067, 2015 WL 6393111, at *3 (W.D. Pa. Oct. 21, 2015) (quoting *James v. City of Wilkes–Barre,* 700 F.3d 675, 679 (3d Cir. 2012)) ("the Court must separate the factual and legal elements of the claim and 'accept the factual allegations contained in the Complaint as true, *but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements.*'" (emphasis added)). The Complaint provides no facts that *show*

---

[12] Plaintiff has not alleged any facts to support an inference that unserved Defendants Ronald Beaver, MyCashNow, Discounts Advances, Inc., PayDayMax, or Support Seven were debt collectors.

[13] The Complaint references two other statutory schemes, namely the Telephone Consumer Protection Act (the "TCPA") and the Truth in Caller ID Act, but does not allege separate violations of those laws. Compl. ¶67. Moreover, Plaintiff merely recites the elements of those statutes and asserts legal conclusions without identifying any facts supporting a violation of those laws.

[14] Plaintiff alleges that "Defendant's violations include but are not limited to violations of sections 1692(d) [sic], 1692(e) [sic], and 1692(f) [sic] of the FDCPA as evidenced by the following conduct . . .," and then proceeds to recite the text of sections 1692d, 1692e, and 1692f. Compl. ¶67.

that Plaintiff has a plausible claim, and, thus, the third claim for relief must be dismissed.
*Fowler*, 578 F.3d at 211 ("a complaint must do more than allege the plaintiff's entitlement to
relief. A complaint has to 'show' such an entitlement with its facts.").

Finally, when, as here, a plaintiff makes "broad allegations against a large and mostly
anonymous group of people," the "court cannot 'draw the reasonable inference that the defendant
is liable for the misconduct alleged,' because [it] cannot tell which defendant is alleged to have
done what, nor can [it] tell what the misconduct was." *Burnett v. Mortgage Elec. Registration
Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013). Once the Complaint is stripped of its legal
conclusions and rote recitation of elements and statutory provisions, Plaintiff's third claim for
relief must be dismissed for failure to state a claim under the FDCPA, because "all civil
complaints must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me
accusation.'" *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678).

### E. Plaintiff Has Failed to State A Claim for Relief for Breach of Fiduciary Duty, Breach of Implied Duty of Confidentiality, and Invasion of Privacy.

#### 1. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Because the Law Does Not Recognize a Fiduciary Relationship Between a Borrower and a Lender.

Plaintiff's fourth claim for relief fails because there is no legal basis to support the
argument that collection of personal financial information by a creditor gives rise to a fiduciary
duty. Ordinarily, the lender-borrow relationship is one of debtor-creditor, and "rarely...found to
give rise to a fiduciary duty."[15] *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53
(3d Cir. 1988). The same is true under many states' laws, including in Pennsylvania. *See, e.g.,*

---

[15] Only in limited circumstances have courts imposed fiduciary duties on lenders where a special
relationship arises because the negotiation is not at arms-length (typically where "the lender
gains substantial control over the borrower's business affairs.") *Paradise Hotel Corp.*, 842 F.2d
at 53. Plaintiff fails to allege, and cannot allege, that any of those circumstances exist here.

*Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992) *aff'd*, 981 F.2d 1248 (3d Cir. 1992) ("Pennsylvania law follows the well-recognized principle that a lender is not a fiduciary of the borrower."). Thus, receipt of confidential information, without more, does not create a fiduciary relationship between a lender and borrower. *See, e.g.*, *Washington Steel Corp. v. TW Corp.*, 602 F.2d 594, 599 (3d Cir. 1979) ("we reject the implication of a Per se fiduciary duty from a bank's receipt of confidential information"), overruled on other grounds by *Clark v. K-Mart Corp.*, 979 F.2d 965 (3d Cir. 1992).

### 2.    Plaintiff Fails to State A Claim For Counts Four and Five Because There Is No Private Right of Action Under the GLBA

Plaintiff's fourth and fifth claims for relief fail because they purport to rely on the GLBA, under which no private cause of action exists. In the fourth claim for relief, Plaintiff alleges that Defendants owed a fiduciary duty and an implied duty of confidentiality to Plaintiff and breached it by disseminating personally identifiable information to third parties.[16] Plaintiff further alleges that the GLBA sets the standard of care for the alleged fiduciary relationship with respect to personally-identifiable information and created a duty not to disseminate the information and. Compl. ¶72; *see also* 15 U.S.C. §§ 6801–6809. The Complaint then alleges that Defendants breached their duty under the GLBA by disseminating personally-identifiable information to third parties. Compl. ¶73. Plaintiff further alleges a list of other purported breaches of fiduciary duty, all of which are no more than legal conclusions wholly devoid of factual support. Compl. ¶75. In the fifth claim for relief, the Complaint alleges that the GLBA "and various state laws protecting personal information and personal financial information"

---

[16] Although, Plaintiff actually makes the inconsistent allegations that Defendants' alleged collection and dissemination of personally identifiable information simultaneously *creates* and *breaches* a fiduciary duty based on a special relationship under the GLBA. Compl. ¶71.

impose an obligation upon Defendants "not to disclose the personal information they had obtained from Plaintiff []," such that Defendant's alleged disclosure invaded the Plaintiff's privacy. Compl. ¶78.

Plaintiff contends that the receipt of personal information by a lender creates a fiduciary duty relationship with the borrower, and that the GLBA creates a strict duty of non-disclosure under which Defendants were "obligated not to disclose the personal information they had obtained. . . ." Compl. ¶¶72, 78. However, Plaintiff has failed to state claim because the GLBA does not create a private right of action. *See* 15 U.S.C. § 6805; *see also Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007). Therefore, Plaintiff's attempt to manufacture a private right of action by disguising GLBA claims as breach of fiduciary duty and invasion of privacy causes of action must be rejected. *See, e.g.*, *In re Lenz*, 448 B.R. 832, 840 (Bankr. D. Or. 2011) ("The Debtors' attempt to descry a personal claim for relief from the penumbra of Gramm–Leach–Bliley is creative but ultimately unavailing. Try as the Debtors might to find one, there is no private right of action under Gramm–Leach–Bliley, and Count Two of the Complaint must be dismissed for failure to state a claim upon which relief can be granted.")[17]

**F.    Plaintiff's Claims Must Be Dismissed Because the Putative Class is an Impermissible Fail-Safe Class**

Plaintiff brought this action on behalf of herself and others alleged to be similarly-situated. The Complaint defines a putative Class and Sub-Class. The Class is defined as follows:

---

[17] Even if the GLBA were to provide a private cause of action, Plaintiff's Complaint would fail due to insufficient factual pleading. As with the third claim for relief, the allegations in the Complaint merely recite elements and legal conclusions, and such conclusory statements without any factual enhancement cannot sustain a plausible claim for relief. Compl. ¶¶73-76, 79-81; *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

> ***All natural persons*** within the states of Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Vermont, West Virginia and the District of Columbia who received a payday loan from one of the Defendants ***who was then targeted by the Defendants' employees or agents in a collection scheme in violation of 15 U.S.C. § 1692***.

Compl. ¶43 (emphasis added). The Sub-Class is defined as:

> All natural persons residing within the Commonwealth of Pennsylvania who ***received a payday loan from one of the Defendants which violated any Pennsylvania laws including Pennsylvania Usury Laws and the Pennsylvania UTPCPL***.

Compl. ¶44 (emphasis added). Plaintiff's classes, as defined, are impermissible, fail-safe classes. For that reason, the Moving Defendants have failed to allege a sustainable "class" under Fed. R. Civ. P. 8 and 23.

A fail-safe class is "'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) (quoting *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). Plaintiff's putative classes— "any individual within certain states who received a collection call that violated the FDCPA or who took out a loan that violated *any Pennsylvania law*"—are the "classic formulation" of fail-safe classes that define a class as "all individuals wronged by the defendant." *Zarichny*, 80 F. Supp. 3d at 624. Fail-safe classes are impermissible because they "require[] a determination on the merits before members are identified, creating what the Supreme Court called 'one-way intervention,'" meaning "either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by any judgment, are free to pursue individual claims . . . impermissibly skirt[ing] the bar of *res judicata*." *Id.* (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)).

Although rare, dismissal of class allegations before discovery is appropriate where, as here, the "class treatment is evidently inappropriate from the face of the complaint." *Zarichny*,

80 F. Supp. 3d at 625–26. In the Third Circuit, "an essential prerequisite of a Rule 23 action is that there *be* a class, and '[c]ourts have generally articulated this 'essential prerequisite' as the implied requirement of 'ascertainability'—that the members of a class are identifiable at the moment of certification.'"  *Zarichny*, 80 F. Supp. 3d at 626 (quoting *Shelton v. Bledsoe*, 775 F.3d 554, 559–60 (3d Cir. 2015)). Plaintiff's putative fail-safe classes cannot meet the ascertainability requirement because membership cannot be determined at the class certification stage; rather, it is premised upon a finding of Defendants' liability. *Id.*

Accordingly, the Court should dismiss the class allegations in the Complaint because the Complaint, on its face, demonstrates that class treatment is inappropriate and Plaintiff has failed to state a claim as to the class.

### G. Filing of the Complaint Violated the Arbitration Provision in the Loan Agreement, Which Serves As An Alternative Basis to Dismiss the Complaint in its Entirety

The Third Circuit supports "the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) (citing *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n. 1 (3d Cir. 1991)); *see also Digital Signal, Inc. v. VoiceStream Wireless Corp.*, 156 Fed. Appx. 485, 487–88 (3d Cir. 2005); *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 478 (E.D. Pa. 2011). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or, presumably, documents relied upon in the complaint), a party should be able to move to compel arbitration even if discovery has not yet occurred and thus the summary judgment standard would be inapplicable." *Somerset Consulting, LLC*, 832 F. Supp. 2d at 481. Although Plaintiff does not attach the Loan Agreement to the Complaint, Plaintiff relies upon it throughout. *See, e.g.,* Compl. ¶¶1, 39.

The Loan Agreement provides as follows:

**AGREEMENT TO ARBITRATE DISPUTES**
You hereby agree that disputes and controversies *of every kind and nature* between the parties hereto *arising out of or in connection with this agreement* as to the existence, construction, validity, interpretation or meaning, performance, nonperformance, enforcement, operation, breach, continuance, or termination therefore, as well as whether the controversy or dispute is subject to arbitration, and the amount of any loss or damage, shall be submitted to arbitration in a jurisdiction to be chosen by MyCashnow.com, Inc. Inc. pursuant to the commercial rules of the American Arbitration Association in effect at the time any arbitration proceeding is commenced, which rules are hereby incorporated by reference thereto and made a part of this agreement. The claim individually as provided above [sic]. This agreement not to bring or participate in class action suits is an independent agreement and shall survive the closing and repayment of the loan for which you are applying.

*See* Exhibit 1 (emphasis added). Despite this clear and unambiguous arbitration provision to which Plaintiff expressly agreed,[18] Plaintiff ignored it and filed this class action Complaint anyway.

This arbitration agreement is clearly enforceable. It is well-settled that, unless otherwise limited by Congress, any agreement evidencing a transaction "involving commerce" may be enforced under Section 2 of the Federal Arbitration Act ("FAA"), which provides:

A written provision in any contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable save upon grounds as exist at law or equity for the revocation of any contracts. 9 U.S.C. § 2. This Section has been construed by the Supreme Court as "a congressional declaration of a liberal policy favoring arbitration agreements.

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927 (1983). Courts are required to examine the language of arbitration agreements in view of this strong federal policy. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

In applying the FAA to an arbitration agreement, a court must address two issues: (1) whether the parties agreed to arbitrate these disputes; and (2) whether the claims advanced by the Complaint are arbitrable under applicable law. *See Id.*, 473 U.S. at 626-28. Here, it is readily

---

[18] The Loan Agreement states "By clicking 'I Agree' below you also agree to the Agreement to Arbitrate Disputes and the Agreement Not to Bring or Participate in Class Action Lawsuits."

apparent from the language of the Loan Agreement that the parties agreed to arbitrate these disputes. The Agreement to Arbitrate Disputes explicitly applies to "disputes and controversies of any kind or nature ... arising out of or in connection with this agreement as to the existence, construction, validity, interpretation or meaning, performance, nonperformance, enforcement, operation, breach, continuance, or termination therefore." *See* Exhibit 1. Plaintiff's causes of action all arise out of or in connection with the Loan Agreement and relate to the performance and operation of that agreement.

Although the Moving Defendants are not signatories to the Loan Agreement, they are still entitled to enforce the arbitration provision. It is well-settled that under the Federal Arbitration Act, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone*, 460 U.S. at 20. This is particularly true where, as here, the plaintiff has alleged that the other defendants are agents of the signatory to the arbitration agreement. [19] *See. e.g., Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993); *Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc.*, 998 F.2d 145 (3d Cir. 1993).

Since the parties clearly agreed to arbitrate these disputes, the Court next must determine the arbitrability of Plaintiff's claims. In doing so, the Court is required to consider the strong federal policy favoring the enforcement of agreements to arbitrate. *Shearson/American Express, Inc. v. McMahan*, 42 U.S. 220, 226 (1986). Moreover, any doubts concerning arbitrability must be resolved in favor of arbitration. *Moses H. Cone*, 46 U.S. at 24-25. In addition, even the

---

[19] Plaintiff alleges that the defendant corporations were all owned and/or controlled by Brown; that the defendants marketed, underwrote, loaned, serviced, transacted, processed, collected on and purchased loans; and that the conduct giving rise to the Complaint was engaged in by MyCashNow *or its agents*. *See* Compl. ¶¶8, 9, 12-14, 17-18, 40-43, and 53.

potential complexity of the claims "should not suffice to ward off arbitration."

*Shearson/American Express, Inc.*, 42 U.S. at 239 (holding that RICO cases are subject to

arbitration agreements); *see also Sherer v. Green Tree Servicing LLC*, 548 F.3d 379 (5th Cir.

2008) (permitting a defendant to compel arbitration of FDCPA claims); *Hornicek v. Cardworks*

*Servicing, LLC*, 2011 WL 2623274 (E.D. Pa. Jun. 29, 2011) (compelling arbitration of plaintiff's

FDCPA claims). Hence, unless it can be stated with "positive assurance" that the dispute was not

meant to be arbitrated, an arbitration provision should be interpreted to cover the dispute. *Becker*

*Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 44 (3d Cir. 1978). Nothing

in the Complaint, in the Loan Agreement, or in the Agreement to Arbitrate Disputes

demonstrates "with positive assurance," that Plaintiff's claims are not meant to be arbitrated.

Therefore, to the extent the Court does not grant this Motion to Dismiss as to all counts

on the other grounds argued herein, the Complaint should be dismissed for failure to state a

claim due to the arbitration provision.

## III.   Conclusion

For the foregoing reasons, all Counts of the Complaint should be dismissed, and the

Moving Defendants respectfully request that the Court award costs and such other and further

relief as this Court deems just and proper.[20] [21]

---

[20] Pursuant to Fed. R. Civ. P. 12(a)(4)(A), the time for filing an Answer on behalf of the Moving
Defendants is tolled until 14 days after notice of the Court's ruling on this Motion. Should an
Answer still be required, Moving Defendants respectfully request that they have 21 days from
the date of the Order to file their Answer.

[21] Defendants endeavored to fit this brief into 25 pages to comply with local rules, unfortunately
the signature block did not fit.  For the sake judicial economy Defendants have not filed a
separate brief requesting leave to file an oversized brief.  However, Defendants will file a
separate brief should the Court require one.

DATED: February 25, 2016   Respectfully Submitted,

SIDEMAN & BANCROFT LLP

By: _____/s/ Rebecca K. Felsenthal_____
James M. Lord (admitted *Pro Hac Vice*)
Colorado Bar No. 40747
Rebecca K. Felsenthal (admitted *Pro Hac Vice*)
California Bar No. 303476
SIDEMAN & BANCROFT LLP
One Embarcadero Center, 22nd Floor
San Francisco, Calfornia 94111-3711
Tel:    (415) 392-1960
Fax:    (415) 392-0827
Attorneys for Defendants
Carey V. Brown, ACH Federal LLC, Credit Payment Services,
Inc., Credit Protection Depot, Inc., Owls Nest, LLC, and
Millenium Financial Concepts Inc.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 25, 2016, the foregoing Brief of Defendants Carey V. Brown, ACH Federal LLC, Credit Payment Services, Inc., Credit Protection Depot, Inc., Owls Nest, LLC, and Millenium Financial Concepts Inc. in Support of their Motion to Dismiss Plaintiff's Complaint was filed electronically with the Clerk of the Court, using the CM/ECF system. Notice of the filing was sent to all parties who have appeared of record by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Those parties may access this filing through the Court's ECF system.

DATED: February 25, 2016                    SIDEMAN & BANCROFT LLP


By:        /s/ Rebecca K. Felsenthal
           Rebecca K. Felsenthal, Esq.