IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRYSTAL AURANDT, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | Civil Action No.: |
| Plaintiff, | ) ) ) | 3:15-cv-00275-KRG |
| v. | ) ) | |
| CAREY V. BROWN, | ) | **FIRST AMENDED CLASS** |
| RONALD BEAVER, | ) | **ACTION COMPLAINT** |
| CREDIT PAYMENT SERVICES, INC. ("CPS"), | ) | |
| MYCASHNOW.COM, INC. ("MYCASHNOW"), | ) | |
| CREDIT PROTECTION DEPOT, INC. ("CPD"), | ) | |
| ACH FEDERAL, LLC, ("ACH FEDERAL"), | ) | |
| DISCOUNT ADVANCES, INC. ("DISCOUNT | ) | JURY TRIAL DEMANDED |
| ADV."), | ) | |
| PAY DAY MAX, LTD. ("PAYDAYMAX"), | ) | |
| OWLS NEST, LLC ("OWLS NEST"), | ) | |
| MILLENIUM FINANCIAL CONCEPTS INC. | ) | |
| ("MILLENIUM"), | ) | |
| SUPPORT SEVEN, LLC ("SUPPORT SEVEN"), and | ) | |
| ADDITIONAL UNKNOWN | ) | |
| DEFENDANTS, | ) | |
| | ) | |
| DefendantS. | ) | |
| | ) | |

NOW COMES Plaintiff CRYSAL AURANDT, individually and on behalf of

the CLASS described below to make the following allegations based upon information

and belief, except as to allegations specifically pertaining to PLAINTIFF, which are

based on personal knowledge.

**NATURE OF THE ACTION**

1.    Plaintiff brings this class action against Defendants to recover damages and

other relief available at law and in equity on behalf of herself, as well as on behalf of

members of the class who have been injured by Defendants' participation in a scheme

to defraud the Plaintiff and others similarly situated through unlawful and usurious loans and unlawful debt collection tactics, in violation of 15 U.S.C. § 1692 (the Fair Debt Collection Practices Act) and the laws of numerous states, including Pennsylvania.

2.     This is a civil action seeking monetary damages, restitution, and punitive damages from Defendants, arising from their participation in schemes to obtain and collect upon "payday loans" in states that have made payday loans unlawful.

3.     Payday loans—small, closed-end loans due in full on the borrower's next "payday"—have a long and sordid history. For years, unscrupulous lenders have taken advantage of desperate borrowers who are unable to obtain funds anywhere else in order to make ends meet, by offering loans at usurious and unconscionable rates. Payday lenders operate in the shadows of the financial system.

4.     At least 13 states across the nation have either banned payday loans directly or effectively banned them by operation of an interest rate cap. Payday loans are illegal in Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Vermont, and West Virginia (the "banned states"), and the District of Columbia.

5.     Certain payday lenders, such as defendants, make use of the Internet to circumvent these prohibitions and offer payday loans to consumers residing in these states while ignoring the laws prohibiting those very loans (the "Out-Of-State Payday Lenders"). These loans ("Out-Of-State Payday Loans") feature interest rates of 500%, and higher.

6.     Defendants' illegal schemes with Out-Of-State Payday Lenders have victimized Plaintiff and countless others.

## PARTIES

7.      Plaintiff is a citizen and resident of Pennsylvania and resides in Blair County, Pennsylvania.

8.      Defendant Carey V. Brown owned and/or controlled defendants CPS, MYCASHNOW, CPD, SUPPORT SEVEN, OWLS NEST, DISCOUNT ADV., DISCOUNT ADV., PAYDAYMAX, MILLENIUM and ACH FEDERAL. These companies marketed, underwrote, loaned, serviced, transacted and collected on payday loans to the CLASS. Mr. Brown was personally involved and responsible for all of the business decisions the corporate defendants made. Mr. Brown is a resident of Tennessee.

9.      Defendant Ronald Beaver served as the CEO of the corporate defendants and their affiliates. He managed the business on a day-to-day basis and participated in all major business decisions. Mr. Beaver is a resident of Tennessee.

10.      Defendant CPS is a Nevada corporation that provided origination, funding, underwriting and processing of payday loans dispensed by defendant MYCASHNOW and affiliated internet lenders DiscountAdvances and PayDayMax.com. The purpose of CPS was to enable the issuance of payday loans by Defendants' internet lenders.

11.      Defendant MYCASHNOW is an online payday loan company that accepts payday loan applications over the internet. MYCASHNOW, together with CPS and ACH FEDERAL, processed loan applications, approved payday loans, and through use of wires deposited payday loans  into and withdrew payments from, borrowers' accounts. MYCASHNOW and affiliated companies made loans to Plaintiff and to the

CLASS. MYCASHNOW is incorporated in the British West Indies but its actual business headquarters in Tennessee.

12.     Defendant ACH FEDERAL processed all of the electronic transactions for connected the payday loan business. ACH FEDERAL is headquarteed in Tennessee.

13.     Defendant CPD is a Nevada corporation that purchased the payday loans approved by CPS and MYCASHNOW and affiliated internet lenders DiscountAdvances.com and PayDayMax.com, including loans made to the CLASS.

14.     Defendant DISCOUNT ADV. is an online payday loan company that accepts payday loan applications over the internet. DISCOUNT ADV., together with CPS and ACH FEDERAL, processed loan applications, approved payday loans, and through use of wires deposited payday loans  into and withdrew payments from, borrowers' accounts. DISCOUNT ADV. and affiliated companies made loans to the CLASS. DISCOUNT ADV. incorporated outside of the United States but is headquartered in Tennessee.

15.     Defendant PAYDAYMAX is an online payday loan company that accepts payday loan applications over the internet. DISCOUNT ADV., together with CPS and ACH FEDERAL, processed loan applications, approved payday loans, and through use of wires deposited payday loans  into and withdrew payments from, borrowers' accounts. PAYDAYMAX and affiliated companies made loans to the CLASS. PAYDAYMAX incorporated outside of the United States but is headquartered in Tennessee.

16.     Defendant SUPPORT SEVEN serves as the customer call center for defendants. In this role, SUPPORT SEVEN made collection calls to members of the CLASS. SUPPORT SEVEN is headquartered in Tennessee.

17.     Defendant OWLS NEST was created to serve as the holding company for defendant MYCASHNOW and affiliated companies. The defendant was created at the insistence of various financial institutions who desired Defendants to have a presence in the United States. OWLS NEST is a Wyoming corporation headquartered in Tennessee.

18.     Defendant MILLENIUM is corporation headquartered in Tennessee that was incorporated to funnel profits from the payday loan activities to Mr. Brown.

19.     Plaintiff also brings this action against ADDITIONAL UNKNOWN DEFENDANTS who are unknown at this time. Plaintiff is currently unable to name the ADDITIONAL UNKNOWN DEFENDANTS due to the listed Defendants pattern and practice of concealing their identity through numerous corporate filings, deceptive corporate operations and illegal telephone spoofing practices. Plaintiff avers the defendants have engaged in such activity for the express purpose of concealing the identity of persons and entities involved.

## JURISDICTION AND VENUE

20.     Plaintiff brings this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under federal law. This Court also has subject matter jurisdiction over this action pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1964(c) and (d), which confers jurisdiction upon this Court over the subject matter of this action.

5

21.     This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court has personal jurisdiction over every Defendant pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965.

23.     Venue is proper in the Western District of Pennsylanvia pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred here and because the Defendants are subject to personal jurisdiction here.

## BACKGROUND FACTS

### Payday Loans

24.     A payday loan is a short-term (typically a matter of weeks) high fee, closed-end loan, traditionally made to consumers to provide funds in anticipation of an upcoming paycheck. A borrower obtaining a payday loan must either provide a personal check to the lender or an authorization to electronically debit the borrower's deposit account for the loan amount and associated fee as security for the loan. If the borrower does not repay the loan or make arrangements to extend the loan, the lender can deposit the borrower's check or initiate an electronic withdrawal from the borrower's deposit account.

25.     In order to obtain a payday loan, a borrower is required to entrust the lender with personal and confidential informing, including social security numbers, telephone numbers (including cell-phone numbers), income and employment information, and home addresses. In this matter, Plaintiff and Class provided Defendants with such information.

26.     Payday loans are illegal, unconscionable and shocking to the conscious as they target the most vulnerable and desperate of borrowers who might not qualify for conventional loans.

27.     Payday loans feature exorbitant usurious annual percentage rates and require "balloon" repayments shortly after the loan is made.

28.     If a borrower is unable to repay the full amount of the loan on the due date, the lender typically gives the borrower the option to "roll over" the loan balance by paying another "fee," usually equal to the initial fee at the time of loan funding.  The cycle then continues until such time as the borrower is either able to pay off the loan in full or the borrower defaults on the loan.

29.     Typically, by this time, the borrower has paid an amount of interest orders of magnitude larger than the amount originally borrowed.

30.     Many borrowers repeatedly roll over or take out additional payday loans, often on the same day as a previous one is repaid. Over 75 percent of payday loan volume is the result of "churn"—borrowers having to take out additional loans to pay off the original debt.

31.     For these and other reasons, Pennsylvania and twelve other states and the District of Columbia have outlawed payday loans.

32.     In Pennsylvania, a consumer loan transaction for $50,000 or less is civilly usurious when it imposes an annual interest rate exceeding 6% per annum. 41 Pa. Stat. Ann. § 201. By statute, interest charged in excess of this amount is usurious and void. 41 Pa. Stat. Ann. § 502.

33.     Out-Of-State Payday Lenders, while not permitted to operate in the banned states and the District of Columbia, have simply moved to the Internet in order to solicit desperate borrowers in the banned states and the District of Columbia into illegal loans using an online application process.

34.     Here, defendants have established shell corporations for the purposes. Defendant MyCashNow has mailing address in Anguilla of the British West Indies. MyCashNow, however, has no employees in the British West Indies and operates its business out of Chattanooga, Tennessee.

35.     After providing consumers with illegal loans, Defendants have taken their actions one step further by acting illegally to collect on these loans through fraudulent collection methods in violation of 15 U.S.C. § 1692 (the Fair Debt Collection Practices Act) and 47 U.S.C. § 227 (e) (the portion of the Telephone Consumer Protection act designated as the Truth in Caller ID Act.)

36.     These fraudulent collection methods involve illegally "spoofing" phone numbers to make it appear that phone calls from Defendants, targeting Plaintiff and the Class, are actually coming from governmental authorities rather than from creditors.

37.     Defendants' fraudulent collection methods have even included impersonating state officials and law enforcement officers to and threaten Plaintiff and other members of the Class with arrest and imprisonment.

38.     Typically, the collector represents that he or she is a law enforcement officer in possession of an arrest warrant for the debtor's arrest. The collector then states his or her intent is to arrest the debtor later in the immediate future (usually later in the day) unless the debtor contacts the Defendants or persons operating on their behalf and

makes a payment. The collector will then usually provide a telephone number for the debtor to call for such a purpose.

### FACTS AS TO PLAINTIFF CRYSTAL AURANDT

39.     On or about October 9, 2009 Plaintiff applied for and received a payday loan in the amount of $190 from My Cash Now, Inc. by completing an application on the **www.mycashnow.com** website.

40.     Although Plaintiff is of the belief that the loan was repaid several years ago, Plaintiff was contacted by agents or employees of MyCashNow on October 23, 2014 and told to pay a sum of $1,100.

41.     The Defendants' employees, agents and/or assigns contacted via her cellular telephone, through use of phone spoofing technology, whereby the caller appeared to be calling from the Altoona Police Department.

42.     During said calls Defendants' employees, agents and/or assigns held themselves out to be persons other than themselves and represented that they were law enforcement officials attempting to collect a debt on behalf of Defendants.

43.     The Defendant's employees or agents then compounded the fraudulent and illegal tactics by stating that a warrant was going to be issued for Plaintiff's arrest later that day unless Plaintiff called Defendants and made payment arrangements.

44.     All of these representations made over telephone were false and made with the intent to cause fear and intimidation in Plaintiff.

45.     At all times relevant to this matter, Defendants knew or should have known that these calls were paying made in an attempt to extort and defraud Plaintiff and all other members of the class.

## CLASS ACTION ALLEGATIONS

46.     <u>Description of the Class and Sub-Class</u>: Plaintiff brings this class action on

behalf of herself and a <u>Class</u> defined as follows:

> All natural persons within the states of Arizona, Arkansas, Connecticut,
> Georgia, Maryland, Massachusetts, New Jersey, New York, North
> Carolina, Ohio, Pennsylvania, Vermont, West Virginia and the District
> of Columbia who received a payday loan that was illegal under the
> respective laws of their states from one of the Defendants and were then
> subsequently targeted by the Defendants' employees, agents or assigns in
> a telephone debt collection scheme in violation of 15 U.S.C. § 1692.
> Members of this class can be identified by records maintained by
> defendants.

Plaintiff brings this action on behalf of herself and a <u>Sub-Class</u> defined as follows:

> All Natural persons residing within the Commonwealth of Pennsylvania
> who received a payday loan from one of the Defendants which violated
> any Pennsylvania laws including Pennsylvania Usury Laws and the
> Pennsylvania UTPCPL. Members of this class can be identified by
> records maintained by defendants.

47.     Excluded from the Class and Sub-Class are Defendants' officers, directors,

affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also

excluded from the Class and Sub-Class is any judge, justice or judicial officer presiding

over this matter and the members of their immediate families and judicial staff.

48.     <u>Numerosity</u>: The proposed Class and Sub-Class are so numerous that individual

joinder of all members is impracticable.

49.     <u>Common Questions of Law and Fact Predominate</u>: There are many questions of

law and fact common to Plaintiff and the Class and Sub-Class, and those questions

substantially predominate over any questions that may affect individual Class and Sub-

Class members. Common questions of fact and law include:

(a) whether the Defendants were unlicensed in violation of state law;

(b) whether the Out-Of-State Payday Loans were usurious and unenforceable under State or Federal law, in whole or in part, as to principal or interest because of the laws relating to usury;

(c) whether debts owed to Defendants are incurred in connection with the business of lending money at an usurious rate;

(d) whether the usurious rate was at least twice the enforceable rate under the law of the states in which Class members reside;

(e) whether Defendants' collection of the illegal or unenforceable debt was made with actual or constructive knowledge of the illegality of the loans;

(f) whether Defendants' collection of the illegal debt was the proximate cause of the Class's injuries;

(g) whether the Defendants' collection tactics themselves were illegal; and

(h) should the running of the statute of limitations for the Class's claims be equitably tolled.

50.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class. Plaintiff and all members of the Class and Sub-Class have been similarly affected by illegal collection tactics by the Defendants.

51.     <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class and Sub-Class. Plaintiff has retained counsel with experience in prosecuting complex and class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and Sub-Class, and have the financial resources to do so.

52.     <u>Superiority of Class Action</u>: Plaintiff and the members of the Class and  Sub-Class  suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class and Sub-Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members.

**FIRST CLAIM FOR RELIEF**

**AGAINST ALL DEFENDANTS**

**VIOLATION OF 18 U.S.C. § 1962(d) - RICO**

53.      All previous paragraphs are hereby incorporated.

54.     Defendants acquired and/or maintained control of an enterprise that engaged in racketeering activity as described herein.

55.     Defendants or third party collectors acting on their behalf facilitated payday loans to consumers residing in states that banned the practice and collected usurious interest rates in violation of state law. The Defendant's knowingly perpetrated this illegal scheme through the use of interstate wires and/or interstate telephone lines. This

endeavor, if completed, would constitute the collection of "unlawful debts" under 18

U.S.C. § 1961(6) in that the loans are:

    a.    unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury;

    b.    incurred in connection with the business of lending money at an usurious rate; and

    c.    the usurious rate was at least twice the enforceable rate.

56.    Plaintiff and members of the Class, in reliance upon Defendants' practices and

assertions, provided Defendants with personal and confidential information as well as

significant amounts of money.

57.    In furtherance of their agreement, Defendants or their agents or employees

agreed to take certain acts to facilitate the collection of unlawful debts:

    a.    Defendants or agents or employees acting on their behalf, agreed to initiate the transactions whereby borrowers' bank accounts were debited and the unlawful debts collected in violation of 18 U.SC. § 1962(c) again through interstate wires and/or interstate telephone lines;

    b.    Defendant knew payday loans were illegal and unenforceable in Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Vermont, West Virginia and the District of Columbia and still provided with residents of those states with loans in violation of 18 U.S.C. §1962(c) and;

    c.    Defendant knew that certain collection techniques involving the use interstate wires and/or interstate telephone lines were contrary to provisions of federal law including 47 U.S.C. § 227 (e) (the portion of the Telephone Consumer Protection act designated as the Truth in Caller ID Act) and the Fair Debt Collections Practices Act.

58.    Accordingly, Defendants conspired and agreed to directly and indirectly

conduct and participate in the collection of unlawful debts, in violation of 18 U.S.C. §

1962(c).

59.     As a direct and proximate result of Defendants conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff and the members of the Class were injured in their property by the debiting of their bank accounts by Defendants and such injury was reasonably foreseeable.

60.     As a result, Defendants are liable to the Plaintiff and the members of the Class for actual damages, statutory damages, punitive or exemplary damages, costs and attorney's fees.

<u>**SECOND CLAIM FOR RELIEF**</u>

<u>**AGAINST ALL DEFENDANTS**</u>

<u>**USURY**</u>

61.     Plaintiff incorporates by reference the preceding paragraphs.

62.     As discussed, many if not all states, provide for a maximum amount of interest that can be charged.

63.     For example, in reference to Plaintiff, 41 Pa. Stat. § 201 sets the maximum lawful interest rate for all loans of the type provided by Defendants to 6% per annum or less.

64.      Pursuant to 41 Pa. Stat. § 502, all interest charged on loans at a rate greater than 6% per annum is prohibited. "A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges."

14

65.     As set forth more fully above, in the course of collecting payments on illegal

payday loans in Pennsylvania, Defendants repeatedly and knowingly collected interest

at a rate greater than 6% per annum, in violation of 41 Pa. Stat. Ann. § 201.

66.     Defendants were aware of the illegal nature of the lending activities of the Out-

Of-State Payday Lenders through due diligence procedures.

67.     As a result of Defendants' knowing participation, willful indifference or reckless

disregard for the rights of others, and their conduct which was shocking to the

conscience in the making of illegal payday loans, each is liable for the violations of

state usury law referenced herein and punitive damages.

### THIRD CLAIM FOR RELIEF

### AGAINST ALL DEFENDANTS

### VIOLATION OF THE FEDERAL DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 et seq.

68.     Plaintiff incorporates by reference the preceding paragraphs

69.     Plaintiff and the Class are consumers within the meaning of section 1692 (a) (6)

of the Federal Debt Collection Practices Act, (the "FDCPA")

70.     Defendants' phone calls to Plaintiff are a communication relating to debt as

defined by sections 1692 (a) (2) and 1692 (a) (5) of the FDCPA.

71.     Defendants violated the FDCPA as to plaintiff and the Class. Defendant's

violations include but are not limited to violations of sections 1692 (d), 1692(e) and

1692(f ) of the FDCPA as evidenced by the following conduct;

      a.     using false, deceptive or misleading representations or means in
         connection with the collection of debt in violation of section 1692 (e);

    b.    falsely representing the character, amount or legal status of the debt in violation of 1692 (e) (2) ;

    c.    using a false representation or deceptive means to collect or attempt to collect a debt in violation of 1692 (e) (10);

    d.    using unfair or unconscionable means to attempt to collect a debt in violation of section 1692 (f);

    e.    causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number  in violation of section 1692 (d) (5);

    f.    using autodialing mechanisms, calling numbers on do not call lists, failing to provide required information over the phone and/or calling residences outside of the allotted time frame in violation of the Telephone Consumer Protection Act codified at 47 U.S.C. 227 (b);

    g.    otherwise using false, deceptive, or misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt from plaintiff and the Class; and,

    h.    using phone spoofing technology as a means of deception in violation of the Truth in Caller ID ACT 47 U.S.C. 227 (e) and 15 U.S.C 1692 d (6).

72.    Defendants' actions as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's and the Class's rights under the law with the purpose of coercing Plaintiff and the Class members to pay the alleged debt.

73.    As a result of the violations of the FDCPA, Defendants are liable to the Plaintiff and the members of the Class for actual damages, statutory damages, punitive or exemplary damages, costs and attorney's fees.

## FOURTH CLAIM FOR RELIEF – PLED IN THE ALTERNATIVE

## BREACH FIDUCIARY DUTY AND BREACH OF IMPLIED DUTY OF CONFIDENTIALITY AGAINST ALL KNOWN DEFENDANTS

74.     Plaintiff incorporates by reference the preceding paragraphs

75.     The Defendants collected and disseminating personally identifiable information to third parties, thereby creating a special relationship of trust between the Defendants and the Plaintiff and Class.

76.     Under the Gramm-Leach Bliley Act (15 U.S.C. § 6801 *et seq.*) and various state laws protecting personal information and personal financial information, Defendants were obligated not to disclose the personal information they had obtained from Plaintiff and the Class.

77.     Plaintiff believes and therefore avers that Defendants' breached their duty of loyalty, good faith and fair dealing and their implied duty of confidentiality by providing personal and confidential identifiable information to third parties.

78.     Defendants' knew or should have known that these third parties, the additional unknown defendants, would use the improperly disclosed personally identifiable information for the purposes of an illegal scheme of unlawful debt collection.

79.     Defendants also breached their role of fiduciary in the following particulars;

a.     engaging in self-dealing with regards to the types of loans provided and the types of services used to recover those loans;

b.     in attempting to collect on loans that were already paid;

c.     in providing false and misleading accountings;

d.     in using fraudulent methods in order to attempt to collect on loans;

e.     misappropriating the personally identifiable information related to Plaintiff and the Class;

f.      breach of the assumed duty to provide accurate information to third party loan collectors;

g.      failing to act in the best interest in regards to the collection tactics employed by Defendants; and,

h.      failing to properly train, supervise or hire competent individuals to undertake the role of collecting on the unconscionable loans provided to Plaintiff and Class members.

80.    As a direct and proximate result of the conduct of the Defendants breaching their role as fiduciary and breaching their implied duty of confidentiality, Plaintiff and Class members have been irreparably harmed.  Defendants are liable to the Plaintiff and the members of the Class for actual damages, statutory damages, punitive damages or exemplary, costs and attorney's fees.

## FIFTH CLAIM FOR RELIEF – PLED IN THE ALTERNATIVE

## INVASION OF PRIVACY AGAINST ALL KNOWN DEFENDANTS

81.    Plaintiff incorporates by reference the preceding paragraphs

82.    Under the Gramm-Leach Bliley Act (15 U.S.C. § 6801 *et seq.*) and various state laws protecting personal information and personal financial information, Defendants were obligated not to disclose the personal information they had obtained from Plaintiff and the Class.

83.    Disclosed this information to third parties who then engaged in an illegal scheme of unlawful debt collection.

84.    Defendants' knew or should have known that these third parties, the additional unknown defendants, would use the improperly disclosed personally identifiable information for the purposes of an illegal scheme of unlawful debt collection.

18

85.     Defendants are liable to the Plaintiff and the members of the Class for actual

damages, statutory damages, punitive damages or exemplary damages, costs and

attorney's fees.

### SIXTH CLAIM FOR RELIEF VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES CONSUMER PROTECTION LAW – ALL DEFENDANTS (SUB-CLASS ONLY) AGAINST ALL DEFENDANTS

86.     Plaintiff incorporates by reference the preceding paragraphs.

87.     Defendants made promises through their policies and website documentation

stating that the payday services that were provided were of a certain quality and that

these services complied with local and Federal laws.

88.     Specifically, the Defendants' websites stated that all loans were made in

compliance with the Truth in Lending Act and that all collection methods were handled

in accordance with the Fair Debt Collection Act in addition to local and Federal laws.

89.     To the contrary, the services provided by the Defendants violated a number of

laws and did not match up with the services advertised on the defendants' websites.

These deceptive promises and guarantees were false when made and were made by the

Defendants with knowing falsity.

90.     The foregoing misrepresentations regarding the payday loan services were

deceptive and caused Plaintiff and the Plaintiff's Sub-Class members to suffer monetary

damages.

91.     The aforesaid misrepresentations and conduct violated the Unfair Trade Practices

and Consumer Protection law 73 P.S. § 201-2(4) (v), (vii), (xiv), (ix) and (xxi) by:

    (v)     Representing that services have characteristics  uses, benefits that they
            do not have;

(vii)    Representing that . . . services are of a particular standard, quality . . . if they are of another;

(xiv)    Failing to comply with the terms of any written guarantee or warranty given at, prior to, or after a contract for the purchase of . . . services is made;

(ix)    Advertising . . . services with intent not to sell them as advertised;

(xxi)    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

92.    As a result of the conduct set forth above, Plaintiff and Plaintiff's Sub-Class members have suffered damages through illegal collection tactics, illegal lending tactics,  and false advertising correlated to a service never provided, interest, attorney fees, litigation expenses and seek all statutory damages under the UTPCPL including treble damages

## **PRAYER FOR RELIEF**

93.    Plaintiff incorporates by reference the preceding paragraphs

94.    WHEREFORE, Plaintiff respectfully prays for relief as follows;

A.    That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Class;

B.    That judgment be entered against each Defendant for actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

C.    That judgment be entered against each Defendant for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(b)

D.    That judgment be entered against each defendant for treble damages as well as costs and attarneys' fees pursuant to 18 U.S.C. § 1964(c)

E.    That punitive damages be entered against each Defendant under the Pennsylvania UTPCPL and anywhere else applicable;

F.    That the Court award costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k (a)(3); and

F.  That the Court grant such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED FOR ALL COUNTS**

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**

_____/s/ David M. Kobylinski_____
David M. Kobylinski, Esquire
Peter T. Kobylinski, Esquire
515 Court Place, Ste 4
Pittsburgh, PA 15219
(412) 281-6600
(412) 281-6610 (*facsimile*)
dkobylinski@prlawgroup.com

Louis John Kroeck IV
STE 1300 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

(412) 765-3730
(412) 765-3730 (*facsimile*)
Lkroeck@ambylaw.com

*Counsel for Plaintiff and the Class*

March 17, 2016