# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL AURANDT, on Behalf of Herself and All Others Similarly Situated, | **Case No. 3:15-cv-00275 KRG** |
| Plaintiff, | |
| v. | |
| CAREY V. BROWN, RONALD BEAVER, CREDIT PAYMENT SERVICES, INC. ("CPS"), MYCASHNOW.COM, INC. ("MYCASHNOW"), CREDIT PROTECTION DEPOT, INC. ("CPD"), ACH FEDERAL, LLC, ("ACH FEDERAL"), DISCOUNT ADVANCES, INC. ("DISCOUNT ADV."), PAY DAY MAX, LTD. ("PAYDAYMAX"), OWLS NEST, LLC ("OWLS NEST"), MILLENIUM FINANCIAL CONCEPTS INC. ("MILLENIUM"), SUPPORT SEVEN, LLC ("SUPPORT SEVEN"), AND ADDITIONAL UNKNOWN DEFENDANTS, | **JUDGE KIM R. GIBSON** |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Background ................................................................................2

II.   Argument ..................................................................................3

    A.    Standard for Dismissal Based Upon Failure to State A Claim. ............3

    B.    Plaintiff's RICO Conspiracy Claim Should be Dismissed Since it is Time-Barred, Plaintiff has Failed to State a Claim, and Plaintiff Lacks Standing. ........................................................4

        1.    Plaintiff's Conspiracy Count Is Time-Barred. ...........................4

        2.    Plaintiff's Case Statement is Vague and Confusing and Does Not Comply With the Requirements of Local Rule 7.1 .....................................................................................6

        3.    Plaintiff Has Failed to State a Claim Because the RICO Conspiracy Count is Speculative and Conclusory. .....................8

            a.    Plaintiff Has Not Adequately Pled A RICO Enterprise. ...................................................................10

            b.    Plaintiff Has Not Adequately Pled An Effect On Interstate Commerce. ...................................................11

            c.    Plaintiff Has Not Adequately Pled An Agreement Among The Defendants. ................................................12

            d.    An Intra-Corporate Conspiracy Cannot Support A RICO Conspiracy Count. ................................................13

            e.    Plaintiff Has Not Adequately Pled Knowledge. .............14

        4.    Plaintiff Lacks Standing. ...........................................................15

    C.    Plaintiff's Pennsylvania Usury Claim is Barred by the Statute of Limitations and the Usury Count Fails to State A Claim As to the Other States and the District of Columbia. ....................16

    D.    The Complaint Fails to State A Claim for Relief For Violations

of the Fair Debt Collection Practices Act ("FDCPA"). ...................... 17

    1.    The Complaint Fails to Allege that Any of the Defendants are a "Debt Collector" Subject to Liability under the FDCPA. .................................................... 18

    2.    Plaintiff Fails to Allege That The Loan Was For Personal, Family or Household Purposes. ................................ 20

    3.    Plaintiff Fails to Allege Specific Conduct by a Defendant that Violated the FDCPA. ......................................... 21

E.    Plaintiff Has Failed to State A Claim for Relief for Breach of Fiduciary Duty, Breach of Implied Duty of Confidentiality, and Invasion of Privacy .................................................................... 23

    1.    Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Because the Law Does Not Recognize a Fiduciary Relationship Between a Borrower and a Lender. ...................... 23

    2.    Plaintiff Fails to State A Claim For Counts Four and Five Because There Is No Private Right of Action Under the Gramm-Leach-Bliley Act (GLBA). ........................................... 23

F.    Plaintiff Has Failed To State A Claim For Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). ............................................................. 25

    1.    Plaintiff Has Not Adequately Pled Justifiable Reliance. .......... 25

    2.    Plaintiff Has Not Adequately Pled The Elements of a False Advertising Claim Under The UTPCPL. ........................ 26

    3.    Plaintiff Improperly Alleges Substantive Violations of Other Statutes Without Sufficiently Pleading Them, In An Effort To Find A Backdoor Through The UTPCPL. ........... 27

G.    Plaintiff's Claims Must Be Dismissed Because the Putative Class is an Impermissible Fail-Safe Class. ......................................... 27

III.    Conclusion ......................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
    483 U.S. 143 (1987)................................................................4

*American Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ........................................12

*Anderson v. Ayling*,
    396 F.3d 265 (3d Cir. 2008) ..............................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................3, 16, 24

*Beck v. Prupis*,
    529 U.S. 494 (2000)............................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................21

*Brown v. Card Serv. Ctr.*,
    464 F.3d 450 (3d Cir. 2006) ..............................................18

*Burnett v. Mortgage Elec. Registration Sys., Inc.*,
    706 F.3d 1231 (10th Cir. 2013) ........................................23

*Castle v. Crouse*,
    No. 03-5252, 2004 WL 257389 (E.D. Pa. Feb. 11, 2004)...................................13

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)............................................................10

*Cetel v. Kirwan Fin. Group, Inc.*,
    460 F.3d 494 (3d Cir. 2006) ..............................................5

*DelRio-Mocci v. Connolly Properties Inc.*,
    No. 08-2753, 2009 WL 2989537 (D.N.J. Sept. 16, 2009) aff'd, 672
    F.3d 241 (3d Cir. 2012) ..............................................6, 7, 8

*District 1199P Health and Welfare Plan v. Janssen, L.P.*,
Nos. 06-3044, 07-2608, & 07-2860, 2008 WL 5413105 (D.N.J.
Dec. 23, 2008) ............................................................................................ 13

*Dunmire v. Morgan Stanley DW, Inc.*,
475 F.3d 956 (8th Cir. 2007) ...................................................................... 24

*Eichorn v. AT&T Corp.*,
248 F.3d 131 (3d Cir. 2001) ........................................................................ 13

*Forbes v. Eagleson*,
228 F.3d 471 (3d Cir. 2000) .......................................................................... 5

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) .......................................................................... 3

*Geesey v. CitiMortgage, Inc.*,
No. 3:14–188, 2015 WL 5714494 (W.D. Pa. Sept. 29, 2015) ..................... 25

*Gomez v. Oxford Law, LLC*,
No. 3:14cv477, 2015 WL 58766 (M.D. Pa. Jan. 5, 2015) ........................... 22

*Heimbecker v. 555 Associates*,
No. 01–6140, 2003 WL 21652182 (E.D. Pa. Mar. 26, 2003) ........................ 5

*Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*,
602 F.3d 237 (3d Cir. 2010) ........................................................................ 14

*Hughes v. Technology Licensing Consultants, Inc.*,
815 F. Supp. 847 (W.D. Pa. 1992) ......................................................... 13, 14

*Hunt v. U.S. Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008) ........................................................................ 25

*In re Insurance Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ................................................................. 8, 9, 10

*Jensen v. Pressler & Pressler*,
791 F.3d 413 (3d Cir. 2015) ........................................................................ 17

*Johns v. Northland Group, Inc.*,
76 F. Supp. 3d 590, 598 (E.D. Pa. 2014) ................................................... 20

*Johnston v. Baker*,
  445 F.2d 424 (3d Cir. 1971) ...............................................................................13

*Kucher v. Alternative Treatment Center of Paterson, LLC*,
  No. 05-cv-3733, 2006 WL 2527851 (E.D.N.Y. Aug. 29, 2006).......................14

*In re Lenz*,
  448 B.R. 832 (Bankr. D. Or. 2011) ....................................................................24

*Lightning Lube v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) ..................................................................................8

*Lombardi v. Allstate Ins. Co.*,
  No. 08-949, 2009 WL 1811540 (W.D. Pa. Jun. 23, 2009)..................................25

*Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*,
  792 F.2d 341 (3d Cir. 1986) ...........................................................................9, 11

*McCracken v. Ford Motor Co.*,
  588 F. Supp. 2d 635 (E.D. Pa. 2008)...................................................................4

*McDonald v. Heaton*,
  No. CIV-06-0601, 2006 WL 2090088 (W.D. Okla. July 25, 2006).............6, 7, 8

*Morrow v. Blessing*,
  No. 04-1161, 2004 WL 2223311 (E.D. Pa. Sept. 29, 2004)...............................12

*Northland Ins. Co. v. Shell Oil Co.*,
  930 F. Supp. 1069 (D.N.J. 1996)..........................................................................6

*Owens v. JP Morgan Chase Bank*,
  No. 12-1081, 2013 WL 2033149 (W.D. Pa. May 14, 2013) ..............................18

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004) ...............................................................................29

*Paradise Hotel Corp. v. Bank of Nova Scotia*,
  842 F.2d 47 (3d Cir. 1988) .................................................................................23

*Parness v. Christie*,
  No. 15-3505, 2015 WL 4997430 (D.N.J. Aug, 19, 2015)....................................5

*Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh*,

No. 00-5647, 2004 WL 1102782 (E.D. Pa. May 17, 2004) *aff'd sub nom. Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 131 Fed. App'x 864 (3d Cir. 2005) ............................................................6

*Pollice v. Nat'l Tax Funding, L.P.*,
225 F.3d 379 (3d Cir. 2000) ......................................................18, 19

*Rivera v. AT&T Corp.*,
141 F. Supp. 2d 719 (S.D. Tx. 2001).............................................11

*Seldon v. Home Loan Servs., Inc.*,
647 F. Supp. 2d 451,466..........................................................26, 27

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*,
955 F. Supp. 2d 452 (E.D. Pa. 2013)...............................................25

*Souders v. Bank of Am.*,
No. 1:CV–12–1074, 2012 WL 7009007 (M.D. Pa. Dec. 6, 2012)....................22

*Sundance Land Corp. v. Community First Federal Sav. and Loan Ass'n*,
840 F.2d 653 (9th Cir. 1988) ......................................................9

*Temp-Way Corp. v. Cont'l Bank*,
139 B.R. 299 (E.D. Pa. 1992) *aff'd*, 981 F.2d 1248 (3d Cir. 1992) .................23

*Toy v. Metro. Life Ins. Co.*,
928 A.2d 186 (Penn. 2007)..........................................................25

*United Nat'l Ins. Co. v. Equip. Ins. Managers*,
Nos. 95-0116 & 95-2892, 1995 WL 631709 (E.D. Pa. Oct. 27, 1995) ...........................................................13

*Warren v. Wells Fargo Bank, N.A.*,
No. 2:15-cv-1067, 2016 WL 693121 (W.D. Pa. Feb. 22, 2016) ........................26

*Washington Steel Corp. v. TW Corp.*,
602 F.2d 594 (3d Cir. 1979), overruled on other grounds by *Clark v. K-Mart Corp.*, 979 F.2d 965 (3d Cir. 1992) ...................................23

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
578 Pa. 479 (Penn. 2004)..........................................................25

*Zarichny v. Complete Payment Recovery Servs., Inc.*,

80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) .......................................................28, 29

**Statutes**

15 U.S.C. § 1692a(4) ...............................................................................18

15 U.S.C. § 1692a(5) ...............................................................................20

15 U.S.C. § 1692a(6) .......................................................................18, 19, 20

15 U.S.C. § 1692d(5) ...............................................................................21

15 U.S.C. § 1692d(6) ...............................................................................22

15 U.S.C. § 1692e(10) ..............................................................................21

15 U.S.C. §§ 6801–6809 ............................................................................24

15 U.S.C. § 6805 ....................................................................................24

18 U.S.C. §§ 1961-1968 ..............................................................................6

18 U.S.C. § 1962 ...................................................................................15

18 U.S.C. § 1962(c) ...........................................................................*passim*

18 U.S.C. § 1962(d) ...........................................................................*passim*

18 U.S.C. § 1964 ...................................................................................15

47 U.S.C. 227 *et seq*...................................................................8, 21, 22, 27

**Other Authorities**

Fed. R. Civ. P. 8 .................................................................................3, 28

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 3, 4

Fed. R. Civ. P. 12(a)(4)(A) ..........................................................................29

Fed. R. Civ. P. 23 ..................................................................................28

Local Civil Rule 7.1 ...........................................................................1, 4, 6, 8

## <u>BRIEF OF THE MOVING DEFENDANTS IN SUPPORT OF THEIR MOTION TO</u>
## <u>DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Defendants Carey V. Brown ("Brown"), ACH Federal LLC ("ACH Federal"), Credit Payment Services, Inc. ("CPS"), Credit Protection Depot, Inc. ("CPD"), Owls Nest, LLC ("Owls Nest"), Millenium Financial Concepts Inc. ("Millenium"), MyCashNow.com, Inc. ("MyCashNow"), PayDayMax, Ltd. ("PayDayMax"), Discount Advances, Inc. ("Discount Advances"), and Support Seven LLC ("Support Seven") (collectively, the "Moving Defendants"), move this Court to dismiss this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] The Moving Defendants make this Motion on the grounds that: (i) Plaintiff's allegation of RICO conspiracy under 18 U.S.C. § 1962(d) is time-barred; (ii) Plaintiff has failed to adhere to this Court's standing order under Local Civil Rule 7.1; (iii) Plaintiff has not pled the elements of enterprise, agreement, or knowledge as required to sustain a RICO conspiracy claim under 18 U.S.C. § 1962(d); (iv) Plaintiff improperly alleges an intra-corporate conspiracy; (v) Plaintiff lacks standing under 18 U.S.C. § 1962(d); (vi) Plaintiff's allegation of usury under 41 PA. CONS. STAT. §§ 201 and 502 is time-barred; (vii) Plaintiff has not pled the elements required to sustain an allegation of usury in violation of  any jurisdiction other than Pennsylvania; (viii) Plaintiff has not pled the elements of "debt collector," "debt," or specific misconduct under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; (ix) Plaintiff's allegations of breach of fiduciary duty and breach of the implied duty of confidentiality fail because, as a matter of law, Defendants do not owe Plaintiff a fiduciary duty; (x) Plaintiff's allegations of breach of fiduciary duty, breach of the implied duty of confidentiality, and invasion of privacy fail because the Gramm-Leach-Bliley Act ("GLBA") does not create a private right of action; (xi) Plaintiff has not pled the element of justifiable

---

[1] This Motion is filed solely on behalf of the Moving Defendants because, to date, Defendant Ronald Beaver has not been served in this action. Even if Plaintiff properly serves Ronald Beaver, counsel for the Moving Defendants does not intend to represent him in this matter.

reliance as required to sustain any claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. CONS. STAT. §201-1 *et seq.*; (xii) Plaintiff has not pled the elements required to sustain a false advertising claim under Pennsylvania's UTPCPL; (xiii) Plaintiff has improperly alleged violations of other statutes in an effort to find a backdoor through Pennsylvania's UTPCPL; and (xiv) Plaintiff's putative class is an impermissible fail-safe class.[2]

## I.   Background

On October 9, 2009, Plaintiff Crystal Aurandt ("Plaintiff") and Defendant MyCashNow executed a Loan Agreement. Compl. ¶39. Within "a matter of weeks" of receiving the loan, Plaintiff repaid it. *Id.* ¶¶24, 40. Nearly six years later, on or about October 23, 2015, Plaintiff filed a Complaint against Defendants in the United States District Court for the Western District of Pennsylvania, alleging various federal and state law claims stemming from the October 9, 2009 loan agreement. Dkt. 1. On March 17, 2016, Plaintiff filed a First Amended Complaint ("the Amended Complaint"). Dkt. 35. Specifically, Plaintiff alleges the following counts against Defendants:

> Count 1: Conspiracy to violate RICO, 18 U.S.C. §1962(d)
> Count 2: Usury, 41 PA. CONS. STAT. §§ 201 and 502
> Count 3: Violation of the FDCPA, 15 U.S.C. §§1692 *et seq.*
> Counts 4 and 5: Breach of Fiduciary Duty and Breach of Implied Duty of Confidentiality; or, in the alternative Invasion of Privacy[3]
> Count 6: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. §§ 201 *et seq.*

---

[2] Plaintiff uses the term "fraudulent" throughout the Amended Complaint and Case Statement, and refers to Defendants' alleged "participation in a scheme to defraud the Plaintiff." Compl. ¶¶1, 35-37, 43, 45, 79; Case Statement ¶¶5(c), 10. Despite these allegations, none of Plaintiff's causes of action sound in fraud or allege a violation of any fraud statutes. Moreover, although the Case Statement references fraud in the context of a "racketeering act," the Amended Complaint does not allege the "pattern of racketeering" prong of RICO, but rather only the "collection of an unlawful debt" prong. Therefore, the fraud allegations  are irrelevant to the counts alleged in the Amended Complaint and should be disregarded

[3] Plaintiff does not identify the statutory or common law authority for Counts 4 or 5.

## II.      Argument

### A.      Standard for Dismissal Based Upon Failure to State a Claim.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A complaint will be dismissed under Rule 12(b)(6) where the factual allegations are insufficient to establish a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint must contain more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Id.* Moreover, Federal Rule of Civil Procedure 8, which governs general pleading matters, provides: "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

District courts presented with a motion to dismiss for failure to state a claim must conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual matters averred from the legal conclusions, accepting the well-pleaded facts as true and disregarding the legal conclusions. *Id.* at 210-11. Second, the district court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Bald allegations stating entitlement to relief are insufficient to avoid dismissal: "[a] complaint has to 'show' such an entitlement with its facts." *Id.* (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)). To that end, "legal conclusions" and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy a plaintiff's burden to demonstrate that entitlement to the relief sought. *Iqbal*, 556 U.S. at 678.

**B.    Plaintiff's RICO Conspiracy Claim Should be Dismissed Since It Is Time-Barred, Plaintiff Has Failed To State a Claim, and Plaintiff Lacks Standing.**

Plaintiff speciously alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").[4] Four independent grounds exist to support dismissal of Plaintiff's RICO claim. First, Plaintiff's claim is time-barred as the cause of action accrued outside of the four-year statute of limitations that governs civil RICO claims. Second, Plaintiff's RICO Case Statement (the "Case Statement") fails to comply with this Court's standing order pursuant to Local Civil Rule 7.1. Third, Plaintiff has failed to comply with Rule 8's pleading requirements.[5] Fourth, Plaintiff has not alleged an injury and, thus, lacks standing.

**1.    Plaintiff's Conspiracy Count Is Time-Barred.**

A motion to dismiss under Rule 12(b)(6) based upon statute of limitations is proper where "the complaint facially shows noncompliance with the limitations period and the affirmative defense appears on the face of the pleading." *McCracken v. Ford Motor Co.*, 588 F. Supp. 2d 635, 642 (E.D. Pa. 2008) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994)). Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987).

---

[4] Although ¶54 of the Amended Complaint and ¶1 of the Case Statement specifically refer to the collection of unlawful debts, in violation of 18 U.S.C. § 1962(c), Plaintiff has only alleged a conspiracy, in violation of 18 U.S.C. § 1962(d) with Section 1962(c) constituting the predicate act for the alleged RICO conspiracy.

[5] The allegations raised in the Amended Complaint and Case Statement in this action are nearly identical to those in the August 12, 2014 indictment filed by the Manhattan district attorney's office in New York. *See* Dkt. 23-6. The New York indictment states "Defendant CPS provided all origination, funding, underwriting, and processing of payday loans dispensed by defendant MyCashNow and affiliated internet lenders DiscountAdvances.com and PayDayMax.com. Defendant CPS's sole purpose was to enable the issuance of payday loans by the Payday Syndicate's internet lenders . . ." Dkt. 23-6 at pg. 3. Both the Amended Complaint and Case Statement state that Defendant CPS "provided origination, funding, underwriting and processing of payday loans dispensed by defendant MYCASHNOW and affiliated internet lenders DiscountAdvances and PayDayMax.com. The purpose of CPS was to enable the issuance of payday loans by Defendants' internet lenders." Compl. ¶10; Case Statement ¶2. There are many other similar examples. It appears that Plaintiff merely relied on the representations made in the New York Indictment, rather than making a reasonable inquiry into the underlying facts.

The Third Circuit applies an "injury discovery" rule to civil RICO claims. *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006); *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000). The injury discovery rule also applies to claims under Section 1962(d) for RICO conspiracy. *See, e.g., Parness v. Christie*, No. 15-3505, 2015 WL 4997430, at *8 (D.N.J. Aug, 19, 2015); *Heimbecker v. 555 Associates*, No. 01–6140, 2003 WL 21652182, at *13-14 (E.D. Pa. Mar. 26, 2003).

The four-year statutory period begins to run when a plaintiff "has discovered or, by the exercise of reasonable diligence, should have discovered (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct." *Forbes*, 228 F.3d at 485. However, even under the "injury discovery rule," a RICO claim that is filed within four years from plaintiff's discovery of the injury is still untimely if a reasonable person exercising due diligence would have discovered the injury more than four years before the suit was filed. *See, e.g., Cetel*, 460 F.3d at 506-09.

Plaintiff broadly concludes that "the class has been injured financially through the usurious loans and illegal collection tactics," but fails to explain how the allegedly usurious loans or illegal collection tactics caused the purported injury. Case Statement ¶15. Plaintiff also claims that "the members of the Class were injured in their property by the debiting of their bank accounts by Defendants." Compl. ¶59. Thus, the only injury alleged by Plaintiff to trigger the running of the statute of limitations is the debiting of Plaintiff's bank account when the loan was repaid. Plaintiff applied for and received the loan from MyCashNow on or about October 9, 2009. *Id.* ¶39. The Amended Complaint specifically alleges that the loan was a "payday loan," described as a "short-term (typically a matter of weeks) high fee, closed-end loan" and that Plaintiff "is of the belief that the loan was repaid several years ago." *Id.* ¶¶24, 39-40. In the exercise of reasonable diligence, Plaintiff should have discovered the injury no more than "a matter of weeks" after October 9, 2009 – the date on which Plaintiff received, read, and agreed to the terms of the loan agreement. The Complaint in this action was not filed until October 23, 2015, nearly six years after Plaintiff applied for, received, and repaid the loan (and at which time

Plaintiff's bank account was debited). Therefore, the statute of limitations for the civil RICO claim ran in the Fall of 2013, four years after the date on which Plaintiff repaid the loan. As such, Plaintiff's civil RICO conspiracy claim is time-barred and must be dismissed.

### 2. Plaintiff's Case Statement is Vague and Confusing and Does Not Comply With the Requirements of Local Rule 7.1.

Local Civil Rule 7.1 provides that "[a]ny party filing a civil action under 18 U.S.C. §§ 1961-1968 shall file with the complaint, or within fourteen (14) days thereafter, a RICO case statement." District courts in this Circuit have held that:

> The mission of the case statement is to amplify the allegations of the complaint. It provides clarity and precision in the statement of a civil RICO claim and thereby assists in the identification, clarification and narrowing of issues—both factual and legal. The case statement may help in the early screening of ill conceived RICO claims, focus discovery, assist in the determination of summary judgment motions and provide a blueprint for trial.

*Northland Ins. Co. v. Shell Oil Co.*, 930 F. Supp. 1069, 1075 (D.N.J. 1996) (citing *Report of the Federal Procedures Committee of the New York State Bar Association*, published as RICO Case Statements, RICO Bus. Disputes Guide (CCH) ¶ 7453.); *see also DelRio-Mocci v. Connolly Properties Inc.*, No. 08-2753, 2009 WL 2989537, at *3 (D.N.J. Sept. 16, 2009) aff'd, 672 F.3d 241 (3d Cir. 2012); *Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 00-5647, 2004 WL 1102782, at *17 (E.D. Pa. May 17, 2004) *aff'd sub nom. Pelullo v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 131 Fed. App'x 864 (3d Cir. 2005).

Where a plaintiff fails to plead RICO claims with sufficient detail, "[t]his lack of information is fatal to the allegations... **particularly** [where] ... Plaintiff[] did not take the opportunity to clarify their allegations in their RICO Case Statement." *Pelullo*, 2004 WL 1102782, at *17 (emphasis added). Likewise, where a Case Statement is "non-responsive, conclusory, incoherent, unclear, and vague . . . These deficiencies are not mere formalities; they are deficiencies which impede the court's and the defendants' ability to understand the nature of plaintiff's RICO claims." *McDonald v. Heaton*, No. CIV-06-0601, 2006 WL 2090088, at *1

(W.D. Okla. July 25, 2006).

Plaintiff's Case Statement is "non-responsive, conclusory, incoherent, unclear, and vague." *McDonald*, 2006 WL 2090088, at *1. It merely parrots the language of the Amended Complaint through vague and conclusory, and, at times, confusing and nonsensical statements. For example, Paragraph 2 of Appendix LCvR 7.1B to the Local Civil Rules of Court for the Western District of Pennsylvania ("Appendix LCvR 7.1B") requires that a plaintiff "list each defendant and state the alleged misconduct and basis of liability of each defendant." In response, Plaintiff includes statements that, for the most part, simply restate paragraphs from the Amended Complaint. Compl. ¶¶8-18; Case Statement ¶2. Elsewhere, Paragraph 3 of Appendix LCvR 7.1B requires that a plaintiff "list alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each;" but rather than responding directly to the request, Plaintiff notes that "of particular interest will be the parties who made telephone calls to members of the class impersonating government officials." Case Statement ¶3. Finally, there are numerous instances in which Plaintiff's Case Statement fails to provide any facts or to comply at all with the requirements of the Standing Order for Case Statements. *See* Case Statement ¶¶9, 10, 16, 17.

Particularly troublesome are Plaintiff's apparent attempts to introduce new facts and new causes of action through the Case Statement.[6] "[T]he purpose of a RICO case statement is to enhance a vague complaint with additional details, not to raise new arguments or theories of the case for the first time." *DelRio–Mocci*, 2009 WL 2989537, at *3. In the Case Statement, Plaintiff alleges for the first time that Defendant Beaver "was the attorney for Carey V. Brown at all times relevant herein," that Defendants Brown and Beaver "have faced criminal action in New York

---

[6] Tellingly, due to Plaintiff's lack of due diligence, the caption to the case statement omits six of the named Defendants, and includes two new defendants: "SCOTT WILSON, and individual," and "IGOTIT.COM." Because neither the original Complaint, the Amended Complaint, nor the Case Statement make any other reference to these newly-identified purported defendants, Defendants must infer that their inclusion is the result of Plaintiff's counsels' failure to read the pleadings which they signed, rather than an attempt by Plaintiff to improperly add more defendants or intentionally delete defendants from the Amended Complaint.

for creating syndicate shell companies designed to market, make and collect payday loans considered illegal in many states," and that "the culpability of the defendants is furthered by their documented attempts to punish any employees who spoke out about the illegal activities being perpetrated." Case Statement ¶¶2(b), 5(d), 5(f). Plaintiff also attempts, for the first time in the Case Statement, to allege separate causes of action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Truth in Caller ID Act, 47 U.S.C. § 227(e), even though no such separate causes of action are alleged in the Amended Complaint. Case Statement ¶18.

Because Plaintiff's Case Statement is "non-responsive, conclusory, incoherent, unclear, and vague," *McDonald*, 2006 WL 2090088, at *1, and attempts to "raise new arguments or theories of the case for the first time" *DelRio–Mocci*, 2009 WL 2989537, at *3, it should be disregarded by the Court. Rather than clarify the RICO claims made in the Amended Complaint, the Case Statement simply regurgitates the Amended Complaint's vague and conclusory statements and attempts to confuse the court by introducing potential new areas of inquiry, new counts, and brand-new facts. Thus, because the Case Statement fails to provide any detail that serves to "amplify the allegations in the Complaint," it fails to comply with the requirements of Local Civil Rule 7.1 and fails to support Plaintiff's RICO claim.

### 3.   Plaintiff Has Failed to State a Claim Because the RICO Conspiracy Count is Speculative and Conclusory.

Plaintiff alleges that Defendants conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). "[A] § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)); *see also Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (citing *Leonard v. Shearson Lehman/American Express, Inc.*, 687 F. Supp. 177, 182 (E.D. Pa. 1988)).

Section 1962(c) prohibits ". . . any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through . . . collection of unlawful debt." 18 U.S.C. § 1962(c). An unlawful debt includes any "debt (A) . . . which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with ... the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." *Id.* § 1961(6). Thus, to sustain a Section 1962(c) claim, Plaintiff must allege: "(1) there was a RICO enterprise, (2) its activities affected interstate commerce, and (3) the individual defendants were employed by or associated with the enterprise." *Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 348 (3d Cir. 1986) (quoting *Durante Bros. and Sons, Inc. v. Flushing Nat. Bank*, 755 F.2d 239, 248 (2d Cir. 1985)). Additionally, Plaintiff must allege facts sufficient to prove that: "(1) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (2) the debt was incurred in connection with the 'business of lending money . . . at a [usurious] rate,' . . . (3) the usurious rate was at least twice the enforceable rate . . . [and] (4) as a result of the above confluence of factors, it was injured in its business or property." *Sundance Land Corp. v. Community First Federal Sav. and Loan Ass'n*, 840 F.2d 653, 666 (9th Cir. 1988) (quoting *Durante Bros.*, 755 F.2d at 248).

A RICO conspiracy claim under Section 1962(d) requires the plaintiff to allege two additional elements. First, the claim must allege the existence of an agreement to participate in "an endeavor which, if completed, would constitute a violation" of the RICO statute. *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 373. Second, a RICO conspiracy claim must allege knowledge that the predicate acts were part of the conspiracy to violate Section 1962(a), (b), or (c). *Odesser*, 676 F. Supp. at 1312.

As discussed below, Plaintiff has failed to allege that (1) there was a RICO enterprise, (2) there was an effect on interstate commerce, (3) an agreement existed among the defendants to

violate Section 1962(c), and (4) defendants knew about the alleged collection of unlawful debt.

### a.     Plaintiff Has Not Adequately Pled A RICO Enterprise.

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). To establish an enterprise, a plaintiff must allege facts showing three "structural features" that is, a common "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 369 (quoting *U.S. v. Boyle*, 556 U.S. 938, 946 (2009)). Where, as here, "the asserted enterprise, however, is not itself a legal entity, but rather an association of legal entities, simply identifying the allegedly associated components does not serve to put defendants on notice of the RICO claim alleged against them—just as merely listing the names of alleged conspirators would not give defendants adequate notice of an alleged conspiracy." *Id.*

Plaintiff merely names the allegedly associated components of an enterprise, but does not plead the structural attributes of an enterprise. The Amended Complaint characterizes "payday lenders" generally as "offering loans at usurious and unconscionable rates," Compl. ¶3, and makes the sweeping unsupported assertion that "[c]ertain payday lenders, such as defendants, make use of the Internet to circumvent these [state law] prohibitions [on payday loans] and offer payday loans to consumers residing in these states while ignoring the laws prohibiting those very loans []." *Id.* ¶5. Plaintiff's Case Statement fares no better and adds nothing to the Amended Complaint. Paragraph 6 to Appendix LCvR 7.1B requires a plaintiff to "describe in detail the alleged enterprise for each RICO claim." Plaintiff's Case Statement attempts to conceal a lack of facts beneath a veneer of buzzwords and legal conclusions, but in reality offers no facts to support an allegation of an "enterprise." While Plaintiff repeatedly states that Defendants were part of a common enterprise, such legal assertions are undermined by the admission in the Case Statement that "[i]t is not known entirely how the enterprise of the defendants worked other than

10

some companies provided loans, other funneled money, other companies provided supports services and other companies provided collection services." Case Statement ¶6. Plaintiff additionally argues that while "[e]ach defendant will likely attempt to claim that they are a separate entity from the alleged enterprise...all acted with a common goal and some acted interchangeably at times." *Id.*

Thus, the Amended Complaint alleges neither a common purpose, relationships among those associated with the enterprise, nor longevity sufficient to permit these associates to pursue the enterprise's purpose. In fact, Plaintiff's RICO claim is undermined by the apparent argument that Defendants are not separate entities from the alleged enterprise, and that the alleged enterprise involved the provision of loans and support services, that is, the operation of Defendants' core business. Case Statement ¶6. At least one district court has dismissed a RICO complaint premised on collection of unlawful debts where "Plaintiffs' own allegations demonstrate that the allegedly usurious acts were committed as part of each corporation's [] business." *Rivera v. AT&T Corp.*, 141 F. Supp. 2d 719, 725-26 (S.D. Tx. 2001). Here, as in *Rivera*, Plaintiff's own allegations are premised on nothing more Defendants' engagement in their core businesses, and therefore have failed to plead any facts supporting the allegation that Defendants were engaged in an enterprise supporting a RICO claim.

###        b.        Plaintiff Has Not Adequately Pled An Effect On Interstate Commerce.

To succeed on a civil RICO claim, a plaintiff must allege that "its activities affected interstate commerce." *Malley-Duff & Associates, Inc.*, 792 F.2d at 348. Plaintiff has not alleged *any* facts showing that Defendants' purported enterprise had an effect on interstate commerce. Rather, the Amended Complaint merely alleges, in a conclusory manner, the use of interstate wires and/or interstate telephone lines. Compl. ¶57. Further, in response to the requirement that the Case Statement "describe the effect of the activities of the enterprise on interstate or foreign commerce," Plaintiff merely alleges that "[t]he activities of the enterprise have caused consumers around the country to fall prey to illegal loans and illegal collection attempts. The

number of consumers defrauded is likely in the tens of thousands." Case Statement ¶10. However, when "the RICO Case Statement, instead of providing specific facts, as required, alleges only 'the scheme described herein affect[s] interstate commerce' . . . Such a conclusory allegation evidences that Plaintiff's attorney did little or no investigation and/or research regarding what constitutes an effect on interstate commerce." *Morrow v. Blessing*, No. 04-1161, 2004 WL 2223311, at *6 (E.D. Pa. Sept. 29, 2004). Here, Plaintiff has likewise failed to identify specific facts, instead only asserting in a conclusory manner that the activities of Defendants' purported enterprise have affected "consumers around the country," without even bothering to describe how it affected consumers or the interstate nexus involved. This conclusory language, and abject failure to provide any factual detail, cannot support this element of the RICO claim.

### c.     Plaintiff Has Not Adequately Pled An Agreement Among The Defendants.

Plaintiff's conclusory allegations further fail to adequately plead the element that an agreement existed between two or more persons to collect an unlawful debt in violation of section 1962(c). To survive a motion to dismiss, a plaintiff alleging a RICO conspiracy claim must plausibly allege a meeting of the minds. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 (11th Cir. 2010). Plaintiff has fallen short of this "plausibility" standard by merely making repetitive and conclusory allegations regarding the purported conspiracy. For example, Plaintiff asserts in the Case Statement the bare legal conclusion that:

> All of the listed defendants **conspired** to provide illegal loans to unsuspecting consumers throughout the United States. The defendants then **conspired** to hide the identity and the whereabouts of the persons providing the loans and used their various entities to hide the illegally obtained proceeds from the illegal lending. The defendants also **conspired** to use illegal collection tactics to further their profits.

Case Statement ¶14 (emphasis added). Plaintiff further alleges that:

> Defendants or agents or employees acting on their behalf, agreed to initiate the transactions whereby borrowers' bank accounts were debited and the unlawful debts collected in violation of 18 U.SC. § 1962(c) again through interstate wires and/or interstate telephone lines . . .

12

Compl. ¶57. Plaintiff's repeated assertions that an agreement or conspiracy existed fails to support the RICO conspiracy count where no facts are alleged to support *even an inference* that any defendant entered into an agreement with one or more other persons to collect an unlawful debt.

> **d.     An Intra-Corporate Conspiracy Cannot Support A RICO Conspiracy Count.**

Moreover, even if Plaintiff had adequately pled an agreement among the defendants, the agreement alleged is only an intra-corporate conspiracy, which cannot support the RICO conspiracy count. It is well-settled in this Circuit that a corporation cannot conspire with itself. *See, e.g.*, *Eichorn v. AT&T Corp.*, 248 F.3d 131, 139 (3d Cir. 2001) (finding single entity in a parent-subsidiary relationship "incapable" of conspiring to violate antitrust laws); *Johnston v. Baker*, 445 F.2d 424, 427 (3d Cir. 1971) ("A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.").[7] It is also established that managing agents of a corporation, acting in the scope their employment, cannot conspire with each other. *United Nat'l Ins. Co. v. Equip. Ins. Managers*, Nos. 95-0116 & 95-2892, 1995 WL 631709, at *6 (E.D. Pa. Oct. 27, 1995) (dismissing Section 1962(d) count where plaintiffs did not allege that the defendants "acted solely for their own interest and personal benefit, and not for the benefit of" the corporate defendant); *see also, e.g.*, *Castle v. Crouse*, No. 03-5252, 2004 WL 257389, at *6 (E.D. Pa. Feb. 11, 2004); *Hughes v. Technology Licensing Consultants, Inc.*, 815 F. Supp. 847, 851 (W.D. Pa. 1992). In *Hughes*, this district court dismissed a RICO conspiracy count against corporate officers, and noted that:

> [A] corporation cannot conspire with itself because a corporation can act only through its officers and employees. While conducting company business, they cannot conspire with the corporation of which they form an indispensable part. A

---

[7] "Since the law in this area of RICO is unsettled, district courts have looked to antitrust cases for guidance." *District 1199P Health and Welfare Plan v. Janssen, L.P.*, Nos. 06-3044, 07-2608, & 07-2860, 2008 WL 5413105, at *14 (D.N.J. Dec. 23, 2008).

> corporate conspiracy also requires more than the collective judgment of two
> individuals within the same entity, for their conduct, if challenged, becomes that
> of the single, corporate entity.

815 F. Supp. at 851 (quoting *Jagieski v. Package Mach. Co.*, 489 F. Supp. 232, 233 (E.D. Pa. 1980)).

Plaintiff alleges that the corporate defendants are owned and/or controlled by Carey Brown, and managed by Ronald Beaver.[8] Compl. ¶¶8-9; Case Statement ¶6. Because, as alleged, Defendants Brown and Beaver were personally involved in, responsible for, and/or participated in all business decisions made by the corporate defendants, by definition, they could not have conspired with each other or with the corporate defendants. *Id.*

### e.    Plaintiff Has Not Adequately Pled Knowledge.

It is well-settled in the Third Circuit that "to survive dismissal [a Complaint] does not suffice to simply say that the defendants had knowledge; there must be factual allegations to plausibly suggest as much." *Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 255 (3d Cir. 2010). Plaintiff makes no such "plausible" factual showing of knowledge. "While [a defendant] need not have personally participated in the commission or attempted commission of any predicate acts... the complaint must at least include some factually based allegation that [each defendant] knew about and agreed to facilitate an alleged scheme." *Kucher v. Alternative Treatment Center of Paterson, LLC*, No. 05-cv-3733, 2006 WL 2527851, at *5 n.3 (E.D.N.Y. Aug. 29, 2006).

The Amended Complaint makes the conclusory allegation that "Defendant [sic] knew payday loans were illegal and unenforceable," that "the defendants offered plaintiff a loan with knowledge that the terms of the loan were contrary to state and federal law," and that "Defendant

---

[8] Plaintiff's Amended Complaint alleges that Beaver "served as the CEO of the corporate defendants" and that he "managed the business on a day-to-day basis." Compl. ¶9. However, inexcusably, Plaintiff's Case Statement makes an inconsistent factual assertion – that Beaver "was the attorney for Carey V. Brown." Case Statement ¶2.

[sic] knew that certain collection techniques involving the use of interstate wires and/or interstate telephone lines were contrary to provisions of federal law." Compl. ¶¶57(b), 57(c); Case Statement ¶5. However, aside from simply concluding that Defendants had knowledge, Plaintiff has not alleged either in the Amended Complaint or the Case Statement even a single fact supporting those conclusory allegations.

### 4.     Plaintiff Lacks Standing.

The standing limitation set forth in 18 U.S.C. § 1964 is intended to limit the class of plaintiffs who can bring a civil RICO action. To have standing, a plaintiff is required to demonstrate: "(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2008). In other words, a plaintiff alleging RICO conspiracy must "allege injury from an act that is analogous to an 'act of tortious character,' . . . meaning an act that is independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000). Moreover, a plaintiff must show injury by the commission of an overt act in furtherance of the conspiracy. *Anderson*, 396 F.3d at 269.

Here, Plaintiff alleges that "as a direct and proximate result of Defendants [sic] conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff and the members of the Class were injured in their property by the debiting of their bank accounts by Defendants and such injury was reasonably foreseeable." Compl. ¶59. Plaintiff's Case Statement offers no additional detail, instead merely alleging that "the class has been injured financially through the usurious loans and illegal collection tactics," and even admits that "the damages sustained by the class are unknown." Case Statement ¶¶15, 17. While this allegation attempts to address the "injury to business or property" prong of the standing analysis, it wholly fails on the "proximate cause" prong. Rather, this conclusory statement, without alleging additional facts to support it, merely regurgitates the minimal pleading requirements of a civil RICO claim. Plaintiff acknowledges the inability to allege proximate cause, as the Case Statement fails to include any supporting facts on this point. In fact, Plaintiff

has simply reiterated the instructions from Appendix LCvR 7.1B: "Describe the direct causal relationship between the alleged injury and the violation of the RICO statute" without providing any such description. Case Statement ¶16. Plaintiff's Amended Complaint and Case Statement attempt to allege standing through the use of mere conclusory language pulled from the RICO statute. This is precisely the sort of formulaic recitation of the elements prohibited by *Iqbal*. Therefore, Plaintiff has failed to plead any facts sufficient to establish standing.

> **C.    Plaintiff's Pennsylvania Usury Claim is Barred by the Statute of Limitations and the Usury Count Fails to State A Claim As to the Other States and the District of Columbia.**

Plaintiff's second cause of action alleging violations of the usury statutes of thirteen states (including Pennsylvania) and the District of Columbia fails for two reasons. Compl. ¶¶4, 31, 46. First, Plaintiff's cause of action under the Pennsylvania usury statute is barred by the four-year statute of limitations.[9] Second, the Amended Complaint fails to allege the statutory elements or any facts supporting a cause of action for allegedly violating the usury statutes of twelve other states and the District of Columbia.

Plaintiff's cause of action is untimely under 41 PA. CONS. STAT. § 502, which provides:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges: Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment . . .

Hence, Section 502 limits causes of action to those "commenced within four years from and after the time of such payment." As discussed in more detail in Section B(1), *supra*, the only payment

---

[9] Plaintiff has not identified which other state statutes are contemplated by the Amended Complaint; however, given that the statute of limitations for any other usury causes of action began to run in Fall 2013, Defendants anticipate that those causes of action are likely time-barred as well.

which Plaintiff alleges to have made is repayment within "a matter of weeks" after receipt of the loan on October 9, 2009. Compl. ¶¶24, 39-40. As such, the statute of limitations for the Pennsylvania state usury claim ran in the Fall of 2013, four years after the date on which Plaintiff made the payment. Therefore, Plaintiff's cause of action for usury in violation of 41 PA. CONS. STAT. §§ 201 and 502[10] must be dismissed as time-barred.

Second, to the extent that Plaintiff brings a cause of action for usury under the laws of Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Vermont, West Virginia and the District of Columbia, those claims must also be dismissed for failure to state a claim. Compl. ¶32. The only state whose statute Plaintiff identifies is Pennsylvania. Compl. ¶¶61-67. The only allegedly usurious loan Plaintiff identifies is the one Plaintiff applied for in Pennsylvania, and the only alleged collection of usurious interest in excess of a statutory cap occurred in Pennsylvania. Compl. ¶¶39, 64. Because Plaintiff has not identified the statutes of the other states or the District of Columbia, nor articulated facts giving rise to a violation of those statutes, any claim for relief for usury under those statutes must be dismissed for failure to state a claim.

### D. The Complaint Fails to State A Claim for Relief For Violations of the Fair Debt Collection Practices Act ("FDCPA").

Plaintiff's third claim for relief alleges that Defendants violated the FDCPA.[11] "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (*quoting Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). As discussed in detail

---

[10] Plaintiff's claim under § 502 appears to be premised on an allegation that Defendants collected interest at a rate greater than 6% per annum, in violation of 41 PA. CONS. STAT. § 201. Compl. ¶¶63, 65.

[11] Defendants assume that Plaintiff intended to claim relief under the "*Fair* Debt Collection Practices Act," as opposed to the "*Federal* Debt Collection Practices Act," Compl. ¶69, or the "Fair Debt Collection Act," Compl. ¶88.

below, Plaintiff has failed to allege that any defendant is a debt collector under the second prong, that any debt was for personal, family, or household purposes under the third prong, or that any defendant has violated a substantive provision of the FDCPA under the fourth prong. As such, Plaintiff's claim for violation of the FDCPA must be dismissed.

**1.**     **The Complaint Fails to Allege that Any of the Defendants are a "Debt Collector" Subject to Liability under the FDCPA.**

Plaintiff alleges that *all* Defendants—both named and Unknown—violated the FDCPA by attempting to collect payday loans allegedly extended to Plaintiff and an unnamed class of other consumers. The Amended Complaint fails to provide any information about these alleged Unknown Defendants. The FDCPA regulates "debt collectors" and prohibits them from taking certain actions or making certain representations in connection with collecting a consumer debt as explicitly described in the statute. *See* 15 U.S.C. §§ 1692 *et seq.* To establish liability under the FDCPA, a plaintiff must demonstrate that a defendant is a "debt collector" under 15 U.S.C. § 1692a(6).

A "debt collector" is defined as a person who regularly collects or attempts to collect debts owed to "another." 15 U.S.C. § 1692a(6); *see Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). Entities that "offer or extend credit creating a debt" or those "to whom a debt is owed" are "creditors" not "debt collectors." 15 U.S.C. § 1692a(4). Moreover, even creditors that collect debts owed to them are not "debt collectors," and are not subject to the FDCPA. *Pollice*, 225 F.3d at 403.

The Third Circuit has consistently held that "the FDCPA's provisions 'generally apply only to debt collectors [as defined in the FDCPA].'" *Owens v. JP Morgan Chase Bank*, No. 12-1081, 2013 WL 2033149, at *3 (W.D. Pa. May 14, 2013) (quoting *Schaffhauser v. Citibank (S.D.) N.A.*, 340 Fed. App'x. 128, 130 (3d Cir. 2009)). A defendant's status as a "debt collector" is a necessary prerequisite to liability under the FDCPA. Where a complaint fails to allege that defendants are debt collectors, it fails to state a claim. *See, e.g.*, *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006) (determining, as a prerequisite before reaching the alleged

misconduct, that the defendant *could* be liable under the FDCPA because it met the statutory definition of "debt collector" under section 1692a(6)). Creditors, "as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Pollice*, 225 F.3d at 400. Further, "an assignee of a creditor is also not a 'debt collector' as long as the obligation was not in default at the time of assignment." *Ruff v. Am.'s Servicing Co.*, No. 07-0489, 2008 WL 1830182, at *5 (W.D. Pa. Apr. 23, 2008) (citing *Pollice*, 225 F.3d at 403).

The Amended Complaint alleges that Defendants violated the FDCPA and are liable to Plaintiff, but it fails to allege that any defendant is a "debt collector," which is a necessary element for liability. Plaintiff alleges that CPS "provided origination, funding, underwriting and processing," but does not allege that CPS was a "debt collector." Compl. ¶10. Similarly, Plaintiff alleges that ACH Federal was an electronic payment system, but does not allege that it was a debt collector. *Id.* ¶12. Plaintiff alleges that MyCashNow, Discount Advances, and PayDayMax accepted, processed and approved loan applications, and deposited loans into (and withdrew payments from) borrower accounts, but not that they were debt collectors. Compl. ¶¶11, 14, 15. Plaintiff alleges that CPD purchased loans, but does not allege it was a debt collector, nor does Plaintiff state whether the loans were in default when they were allegedly purchased or whether CPD engaged in any collections activity and, if it did, whether that activity violated the FDCPA. *Id.* ¶13. The Amended Complaint states that Owls Nest was a "holding company" and Millenium was a company "incorporated to funnel profits," but again not that either entity is (or ever was) a "debt collector." Compl. ¶¶17-18. Finally, Plaintiff alleges that Support Seven served as the customer call center for Defendants, and that "in this role...made collection calls to members of the CLASS." Compl. ¶16.

Thus, the Amended Complaint states no facts to support a conclusion that CPS, ACH Federal, CPD, Owls Nest, or Millenum have ever been involved in collections activities; that any of them were responsible for any call to Plaintiff; or that a call placed by any of them actually violated the FDCPA. Further, rather than alleging that MyCashNow, Discount Advances, or PayDayMax are debt collectors under the FDCPA, the Amended Complaint alleges that they are

creditors. Finally, Plaintiff's statement that Support Seven made collection calls is conclusory, and undermined by the allegation that Support Seven's primary function was to serve as a customer call center. Moreover, there is no allegation (or any facts alleged even suggesting) that Support Seven "regularly collects or attempts to collect debts owed to another" as required by the statute. 15 U.S.C. § 1692a(6). Thus, given that Plaintiff has failed to allege that any of the Defendants are debt collectors in conformance with the statutory definition, the conclusory allegation that "Defendants' employees, agents and/or assigns . . . attempt[ed] to collect a debt on behalf of Defendants" fails to support a claim. *Id.* ¶42; *see also Ruff*, 2008 WL 1830182, at *5.

With respect to Defendant Brown, Plaintiff lumps him in with the other entities alleging that he "owned and/or controlled" them and was "personally involved and responsible for all of the business decisions the corporate defendants made." Compl. ¶8. The Amended Complaint states no facts even suggesting that Brown was a "debt collector," nor that he was involved with any companies that were "debt collectors" under the FDCPA.

### 2. Plaintiff Fails to Allege That The Loan Was For Personal, Family or Household Purposes.

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Although Plaintiff asserts that a payday loan was applied for and received, Plaintiff fails to make any assertion as to the nature of that loan. Rather, Plaintiff merely asserts the legal conclusion that "Defendants' phone calls to Plaintiff are a communication relating to debt as defined by sections 1692 (a)(2) and 1692 (a)(5) of the FDCPA," Compl. ¶70. This vague and conclusory description of the purported debt does not allege that the loan at issue is a debt as defined by the FDCPA. *See, e.g.*, *Johns v. Northland Group, Inc.*, 76 F. Supp. 3d 590, 598 (E.D. Pa. 2014).

### 3.  Plaintiff Fails to Allege Specific Conduct by a Defendant that Violated the FDCPA.

The third claim for relief also fails to allege actual conduct by a defendant that violated the FDCPA.[12] Rather than state facts to show that Defendants committed a violation, the Amended Complaint merely cut-and-pastes language from the list of potential violations set out in the statute at Sections 1692d, 1692e, and 1692f, which Plaintiff attempts to pass off as collections activity undertaken by the Defendants. Mere recitation of the elements is insufficient to plead a claim for relief because it deprives Defendants "fair notice of what the . . . claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555.

Section 1692d of the FDCPA prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Plaintiff alleges that Defendants are liable for "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Compl. ¶71(e). This allegation, however, merely recites the language of the statute. 15 U.S.C. §1692d(5).

Section 1692e of the FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff's allegations that Defendants "us[ed] false, deceptive or misleading representations or means in connection with the collection of debt," "falsely represent[ed] the character, amount or legal status of the debt," and "us[ed] a false representation or deceptive means to collect or attempt to collect a debt" also parrot the language of the statute. Compl. ¶¶71(a)-(c); 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10). Section 1692f penalizes the use of "unfair or unconscionable means to collect or attempt to collect any debt." Plaintiff's allegation that Defendants "us[ed] unfair or unconscionable means

---

[12] The Amended Complaint references two other statutory schemes, namely the Telephone Consumer Protection Act (the "TCPA") and the Truth in Caller ID Act, but does not allege separate violations of those laws. Compl. ¶71. Moreover, Plaintiff merely recites the elements of those statutes and asserts legal conclusions without identifying any facts supporting a violation of those laws.

to collect or attempt to collect any debt," without more, is insufficient. Compl. ¶71(d).[13]

Plaintiff also makes the misplaced argument that violations of the Telephone Consumer Protection Act ("TCPA") constitute violations of the FDCPA. Plaintiff alleges that Defendants' purported FDCPA violations include "using autodialing mechanisms, calling numbers on do not call lists, failing to provide required information over the phone and/or calling residences outside of the allotted time frame in violation of the Telephone Consumer Protection Act codified at 47 U.S.C. 227 (b)," and "using phone spoofing technology as a means of deception in violation of the Truth in Caller ID ACT 47 U.S.C. 227 (e) and 15 U.S.C. 1692 d (6)."[14] Compl. ¶¶71(f), 71(h). However, a "defendant's technical violation of the TCPA...is not the type of illegal act the FDCPA prohibits." *Gomez v. Oxford Law, LLC*, No. 3:14cv477, 2015 WL 58766, at *4 (M.D. Pa. Jan. 5, 2015). Finally, Plaintiff attempts to combine the provisions of Sections 1692d, 1692e, and 1692f by alleging that Defendants have "otherwise us[ed] false, deceptive, or misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt from plaintiff and the Class." Compl. ¶71(g). Again, Plaintiff's use of buzzwords from the statute and conclusory language, without supporting facts, fails to support any claim under the FDCPA. *See Souders v. Bank of Am.*, No. 1:CV–12–1074, 2012 WL 7009007, at *17 (M.D. Pa. Dec. 6, 2012) (dismissing FDCPA claim because "Plaintiff has failed to state both RICO claims and FDCPA claims with the required factual sufficiency, and that Plaintiff has attempted to support her allegations with sweeping legal buzz words and conclusions.") Where, as here, a plaintiff makes "broad allegations against a large and mostly anonymous group of people, [the] court cannot 'draw the reasonable inference that the defendant [] is liable for the misconduct alleged,' because

---

[13] Plaintiff's allegation that "Defendants' employees, agents and/or assigns held themselves out to be persons other than themselves and represented that they were law enforcement officials attempting to collect a debt on behalf of Defendants" is likewise too vague to attribute any wrongdoing to Defendants. Compl. ¶42.

[14] Plaintiff cites to 47 U.S.C. §227 as the Truth in Caller ID Act, but this is not a valid citation. The Truth in Caller ID Act of 2009 made certain amendments to the TCPA. *See* Pub.L. 111–331, 124 Stat. 3572.

[it] cannot tell which defendant is alleged to have done what, nor can [it] tell what the misconduct was." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013).

      **E.**      **Plaintiff Has Failed to State A Claim for Relief for Breach of Fiduciary Duty, Breach of Implied Duty of Confidentiality, and Invasion of Privacy.**

            **1.**      **Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Because the Law Does Not Recognize a Fiduciary Relationship Between a Borrower and a Lender.**

Plaintiff's fourth claim for relief fails because there is no legal basis to support the argument that collection of personal financial information by a creditor gives rise to a fiduciary duty. Ordinarily, the lender-borrow relationship is one of debtor-creditor, and "rarely . . . found to give rise to a fiduciary duty."[15] *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988). The same is true under many states' laws, including in Pennsylvania. *See, e.g., Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992) *aff'd*, 981 F.2d 1248 (3d Cir. 1992) ("Pennsylvania law follows the well recognized principle that a lender is not a fiduciary of the borrower.") Thus, receipt of confidential information, without more, does not create a fiduciary relationship between a lender and borrower. *See, e.g.*, *Washington Steel Corp. v. TW Corp.*, 602 F.2d 594, 599 n.2 (3d Cir. 1979) ("we reject the implication of a Per se fiduciary duty from a bank's receipt of confidential information"), overruled on other grounds by *Clark v. K-Mart Corp.*, 979 F.2d 965 (3d Cir. 1992).

            **2.**      **Plaintiff Fails to State A Claim For Counts Four and Five Because There Is No Private Right of Action Under the Gramm-Leach-Bliley Act (GLBA).**

Plaintiff's fourth and fifth claims for relief fail because they purport to rely on the GLBA, under which no private cause of action exists. In the fourth claim for relief, Plaintiff alleges that

---

[15] Only in limited circumstances have courts imposed fiduciary duties on lenders, namely where a special relationship arises because the negotiation is not at arms-length, typically where "the lender gains substantial control over the borrower's business affairs." *Paradise Hotel Corp.*, 842 F.2d at 53. Plaintiff fails to allege, and cannot allege, that any such circumstances exist here.

Defendants owed a fiduciary duty and an implied duty of confidentiality to Plaintiff and breached those duties by disseminating personally identifiable information to third parties.[16] Plaintiff further alleges that the GLBA sets the standard of care for the alleged fiduciary relationship with respect to personally-identifiable information and created a duty not to disseminate the information. Compl. ¶76; *see also* 15 U.S.C. §§ 6801-6809. The Amended Complaint then alleges that Defendants breached their duty under the GLBA by disseminating personally-identifiable information to third parties. Compl. ¶77. Plaintiff further alleges a list of other purported breaches of fiduciary duty, all of which are no more than legal conclusions wholly devoid of factual support. Compl. ¶79. In the fifth claim for relief, the Amended Complaint alleges that the GLBA "and various state laws protecting personal information and personal financial information" impose an obligation upon Defendants "not to disclose the personal information they had obtained from Plaintiff []," such that the Defendants' alleged disclosure invaded the Plaintiff's privacy. Compl. ¶82.

Plaintiff has failed to state a claim because the GLBA does not create a private right of action. *See* 15 U.S.C. § 6805; *see also Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) ("no private right of action exists for an alleged violation of the GLBA."); *In re Lenz*, 448 B.R. 832, 840 (Bankr. D. Or. 2011). Therefore, Plaintiff's attempt to manufacture a private right of action by disguising GLBA claims as breach of fiduciary duty and invasion of privacy causes of action must be rejected.[17]

---

[16] Although, Plaintiff actually makes the inconsistent allegations that Defendants' alleged collection and dissemination of personally identifiable information simultaneously *creates* and *breaches* a fiduciary duty based on a special relationship under the GLBA. Compl. ¶¶75-77.

[17] Even if the GLBA were to provide a private cause of action, Plaintiff's Amended Complaint would still fail due to insufficient factual pleading. As with the third claim for relief, the allegations in the Amended Complaint merely recite elements and legal conclusions, and such conclusory statements without any factual enhancement cannot sustain a plausible claim for relief. Compl. ¶¶77-80, 83-85; *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

**F.    Plaintiff Has Failed To State A Claim For Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").**

In the Amended Complaint, Plaintiff adds a count premised on an alleged violation of Pennsylvania's UTPCPL, 73 PA. CONS. STAT. §201-1 *et seq*. "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501 (Penn. 2004); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008) (noting the Pennsylvania courts' "repeated holdings that to bring a private cause of action under the Consumer Protection Law, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered a harm as a result of that reliance," and concluding that the private plaintiffs alleging deceptive conduct under the catchall provision were required to allege justifiable reliance.) (quotations omitted). Thus, "to state a claim under the UTPCPL catchall provision, a plaintiff must allege that (1) the defendant engaged in deceptive or wrongful conduct or made representations which creates a likelihood of confusion or misunderstanding, (2) the plaintiff justifiably relied on the defendant's wrongful conduct or representations, and (3) the plaintiff suffered harm as a result of that reliance." *Geesey v. CitiMortgage, Inc.*, No. 3:14–188, 2015 WL 5714494, at *20 (W.D. Pa. Sept. 29, 2015).

**1.    Plaintiff Has Not Adequately Pled Justifiable Reliance.**

"Under Pennsylvania law, a plaintiff alleging violations of the [UTPCPL] must prove justifiable reliance." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Penn. 2007) (citing *Yocca*, 854 A.2d 425); *see also Lombardi v. Allstate Ins. Co.*, No. 08-949, 2009 WL 1811540 (W.D. Pa. Jun. 23, 2009). "[E]vidence of reliance must go beyond 'simply a causal connection between the misrepresentation and the harm,' and a plaintiff must 'show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.'" *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 461 (E.D. Pa. 2013) (quoting *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 n.4 (3d Cir. 2008)).

Plaintiff alleges wrongful conduct and misrepresentations by Defendants' employees, agents and/or assigns. Compl. ¶¶41-44. However, other than to assert the bare legal conclusion that "[t]he foregoing misrepresentations regarding the payday loan services were deceptive and caused Plaintiff and the Plaintiff's Sub-Class members to suffer monetary damages," Plaintiff fails to allege any reliance on the purported wrongful conduct or misrepresentations. Compl. ¶90. Where, as here, a plaintiff alleges wrongful conduct, but fails to plead any actions pursued on the basis of that conduct, plaintiff cannot show justifiable reliance necessary to sustain a UTPCPL claim. *Warren v. Wells Fargo Bank, N.A.*, No. 2:15-cv-1067, 2016 WL 693121, at *3 (W.D. Pa. Feb. 22, 2016).

### 2. Plaintiff Has Not Adequately Pled The Elements of a False Advertising Claim Under The UTPCPL.

Even if Plaintiff had pled justifiable reliance, which Plaintiff has not, the claims for false advertising under the UTPCPL fail on other grounds. Plaintiff alleges that Defendants' misrepresentations and conduct violate Section 201-2(4)(v) ("representing that . . . services have . . . characteristics . . . uses, benefits or qualities that they do not have") and Section 201-2(4)(ix) ("advertising . . . services with intent not to sell them as advertised."). To plead false advertising under either subsection of the UTPCPL, "a plaintiff must allege: (1) a defendant's representation is false; (2) it actually deceives or has a tendency to deceive; and (3) the representation is likely to make a difference in the purchasing decision." *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (quoting *Fay v. Erie Ins. Group,* 723 A.2d 712, 714 (Pa. Super. Ct. 1999)). A claim under Section 201-2(4)(ix) must also allege that defendants intentionally engaged in false advertising. *Seldon*, 647 F. Supp. 2d at 466*.*

Although the Amended Complaint alleges in a conclusory manner that Defendants made certain promises through their policies and websites, and that "these deceptive promises and guarantees were false when made and were made by the Defendants with knowing falsity," Compl. ¶89, it fails to even allege (let alone plead any facts to suggest) either that any statement by Defendants "actually deceives or has a tendency to deceive" or that "the representation is

likely to make a difference in the purchasing decision." *Id.* Therefore, the false advertising claims under the UTPCPL Count must be dismissed.

> **3.     Plaintiff Improperly Alleges Substantive Violations of Other Statutes Without Sufficiently Pleading Them, In An Effort To Find A Backdoor Through The UTPCPL.**

Plaintiff's allegations of UTPCPL violations also rely on other alleged misrepresentations purportedly made on Defendants' websites, including statements "that all loans were made in compliance with the Truth in Lending Act and that all collection methods were handled in accordance with the Fair Debt Collection Act [sic] in additional to local and Federal laws." Compl. ¶88. "Under Pennsylvania law, per se violations of the UTPCPL should be expressly provided for in the underlying statute." *Seldon*, 647 F. Supp. 2d at 471 (quoting *Abrams v. Toyota Motor Credit Corp.,* No. 071049, 2001 WL 1807357, at *8 (Pa. Ct. Com. Pl. Dec. 5, 2001)). "A [Truth in Lending Act] violation is not a per se violation of the UTPCPL." *Id.* Plaintiff has merely concluded (without alleging any supporting facts) that Defendants' alleged statements that loans were made in compliance with the Truth in Lending Act were deceptive. Regardless, even had Plaintiff alleged the elements giving rise to a TILA violation, which it has not, that would not suffice to allege a UTPCPL violation. Likewise, Plaintiff's legal conclusion that Defendant did not comply with the FDCPA, when Plaintiff has failed to plead a claim under the FDCPA, cannot support a claim under the UTPCPL.

> **G.     Plaintiff's Claims Must Be Dismissed Because the Putative Class is an Impermissible Fail-Safe Class.**

Plaintiff brought this action on behalf of herself and others alleged to be similarly-situated. The Amended Complaint defines a putative Class and Sub-Class. The Class is defined as follows:

> ***All natural persons*** within the states of Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Vermont, West Virginia and the District of Columbia who received a payday loan that was illegal under the respective laws of their states from one of the Defendants and were then subsequently ***targeted by the Defendants' employees, agents or assigns in a telephone debt collection scheme in violation of 15 U.S.C. § 1692***. Members of this class can be identified by records

27

maintained by defendants.

Compl. ¶46 (emphasis added). The Sub-Class is defined as:

> All Natural persons residing within the Commonwealth of Pennsylvania who **received a payday loan from one of the Defendants which violated any Pennsylvania laws including Pennsylvania Usury Laws and the Pennsylvania UTPCPL**. Members of this class can be identified by records maintained by defendants.

*Id.* (emphasis added). Plaintiff's classes, as defined, are impermissible, fail-safe classes. For that reason, Plaintiff has failed to allege a sustainable "class" under Federal Rules of Civil Procedure 8 and 23.

"A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) (quoting *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). The "classic formulation" of a fail-safe class is one that defines a class as "all individuals wronged by the defendant." *Zarichny*, 80 F. Supp. 3d at 624. Fail-safe classes are impermissible because they "require[] a determination on the merits before members are identified, creating what the Supreme Court called 'one-way intervention,'" meaning "either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by any judgment, are free to pursue individual claims . . . impermissibly skirt[ing] the bar of *res judicata*." *Id.* (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)).

Although rare, dismissal of class allegations before discovery is appropriate where, as here, the "class treatment is evidently inappropriate from the face of the complaint." *Zarichny*, 80 F. Supp. 3d at 625-26. In the Third Circuit, "an essential prerequisite of a Rule 23 action is that there *be* a class, and '[c]ourts have generally articulated this 'essential prerequisite' as the implied requirement of 'ascertainability'—that the members of a class are identifiable at the moment of certification.'" *Id.* at 626 (quoting *Shelton v. Bledsoe*, 775 F.3d 554, 559-60 (3d Cir. 2015)). Plaintiff's classes are defined by the purported illegality of the payday loans they

received. Compl. ¶46. Therefore, Plaintiff's putative fail-safe classes cannot meet the ascertainability requirement because membership cannot be determined at the class certification stage; rather, they are premised upon a finding of Defendants' liability. *Zarichny*, 80 F. Supp. 3d at 626.

Accordingly, the Court should dismiss the class allegations in the Amended Complaint because the Amended Complaint, on its face, demonstrates that class treatment is inappropriate and Plaintiff has failed to state a claim as to the classes.

## III.   Conclusion

For the foregoing reasons, all Counts of the Amended Complaint should be dismissed in their entirety,[18] and the Moving Defendants respectfully request that the Court award costs and such other and further relief as this Court deems just and proper.[19]

---

[18] Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), the time for filing an Answer on behalf of the Moving Defendants is tolled until 14 days after notice of the Court's ruling on this Motion. Should an Answer still be required, Moving Defendants respectfully request that they have 21 days from the date of the Order to file their Answer.

[19] Should this Court decline to dismiss the Amended Complaint in its entirety, the Moving Defendants reserve the right to bring a motion to compel arbitration, which is treated as a motion to dismiss for failure to state a claim, and therefore need not be raised in this Motion to Dismiss. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004).

DATED: April 1, 2016                    Respectfully Submitted,


                                        SIDEMAN & BANCROFT LLP


                                        By:  */s/ Rebecca K. Felsenthal*
                                        James M. Lord (admitted *Pro Hac Vice*)
                                        Colorado Bar No. 40747
                                        Rebecca K. Felsenthal (admitted *Pro Hac Vice*)
                                        California Bar No. 303476
                                        SIDEMAN & BANCROFT LLP
                                        One Embarcadero Center, 22nd Floor
                                        San Francisco, Calfornia 94111-3711
                                        Tel:    (415) 392-1960
                                        Fax:    (415) 392-0827
                                        Attorneys for Defendants
                                        Carey V. Brown, ACH Federal LLC, Credit Payment
                                        Services, Inc., Credit Protection Depot, Inc., Owls Nest,
                                        LLC, Millenium Financial Concepts Inc.,
                                        MyCashNow.com, Inc., PayDayMax, Ltd., Discount
                                        Advances, Inc., and Support Seven LLC

**CERTIFICATE OF SERVICE**

I certify that on April 1, 2016, the foregoing Brief of Defendants Carey V. Brown, ACH Federal LLC, Credit Payment Services, Inc., Credit Protection Depot, Inc., Owls Nest, LLC, Millenium Financial Concepts Inc., MyCashNow.com, Inc., PayDayMax, Ltd., Discount Advances, Inc., and Support Seven LLC in Support of their Motion to Dismiss Plaintiff's First Amended Complaint was filed electronically with the Clerk of the Court, using the CM/ECF system. Notice of the filing was sent to all parties who have appeared of record by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Those parties may access this filing through the Court's ECF system.

DATED: April 1, 2016                         SIDEMAN & BANCROFT LLP


By:        /s/ Rebecca K. Felsenthal
           Rebecca K. Felsenthal (admitted *Pro Hac Vice*)
           California Bar No. 303476
           SIDEMAN & BANCROFT LLP
           One Embarcadero Center, 22nd Floor
           San Francisco, Calfornia 94111-3711
           Tel:    (415) 392-1960
           Fax:    (415) 392-0827
           Attorneys for Defendants
           Carey V. Brown, ACH Federal LLC, Credit
           Payment Services, Inc., Credit Protection Depot,
           Inc., Owls Nest, LLC, Millenium Financial
           Concepts Inc., MyCashNow.com, Inc.,
           PayDayMax, Ltd., Discount Advances, Inc., and
           Support Seven LLC