IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL AURANDT, on Behalf of Herself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| CAREY V. BROWN, | ) |
| RONALD BEAVER, | ) |
| CREDIT PAYMENT SERVICES, INC. ("CPS"), | ) |
| MYCASHNOW.COM, INC. ("MYCASHNOW"), | ) |
| CREDIT PROTECTION DEPOT, INC. ("CPD"), | ) |
| ACH FEDERAL, LLC, ("ACH FEDERAL"), | ) |
| DISCOUNT ADVANCES, INC. ("DISCOUNT ADV."), | ) ) |
| PAY DAY MAX, LTD. ("PAYDAYMAX"), | ) |
| OWLS NEST, LLC ("OWLS NEST"), | ) |
| MILLENIUM FINANCIAL CONCEPTS INC. ("MILLENIUM"), | ) ) |
| SUPPORT SEVEN, LLC ("SUPPORT SEVEN"), and | ) |
| ADDITIONAL UNKNOWN DEFENDANTS, | ) ) |
| Defendants. | ) ) ) |

Civil Action No.:  3:15-cv-00275-KRG

JURY TRIAL DEMANDED

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Crystal Aurandt and others similarly situated, through counsel, respectfully submits the following brief in opposition to Defendants' Motion to Dismiss Her First Amended Complaint for the reasons set forth below.

## SUMMARY

Plaintiff's First Amended Complaint establishes categorically and unequivocally that defendants engaged in a criminal enterprise. Through use of outlawed telephone Caller-ID spoofing technology, Defendants contacted members of the class and impersonated law enforcement agents. Defendants thereafter engaged in a pattern of extortion by threatening to arrest Plaintiff and members of the class unless the same tendered Defendants money. These actions result from Defendants' criminal enterprise of engaging in illegal and usurious payday loans. These loans themselves were obtained in violation of state and federal law, for which defendants face or have faced criminal sanctions. As such it is no accident Defendants' pending motion to dismiss is one based on technicalities and a tortured reading of Plaintiff's Complaint. Nor is it accidental that Defendants engage in *ad hominem* attacks directed toward plaintiff's counsel. Of note, Plaintiff asserts that Defendants engaged in a multi-state criminal enterprise conducted through wires, telephone lines and the internet—the very essence of interstate commerce. Nonetheless, Defendants assert that Plaintiff has failed to plead an effect on interstate commerce. In this same vein, Defendants ignore binding precedent and assert a flawed argument regarding RICO's statute of limitations. In the end, Defendants devote thirty-five (35) pages to superfluous and specious argument that should not distract from the obvious. They broke law after law for which Plaintiff and the class have valid causes of action.

## COUNTER STATEMENT OF FACTS[1]

**A.     Crystal Aurandt's Personal Experience.**

On October 23, 2014 Crystal Aurandt's cell-phone rang. (C. 40 & 41). Ms. Aurandt looked at her phone and saw that she was receiving a call from the Altoona Police Department. (C. 41). She answered to phone to be informed that the police were coming to arrest her later in the day as a result of an unpaid debt owed to defendant MyCashNow.com. (C. 42-43).[2] Ms. Aurandt was told that she needed to contact the Defendants and make payment arrangements in order to avoid being arrested. (C. 43). After subsequent investigation, plaintiff ascertained that defendant MyCashNow.com was part of multi-state criminal enterprise run by defendants Carey V. Brown, Ronald Beaver and various corporate entities the two men had set up for the purposes of avoiding US law. (C. 33-34). The loans made to her by defendants were illegal under Pennsylvania law and constituted unlawful debts under the laws of the United States. (C. 31-32 & S. 5(a)). Of note, Pennsylvania law permits a maximum interest rate of six-percent (6%) per annum. (C. 32). The rate defendants charged was 308.94% per annum.[3] Defendants' use of technology that caused them to appear as law enforcement on Ms. Aurandt's Caller-ID amounted to a violation of 47 U.S.C. § 227, the Truth in Caller-ID Act, and defendants false threats of

---

[1] These facts are pled from either Plaintiff's First Amended Complaint (referenced as "C" with the corresponding paragraph number) or from Plaintiff's Rico Case Statement (referenced as "S" with the corresponding paragraph number).

[2] The particular defendant was not identified in the First Amended Complaint; however, defendants introduced the identity of the lender in their initial motion to dismiss.

[3] Defendants attached what they purported to be "Loan Agreement" between Ms. Aurandt and MyCashnow.com as Exhibit 1 to their first motion to dismiss (Doc. No. 29-1) that was filed on February 26, 2016. A copy of the same is attached hereto as Exhibit "A".

arrest amounted to violations of 15 U.S.C. § 1692, the Fair Debt Collection Practices Act. (C. 35 & S. 18).

**B.      Defendants' Conduct Directed Toward the Class**

At the present time, Ms. Aurandt has ascertained that Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Vermont, West Virginia and the District of Columbia had outlawed payday loans, such as the one Defendants have provided to Ms. Aurandt. (C. 31 & 46). Plaintiff avers that defendants moved their operations onto the internet and created shell companies outside of the United States in order to circumvent the laws of this country and its states. (C. 33-34). These corporations, such as MyCashnow.com, had zero employees in British West Indies and were in fact operated out of Chattanooga, Tennessee. (C. 34). Plaintiff's class allegations assert that Defendants have been using interstate wires and other means of interstate commerce to extend these illegal loans to these jurisdictions. (C. 33-34 & 46-52). In addition to illegal payday loans, Plaintiff alleges that defendants engaged in illegal debt collection tactics toward the Class as they did toward her.

**C.      Defendants Operated a Criminal Enterprise and Acted in Concert with One Another.**

Carey V. Brown owned and/or controlled CPS, MyCashNow, CPD, Support Seven, Owls Nest, Discount Advance, Payday Max, Millennium and ACH Federal. (C. 8). Through these companies, Mr. Brown operated a criminal enterprise. (S. 2a). Mr. Brown further advanced his criminal enterprise and strategy to steal from Plaintiff, Crystal Aurandt and others similarly situated with the help of Ronald Beaver, his attorney. (S. 2b). Mr. Beaver provided Mr. Brown advice and assistance in perpetuating a scheme to provide and collect illegal debts across America. (C. 9). Payday loans feature exorbitant usurious annual percentage rates and require "balloon" repayments shortly after the loan is made. (C. 27). Mr. Brown used his companies in

4

an effort to complicate his scheme and make it difficult for an injured borrower to seek retribution. (C. 19). As such, Credit Payment Services, Inc provided the funding and underwriting of the payday loans. (C. 10). ACH Federal processed the electronic transactions. (C. 12). MyCashNow, Discount Advances, and PayDayMax.com were website based companies which operated solely to dispense illegal payday loans to borrowers. (C. 10-11). After obtaining a borrower, these web based companies worked with Credit Payment Services and ACH Federal to process the loan applications, approve the payday loans and enable the transfer of funds through wire deposits and withdrawals from the borrowers' accounts. (C. 11). Credit Protection Depot purchased the payday loans after its approval and funding provided to the borrowers. (C. 13). At all times, these companies were collecting upon the illegal loans through electronic withdrawals directly from the borrowers' accounts. (C. 14). Owls Nest was created as a holding company for MyCashNow and the other affiliated companies for the purpose of establishing a United States presence. (C. 17). Millennium Financial Concepts was used as a corporation that funneled profits from the payday loans directly to Mr. Brown. (S. 2h). Support Seven served as the customer call center for the defendants and acted as the debt collection leg of the criminal enterprise. (C. 16). At all times, the defendants intended to collect upon illegal loans until either the borrower defaulted or paid off excessive interest. (C. 28). Defendants further attempted to collect upon the illegal loans through telephone calls where they impersonated government officials. (C. 19). The debt collector represents him/herself as a law enforcement officer in possession of an arrest warrant for the debtor and intends to make an arrest unless payments are made immediately. (C. 37&38). These fraudulent collection methods involve illegally "spooking" phone numbers to make it appear that the phone calls from defendants are actually coming from governmental authorities. (C. 36).

## LEGAL STANDARD

Defendants' motion to dismiss should be denied. In deciding a motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all favorable inferences from the facts alleged in the light most favorable to the pleading party.  Phillips v. Allegheny County, 515 F.3d 224, 228 (3d Cir. 2008).  "A court should not dismiss a complaint under Rule 12(b)(6) for failure to state a claim for relief 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.' "  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In the event a Complaint fails to state a claim, the court must give the plaintiff the opportunity to amend unless amendment would be futile.  Id.  When the facts pled by a plaintiff establish a plausible claim for relief, then the motion to dismiss should be denied. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d. Cir. 2009 (relying on Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  " 'A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely.' " Fowler, 578 F.3d at 213 (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007)).

## ARGUMENT

**A.      Plaintiff's RICO Count is Timely Raised.**

On October 23, 2014, the Crystal Aurandt received a call from what appeared to be the Altoona Police Department on her phone's Caller-ID. Upon answering, she was informed that she was hours away from being arrested as a result of unlawful debts she purportedly owed to MyCashNow. This phone call was a direct violation of RICO, which prohibits the collection of the unlawful debts. The statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). These calls constitute both a "collection of unlawful debt" because the loans sought to be collected upon are usurious[4] and "a pattern of racketeering activity" because the false representation of being a law enforcement officer constitutes a violation of 18 U.S.C. § 1343, Fraud by wire, radio, or television.[5]

On October 23, 2015, Ms. Aurandt commenced this action. As such, the matter was brought well within RICO's four year period of limitation. Defendants attempt to evade this patent truth by asserting that the statute of limitations began ticking sometime in 2009, when Ms.

---

[4]  "Unlawful debts" are those that are unenforceable as a result state and/or federal usury laws. 18 U.S.C. § 1961(6). As noted, payday loans are outlawed in 12 states and the District of Columbia. (C. 31-32 & S. 5(a)). Pennsylvania also refuses to enforce loans within an interest exceeding 6% per annum. (C. 32).

[5]  18 U.S.C. § 1961(1) defines a "racketeering activity" as, among others, "any act ... which is indictable under ... 18, United States Code: section 1343". Violations of state law by means of interstate commerce also violate RICO if the same amount to a felony. 18 U.S.C. § 1961(1); however, Pennsylvania treats this offense as a misdemeanor of second degree. 18 Pa.C.S. § 4912. In other states, the crime is treated as a felony. See, e.g., Ariz. Rev. Stat. § 13-2411 (impersonating a peace officer is a class six felony).

Aurandt took the illegal loan. Defendants argue, without the same having been pled, that the loan must have been paid off in 2009 because these are short-term loans. Therefore, Defendants assert that Ms. Aurandt cannot establish harm as result of the October 23rd call to her cell-phone.  This argument is flawed.

First, it ignores the class allegations wherein Ms. Aurandt has asserted that members of the class made payments as a result of these calls. (C. 37-18 & 49).[6] Second, these calls by themselves and without more can be harmful even where payments have not been collected. Of note, and as discussed below, these calls were made in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* (the "FDCPA"). Congress has created statutory damages under the FDCPA of up to $1,000 even where no harm is established. Nonetheless, this statutory harm creates damage to a person's "business or property" thereby activating RICO's civil remedies. See 18 U.S.C. § 1964(c). In addition, and concerning Ms. Aurandt, the call was made to her cellular phone and resulted in the loss of minutes from her cell-phone plan. This constitutes harm to a person's business or property as required by RICO. In fact, calls of this nature are prohibited by the Telephone Consumer Protection Act, 47 U.S.C. § 227, which likewise provides for statutory damages. This harm occurred within four years of the action being commenced. Plaintiff's RICO action is therefore timely.

Finally, there is no pleading that establishes Ms. Aurandt's loan was paid off as of October 23, 2014. While Plaintiff pleads that she believed that loan had been paid off,[7]

---

[6] Defendants are in exclusive possession of the identity of the persons called as a result of their schemes and swindles. It is for this reason that Plaintiff, in the following sections, requests leave to conduct discovery prior to amending the Complaint if the Court feels amendment is necessary.

[7] Of note, Plaintiff pled that she believed the loan had been paid "several years ago". Thus there is nothing to establish when plaintiff actually completed paying off the loan. When discovery is commenced, Ms. Aurandt will testify that she was burdened with this debt for a long period of time, and that the initial $190 loan ended up costing her well over $1,000.00. She will testify that

Defendants represented to her otherwise when they impersonated law enforcement. It is interesting, if not ironic, that Defendants are attempting to defendant themselves by asserting that their actions are much worse than Plaintiff alleged. Their argument boiled to its essence is they were not merely persons trying to collect a debt through illegal means, instead they were persons engaging in outright criminality including fraud and theft by extortion. If such a defense were permitted to succeed, it would be tantamount to turning RICO's spirit and purpose on its head.

**B.     Plaintiff's RICO Case Statement Complies with Local Rule 7.1**

Plaintiff's RICO Case Statement is neither conclusory, incoherent, unclear nor vague. Defendants' assertion toward this point is self-defeating. On one hand they assert the statement merely "parrots" the Complaint. On the other, they assert the Statement must be struck because it contains allegations not found within the Complaint. Their potshots toward counsel notwithstanding,[8] the Case Statement is incredibly detailed, clear and precise. The Statement consists of four pages of substantive information provided in no less than 1,500 words.

To the extent the Court feels the Statement is insufficient, Plaintiff respectfully requests leave to amend the same after the completion of reasonable discovery. The information Plaintiff requires to draft a more detailed Statement lies within the exclusive possession of Defendants.

---

she had to close bank accounts in order to get Defendants' withdrawals to stop. At the present time, Ms. Aurandt is collecting her records to determine the date of the last payment she tendered to Defendants. It is believed and therefore averred, the Defendants are also in possession of this information, and may be in exclusive possession of the same for Ms. Aurandt and members of the class.

[8]  Defendants correctly observe that Scott Wilson and IGOTIT.com were listed on the caption of the Case Statement and not on the caption of the original pleadings. This was a mere typographical error which will be corrected through an errata filing. This does not reflect a lack of due diligence on counsel's part. In fact it is quite audacious for defendants' counsel to so assert. These persons are believed to be involved in and have knowledge of the underlying crimes upon which this action is based. Several other persons were named as defendants in actions commenced by the New York Attorney General and by the Federal Trade Commission who likewise were not named as defendants in this matter.

See, Reints v. Sheppard, 90 F.R.D. 346, 347 (M.D. Pa. 2003) (noting complaints should not be dismissed for lack of specificity where the information needed lies within defendant's exclusive possession).

**C.      Plaintiff's Have Pled a Valid Civil RICO Claim.**

Ms. Aurandt and the Class have pled a valid RICO civil claim against the Defendants. Each of the Defendants' arguments is addressed below.

**1)      Plaintiff Has Pled A RICO Enterprise.**

The RICO statute broadly defines an enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). Such an enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 583 The U.S. Supreme Court has recently upheld that the enterprise requirement should not be overly formal and that an association-in-fact enterprise only needs three structural features:  (1) "a purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 129 S. Ct. 2237, 2344 (2009). Similarly, the Western District of Pennsylvania holds that the enterprise requirement is not overly formal and should not stand as a method to dismiss a case at the pleading level:

> Under the rules of notice pleading, a plaintiff need not specifically allege in her complaint the facts necessary to establish these three enterprise elements. Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 790 (3d Cir.1984). The allegations of the complaint, however, must not affirmatively negate any of these elements, id. at 790 n. 5, and there must be sufficient factual allegations to allow the existence of the three elements to be inferred, see, e.g., Lorenz v. CSX Corp., 1 F.3d 1406, 1412 (3d Cir.1993)  (plaintiffs alleging an association-in-fact

between parent and subsidiary corporations "must plead facts" that, if true, would show the parent and the subsidiary to be distinct).

<u>Freedom Medical Inc. v. Gillespie</u>, 634 F.Supp.2d 490 (E.D. Pa, 2007). Plaintiff has adequately plead that the defendants acted with the common purpose to, "directly and indirectly conduct and participate in the collection of unlawful debts." (C. 58).

Plaintiff has also properly pled that each defendant was associated with the enterprise through their relationship to Carey V. Brown, through their origination, funding, underwriting and processing of payday loans, through their acceptance of payday loan applications, through their purchase of payday loans, through their processing of loans, through their purchase of loans, through their use of collection calls or through other behavior all of which furthered the enterprise's purpose of conducting and participating in the collection of unlawful debts. (S. 2).

Finally, Plaintiff has properly pled that the enterprise had longevity sufficient to permit these associates to pursue the enterprise's purpose through Plaintiff's allegations as related to the class representative's application for an illegal loan and the subsequent illegal collection techniques. (C. 39-45).

The Defendant's claim that there is no common enterprise as each Defendant was engaging in their core business runs afoul of the entire purpose of the RICO statute. See <u>Freedom Medical Inc. v. Gillespie</u>  634 F.Supp.2d 490 (E.D.Pa, 2007)

Accordingly, at the motion to dismiss stage, absent allegations that cast doubt on the existence of these elements, "[c]ourts can reasonably assume that individuals and corporations have an organizational structure, are continuous, and have an existence separate and apart from any alleged pattern of racketeering activity." *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2006 WL 1531152, at *9 (E.D.Pa. June 2, 2006).

### 2)    Plaintiff Has Pled an Effect on Interstate Commerce.

Loans obtained through wires that cross state lines from websites hosted on servers located on foreign soil affect interstate commerce. The use of illegal spoofing technology that violates the Truth in Caller ID Act affects interstate commerce. Telephone calls made through interstate wires for purposes of collecting unlawful debts in a manner that violates the FDCPA affects interstate commerce. Crystal Aurandt is a citizen of Pennsylvania who resided in Pennsylvania at all times relevant to this action. All known defendants operate their business from either Tennessee or Nevada. The transactions between Ms. Aurandt and the defendants were set to be conducted through Automated Clearing House transactions.[9] Per the Third Circuit, an effect on interstate commerce "may be reasonably inferred from the interstate nature" of the defendants. Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989). Here, Plaintiff's First Amended Complaint establishes an effect on interstate commerce that cannot be questioned.

### 3)    In the Third Circuit Intra-Corporate Conspiracies Can Support a RICO Claim.

Defendants ignore binding precedent by asserting the related entities in this matter cannot conspire as required by RICO. This argument was disposed of by the Third Circuit in Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162 (3d Cir. 1989). In Shearin, three associated companies were deemed to form an enterprise by the Third Circuit. 885 F.2d at 1166. Courts in this District continue to apply Shearin's holding. The District of New Jersey, for example noted as follows:

> In many ways, the *Shearin* reading of intra-corporate conspiracies is more faithful to the broad remedial purpose of RICO than a narrow reading which is modeled on antitrust law. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). While antitrust law seeks to

---

[9]  See Exhibit 1 to Defendants' First Motion to Dismiss, attached hereto as Exhibit "A".

> encourage inter-corporate competition even at a cost to intra-corporate competition, see Continental T.V. Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), RICO seeks to eliminate all racketeering activity, both inter-corporate and intra-corporate.

Curley v. Cumberland Farms Dairy, Inc., 728 F. Supp. 1123, 1135 (D. N.J. 1990). Curley

directly refutes Defendants' argument as it involved a parent corporation and its subsidiaries and

found the same to constitute an enterprise. Id. at 1135. This is precisely what plaintiffs allege in

this matter. Defendants created a plethora of related entities in order to conduct an illegal and

predatory lending operation.

  **4)  Rule 9 Permits Plaintiffs to Plead Knowledge Generally.**

  Defendants seek to dismiss Plaintiff's case on the basis that she "has not adequately pled

knowledge." Defendants either ignore or are remiss of Rule 9 of Federal Rules of Civil

Procedure, which states "[m]alice, intent, knowledge and other conditions of a person's mind

may be alleged generally." F.R.C.P. 9(b). Defendant's citation to Howard Hess Dental Labs, Inc.

v. Dentsply Intern., Inc., 602 F.3d 237 (3d Cir. 2010) is misplaced as that case addressed a

motion to for summary judgment. Moreover, Defendants ignore the detailed nature in which

Plaintiff established how Defendants have organized themselves. Requisite knowledge may be

inferred from the manner in which defendants arranged their business, including creating Owls

Nest, LLC because various financial institutions desired Defendants to have a presence within

the United States. (C. 17). For purposes of notice pleading, Plaintiff has established knowledge.

**5)      Plaintiff Has Standing as She Suffered an Injury to Her Property.**

Plaintiff has standing to sue because she suffered harm to her property as a direct result of Defendants' racketeering activities. While Defendants assert the contrary, as established above:

- Ms. Aurandt has asserted that members of the class made payments as a result of the illegal calls wherein persons impersonated law enforcement;

- These calls by themselves are *per se* harmful and Congress has created statutory damages for the same;

- At least as to Ms. Aurandt, the call was made to a cellular phone and resulted in the loss of minutes from her cell-phone plan, something which also has been found to be *per se* harmful by Congress; and finally,

- Ms. Aurandt and other members of the Class lost money to Defendants as a result of thier racketeering activities. Ms Aurandt herself will provide evidence that her financial loss exceeds $1,000.

As such, Plaintiff has established an injury as a result of Defendants' racketeering activities and has standing to sue.

**D.      Plaintiff's Claim for Usury Was Timely Raised.**

Plaintiff's usury claims are not time-barred. In footnote 9 of their Brief, Defendants state the statute of limitations for usury would have begun to tick in the fall of 2013. One can assume Defendants refer to this date as this is the cutoff date used by the Attorney General of New York when it indicted the Defendants in this matter.[1] Even if accepted as true, the statute of limitation in Pennsylvania for usury would not expire for potential members in the class until the Fall of 2017. See, 41 Pa. Cons. Stat. §502 (applying a four (4) year statute of limitation).

---

[1] A copy of the New York indictment is attached to this Response as Exhibit B.

Defendants assert that Plaintiff  repaid her loan "within a matter of weeks" after receipt of the loan on October 9, 2009 and therefore, the statute of limitation expired in the Fall of 2013. Defendants misrepresent Plaintiff's allegations. Of note, Plaintiff pled that she believed the loan had been paid "several years ago". Thus there is nothing to establish when plaintiff actually completed paying off the loan. When discovery is commenced, Ms. Aurandt will testify that she was burdened with this debt for a long period of time, and that the initial $190 loan ended up costing her well over $1,000.00. She will testify that she had to close bank accounts in order to get Defendants' withdrawals to stop. At the present time, Ms. Aurandt is collecting her records to determine the date of the last payment she tendered to Defendants. It is believed and therefore averred, the Defendants are also in possession of this information, and may be in exclusive possession of the same for Ms. Aurandt and members of the class.

Defendants further argue that Plaintiff's cause of action for usury violations in states other than Pennsylvania fail because she did not reference statutes specifically. Defendants are mistaken. A plaintiff is not required to plead every statute for every state relating to usury to establish a valid cause of action. Notice pleading is satisfactory. " The Supreme Court reaffirmed that FED.R.CIV.P. 8 " 'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" " Phillips v. County of Allegheny, 515 F.3d 224, 231(2008)(citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)). Laws do not constitute facts. As pled, putative class members continue to have valid claims despite Defendants' assertions. In regard to timeliness, the following states are good exemplars. In West Virginia, the maximum interest rate is 6% and the statute of limitations for a usury claim is five (5) years. W.V. Code §47-6-5 (2012) & W.V. Code §55-2-6 (2015). In New York, a claim

involving usury must be brought in six (6) years. N.Y. Civ. Prac. L. & R. 213(2). In New Jersey, a claim involving usury must be brought in six (6) years. N.J. Rev. Stat. 2A:14-1 (1961).

Plaintiff asserted a valid cause of action for usury in Pennsylvania and is not barred by the statute of limitation. Moreover, Plaintiff properly plead her allegations and stated a valid cause of action in the states other than Pennsylvania.

**E.     Plaintiff Has Pled a Valid Claim under the Fair Debt Collection Practices Act.**

Plaintiffs FDCPA is adequately pled. Defendants seek to strike the same on the basis that: (1) they are "creditors" as opposed to "debt collectors"; (2) Plaintiff failed to pled the debt personal purposes; and (3) Plaintiff has failed to plead an Act which violates the FDCPA. All of this arguments are lack merit. Defendant's motion should be denied.

**1)     Defendants Are Not "Creditors".**

Defendants are not "creditors" under the FDCPA because they proceeded using a false name. The FDCPA's definition of "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). As noted by the Fifth Circuit, this sentence makes any would be "creditor" who uses any name other than his own a "debt collector" for purposes of the FDCPA. Taylor v. Perrin, Landry, DeLaunay & Durand, 103 F.3d 1232, 1234 (5th Cir. 1997). This provision has become known as the "false name exception". Haber v. Bank of America, 2014 U.S. Dist. LEXIS 87614, *34-35 (E.D. Pa. 2014). Haber noted that the Third Circuit had not yet addressed this exception but applied the test supplied by the Second Circuit. Id. at * 35. That test is as follows:

(1)     the creditor is collecting its own debts;

(2)     the creditor uses a name other than its own; and

(3)      the creditor's use of that name falsely indicates that a third person is "collecting or attempting to collect" the debts the debts owed to the creditor at least as far as the "least sophisticated consumer" would understand.

<u>Id</u>. at *35-36 (relying on <u>Vincent v. The Money Store</u>, 736 F.3d 88 (2d Cir. 2013)). Here, Plaintiff's allegations meet the requirement of the FDCPA's false name exception.

The first prong is satisfied for purposes of this motion as Defendants take the position that the particular creditor who was owed money by Ms. Aurandt was the one who made the call. This was not actually pled, but this assumption is safe for the analysis. Second, Ms. Aurandt averred that the person she spoke with on October 23rd identified himself as a police officer within the Altoona Police Department. (C. 41-42.) Third, the person holding himself out as a police officer instructed Ms. Aurandt to contact the Defendants in order to make a payment arrangement. (C. 42-43). As such, the "least sophisticated consumer" would believe that the Altoona Police Department was attempting to enforce a debt owed to a person other than itself. This brings the matter squarely within the false name exception even if Defendants' assertion regarding the identity of the caller is correct.

**2)      The Specific Conduct referred to in the Complaint Establishes a Violation of the FDCPA.**

Plaintiff pled that on October 23, 2014, she received a call from an individual who represented that he was an officer within the Altoona Police Department and that he was going to arrest her later that day if she did not make a payment on her debt to MyCashNow.com. (C. 42-43). She averred that illegal spoofing technology was used that caused her Caller-ID to display that the call in fact had originated from the Altoona Police Department. (C. 41). Discovery will show that this will be a common experience among members of the Class. The FDCPA prohibits, among other things:

(5)      The threat to take any action that cannot legally be taken or that is not intended to be taken.

* * * * *

(7)      The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

* * * * *

(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

* * * * *

(14)     The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

15 U.S.C. § 1692e(5), (7), (10) & (14). These provisions of the FDCPA alone were violated by the events described in the first few sentences of this section. Thus Defendants' assertion that specific violations of the FDCPA were not pled is spurious.

3)      **The Illegal Loans Were Taken for Personal, Family and Household
        Purposes.**

The loan at issue in this matter was taken for non-commerical purposes. This can be

inferred as the loan was made in a *de minimus* amount in a manner that would be patently absurd

for any business. Moreover, the loans are referred to as "payday" loans, which are commonly

understood to be associated with consumer transactions.

**F.      The Class Is Not an Impermissible Fail-Safe Class.**

Defendants are mistaken that Plaintiff's putative class is an impermissible fail-safe class.

Defendants contend that Plaintiff's class is defined by the purported illegality of the payday

loans the debtors received, and therefore, the putative class requires a finding of Defendants'

liability prior to admission into the class. Plaintiff's putative class is independently ascertainable;

therefore, Defendants' argument fails as a matter of law.

"The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is

"defined with reference to objective criteria"; and (2) there is "a reliable and administratively

feasible mechanism for determining whether <u>putative class</u> members fall within the class

<u>definition</u>." <u>Byrd v. Aaron's Inc.</u>, 784 F.3d 154, 163 (3d. Cir. 2015)(citations omitted). In <u>Byrd</u>,

the court held "[t]he ascertainability inquiry is narrow. If defendants intend to challenge

ascertainability, they must be exacting in their analysis and not infuse the ascertainability inquiry

with other class-certification requirements." <u>Id</u>. at 165. Ascertainability focuses on issue of

whether class members can be identified without resorting to mini-trials. <u>Id</u>. at 164(citing

<u>Grandalski v. Quest Diagnostics Inc</u>., 767 F.3d 175, 184-85 (3rd. Cir 2014)).

Defendants endeavor to use conclusory statements to support its bald assertion that

Plaintiff's putative class is impermissible without further discussion concerning its

ascertainability. In reviewing Plaintiff's putative class under the narrow scope of ascertainability,

the class is defined by objective criteria and allows for a reliable and administratively feasible method to determine if an individual is a member.

Plaintiff's class is objectively defined as any individual residing in said states[10] that received a payday loan with an interest rate higher than allowed by that jurisdiction's laws, and subsequently received telephonic debt collection attempt(s). Plaintiff's sub-class is objectively defined as a person in Pennsylvania that received a payday loan with an interest rate higher than allowed by Pennsylvania's usury laws. In Pennsylvania, usury interest rates are objectively defined in 41 P.S. §201 & §202. Moreover, each of the states identified in Plaintiff's main class have similar objective laws setting forth the maximum interest rate allowed. In this matter, Defendants maintain electronic records of every individual provided a payday loan, which includes the interest rate, name and contact information.[11] Defendants further have access to and/or can obtain telephone records that demonstrate the individuals targeted for debt collection purposes. A review of Defendants' records and telephone records would allow for an administratively feasible method to determine whether an individual fits into either of these classes, without any need for a mini-trial.

Accordingly, this Court should deny Defendants' request to dismiss Plaintiff's putative class as the same is independently ascertainable.

---

[10] Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Vermont, West Virginia and the District of Columbia.

[11] Defendants attached a copy of the agreement for a payday loan to Plaintiff Crystal Aurandt to their First Motion to Dismiss.

**H.      Pennsylvania Recognize a Cause of Action for Disclosure of Private Financial Information.**

Plaintiff received a call to her cell-phone from an individual who knew she had borrowed money from MyCashNow.com. Because cellular telephone numbers are not listed and because the individual knew of a private financial matter, only two possibilities exist. First, she received a call from persons associated with MyCashNow.com. Second, MyCashNow.com or its affiliates provided her information to third persons who then engaged in the illegal calls. In order to cover the second possibility, Plaintiff pled Counts Four and Five in the alternative. Plaintiff avers in these counts that defendants took her private financial information and disclosed the same to others in violation of the law. Of note, the Gramm-Leach-Bliley Act prohibits the disclosure of "nonpublic personal information." 15 U.S.C. § 6801(a). The Act provides:

> Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with <u>section 6803 of this title</u>.

15 U.S.C. § 6802(a). By law information regarding Plaintiff's telephone number and borrowing habits should not have been provided to third persons. Pennsylvania enforces this privacy through two distinct mechanisms: (1) a cause of action for invasion of privacy and/or breach of confidentiality, and (2) a cause of action for breach of fiduciary duty.

In regard to financial records, the Pennsylvania Supreme Court holds that an individual has a "legitimate expectation of privacy in records pertaining to their affairs kept at the bank." <u>Com. v. DeJohn</u>, 403 A. 2d 1283, 1291 (Pa. 1979). At the time, Pennsylvania provided more protection for this privacy interest than did the federal government. <u>Compare</u> <u>U.S. v. Miller</u>, 425 U.S. 435 (1976) (finding no such privacy interest). Unauthorized disclosure of such information provides an injured plaintiff with a private cause of action under a theory of either invasion of

privacy or breach of confidentiality. For example, in <u>Coulter v. Rosenblum</u>, 682 A. 2d 838 (Pa. Super. 1996), a psychologist was accused of disclosing confidential patient information in violation of 42 Pa. C.S. § 5944, which creates judicial privilege for communications between patients and psychologists. <u>Coulter</u>, 682 A. 2d at 839. The Superior Court characterized this breach as an invasion of privacy and determined that Pennsylvania's one-year statute of limitations applied. <u>Id</u>. On the other hand, in <u>Burger v. Blair Medical Assocs, Inc.</u>, the Supreme Court recognized that breach of confidentiality concerning communications between a doctor and patient in violation of 42 Pa.C.S. § 5929 was more a breach of confidentiality as opposed to an invasion of privacy. <u>Burger</u>, 964 A.2d 374, 381 (Pa. 2009).[12] As such Pennsylvania clearly recognizes a cause of action for the unauthorized disclosure of confidential information. Because Pennsylvania recognizes the same, Plaintiff's alternative counts should not be dismissed. If defendants disclosed this confidential information to others, they can be sued for the same.

In regard to fiduciary duty, the same arises as a result of Plaintiff entrusting Defendants with confidential information. In Pennsylvania, a fiduciary duty arises when there is a "special relationship" between the parties because one has the power to take advantage of or exercise undue influence over the other. <u>eToll, Inc. v. Elias/Savion Advertising</u>, 811 A.2d 10, 22 (Pa. Super. 2002) (citing <u>Estate of Evasew</u>, 584 A.2d 910 (Pa. 1990)). And while it is typically true that such a special relationship does not exist as between a lender and borrower, [13] that dynamic disappears in the context of lender betraying a borrower's confidentiality to third persons. In this

---

[12]  The distinction was relevant in <u>Burger</u> because Pennsylvania has a one year statute of limitation for invasion of privacy while a two year statute of limitation for breach of confidentiality. This issue is not relevant in this case as the complaint was filed within one year of the call.

[13]  <u>See</u> <u>eToll, Inc. v. Elias/Savion Advertising</u>, 811 A.2d 10, 23 (Pa. Super. 2002).

regard, a borrower does place a special trust with the lender. If a lender betrays this trust in this context, then a breach of fiduciary duty would apply. As such Defendants' request to dismiss this claim should be denied.

**WHEREFORE,** plaintiff Crystal Aurandt and others similarly situated respectfully request that this Court deny defendants' motion to dismiss.

A proposed Order of Court is provided herewith.

Respectfully submitted,

**PRAETORIAN LAW GROUP, LLC**

      /s/ David M. Kobylinski

515 Court Place, Ste 4
Pittsburgh, PA 15219
(412) 281-6600
(412) 281-6610 (*facsimile*)
dkobylinski@prlawgroup.com

Dated:  May 6, 2016                          *Attorneys for Plaintiff*