IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRYSTAL AURANDT,<br><br>                Plaintiff,<br><br>    v.<br><br>CAREY V. BROWN, RONALD BEAVER, CREDIT PAYMENT SERVICES, INC., MYCASHNOW.COM, INC., CREDIT PROTECTION DEPOT, INC., ACH FEDERAL, LLC, DISCOUNT ADVANCES, INC., PAY DAY MAX, LTD., OWLS NEST, LCC, MILLENIUM FINANCIAL CONCEPTS INC., SUPPORT SEVEN, LLC, and ADDITIONAL UNKNOWN DEFENDANTS,<br><br>                Defendants. | CIVIL ACTION NO. 3:15-275<br><br>JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

### I.  Introduction

This action comes before the Court upon a motion to dismiss filed by Defendants. (ECF No. 43.)  Defendants move to dismiss with prejudice the entirety of Plaintiff's complaint.[1]  (*Id.*)  For the reasons that follow, Defendants motion will be **GRANTED IN PART** and **DENIED IN PART**.

### II.  Jurisdiction

The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the state law claims pursuant to 28

---

[1] Defendant Beaver, who was served later and is represented by separate counsel, joined the arguments made by the other Defendants.  (ECF No. 91.)

U.S.C. § 1367.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III.    Background

Plaintiff, Crystal Aurandt, brings this case on behalf of herself and members of a class, alleging that Defendants participated in a scheme to defraud her and others similarly situated through unlawful and usurious loans and unlawful debt collection tactics.  (ECF No. 35 ¶ 1.)  The following facts are alleged in the Amended Complaint, which the Court will accept as true for the sole purpose of deciding the pending motion.

Defendant Carey V. Brown owned and/or controlled defendants CPS, MYCASHNOW, CPD, SUPPORT SEVEN, OWLS NEST, DISCOUNT ADV., DISCOUNT ADV., PAYDAYMAX, MILLENIUM and ACH FEDERAL. These companies marketed, underwrote, loaned, serviced, transacted and collected on payday loans.  (*Id.* ¶ 8.) Defendant Ronald Beaver served as the CEO of the corporate defendants and their affiliates. (*Id.* ¶ 9.)

The Amended Complaint defines a payday loan as "a short-term (typically a matter of weeks) high fee, closed-end loan, traditionally made to consumers to provide funds in anticipation of an upcoming paycheck." (*Id.* ¶ 24.)  A borrower obtaining a payday loan must either provide a personal check to the lender or an authorization to electronically debit the borrower's deposit account for the loan amount and associated fee as security for the loan.  (*Id.* ¶ 24.)  In order to obtain a payday loan, the borrower is also required to provide the lender with information including: his or her social security number, phone number, income and employment details, and home address.  (*Id.* ¶ 25.)

Payday loans involve significant interest rates – which Plaintiff characterizes as "usurious" – and "balloon" repayments shortly after the loan is made. (*Id.* ¶ 27.) If a borrower is unable to repay the full amount of the loan on the due date, the lender typically gives the borrower the option to "roll over" the loan balance by paying another "fee," usually equal to the initial fee at the time of loan funding. The cycle then continues until such time as the borrower is either able to pay off the loan in full or the borrower defaults on the loan. (*Id.* ¶ 28.)

Pennsylvania and twelve other states and the District of Columbia have outlawed payday loans. (*Id.* ¶ 31.) In Pennsylvania, a consumer loan transaction for $50,000 or less is civilly usurious when it imposes an annual interest rate exceeding 6% per annum and interest charged in excess of this amount is void. 41 Pa. Stat. Ann. §§ 201, 502. The Amended Complaint alleges that Defendants incorporated shell corporations in Anguilla and operate online in order to solicit payday loans to potential borrowers in states that have banned payday loans. (*Id.* ¶¶ 33-34.)

In addition to offering these illegal loans, Defendants also attempted to collect on them using methods which allegedly violate the Fair Debt Collection Practices Act (15 U.S.C. § 1692) and the portion of the Telephone Consumer Protection Act designated as the Truth in Caller ID Act (47 U.S.C. § 227(e)). (*Id.* ¶ 35.) Specifically, these methods include "spoofing" phone numbers in order to make it appear that the call is coming from governmental authorities rather than creditors. (*Id.* ¶ 36.) Callers even went as far as to impersonate law enforcement officials and threaten to arrest borrowers if they did not repay what they owed. (*Id.* ¶¶ 37-38.)

On or about October 9, 2009, Plaintiff applied for and received a payday loan from MyCashNow, Inc. for $190. (*Id.* ¶ 39.) "Although Plaintiff is of the belief that the loan was repaid several years ago, Plaintiff was contacted by agents or employees of MyCashNow on October 23, 2014 and told to pay a sum of $1,100." (*Id.* ¶ 40.) Individuals working on behalf of Defendants called Plaintiff on her cell phone. The callers used spoofing technology that caused the caller ID on Plaintiff's phone to indicate that the call was coming from the Altoona Police Department. (*Id.* ¶ 41.) The callers represented that they were law enforcement and told Plaintiff that a warrant was going to be issued for her arrest later that day, unless she called Defendants and made payment arrangements. (*Id.* ¶¶ 42-43.)

Plaintiff brings this lawsuit as a class action. She defines the class as follows:

> All natural persons within the states of Arizona, Arkansas, Connecticut, Georgia, Maryland, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Vermont, West Virginia and the District of Columbia who received a payday loan that was illegal under the respective laws of their states from one of the Defendants and were then subsequently targeted by the Defendants' employees, agents or assigns in a telephone debt collection scheme in violation of 15 U.S.C. § 1692. Members of this class can be identified by records maintained by defendants.

(*Id.* ¶ 46.) And a sub-class as follows:

> All Natural persons residing within the Commonwealth of Pennsylvania who received a payday loan from one of the Defendants which violated any Pennsylvania laws including Pennsylvania Usury Laws and the Pennsylvania UTPCPL. Members of this class can be identified by records maintained by defendants.

(*Id.* ¶ 46.)

Plaintiff brings six claims against all of the Defendants: (1) violation of 18 U.S.C. § 1962(d) – civil RICO; (2) usury under Pennsylvania law; (3) violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692); (4) breach of fiduciary duty and breach of implied duty of confidentiality; (5) invasion of privacy; (6) violation of Pennsylvania's Unfair Trade Practices Consumer Protection Law (UTPCPL).

After Defendants moved to dismiss the original Complaint (ECF Nos. 1, 28-29), Plaintiff filed an Amended Complaint (ECF No. 35). Defendants then filed a motion to dismiss the entirety of Plaintiff's Amended Complaint, along with a supporting brief. (ECF Nos. 43-44.) Plaintiff filed a brief in opposition to Defendants' motion. (ECF No. 53) and Defendants filed a reply brief (ECF No. 58.) The Court also held oral argument on the motion. (ECF No. 67.) Accordingly, this matter is now ripe for disposition.

## IV. Standard of Review

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted. Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," the standard of review for a Rule 12(b)(6) challenge is now well established. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009).

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal

conclusions asserted.  *See Fowler*, 578 F. 3d at 210.  Second, the court must determine whether the factual matters averred are sufficient to show that plaintiff has a "'plausible claim for relief.'"  *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint, however, need not include "'detailed factual allegations.'"  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party.  *See id*. at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)).  However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice."  *Iqbal*, 556 U.S. at 678.  Rather, the complaint must present sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has shown a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The relevant record under consideration includes the complaint and any "document integral to or explicitly relied upon in the complaint."  *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  If a complaint is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such

amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## V.    Discussion

Defendants move to dismiss the Amended Complaint in its entirety.  The Court will discuss the sufficiency of each claim in turn.

### A.  RICO Conspiracy

Plaintiff brings a claim for conspiracy under 18 U.S.C. §§ 1962(c) and 1962(d) – the Federal Racketeer Influenced and Corrupt Organizations Act (RICO).   (ECF No. 35-1 (RICO Case Statement)).  Plaintiff alleges generally that the Defendants conspired to issue and then collect on usurious, and thus illegal, loans.

Section 1962(d) "prohibits any person from conspiring to violation subsections (a), (b), or (c)."  *Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 366 (3d Cir. 2010) (citing 18 U.S.C. § 1962(d)).  Plaintiff must allege an agreement to participate in "an endeavor which, if completed, would constitute a violation" of one of the other subsections of the RICO statute and knowledge that the predicate acts were part of the conspiracy to violate the RICO statute.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010).  Here, Plaintiff alleges a conspiracy to violate § 1962(c).  (ECF No. 35-1.) Section 1962(c) prohibits any person employed by or associated with an enterprise engaged in interstate commerce from conducting or participating in the affairs of the enterprise through a pattern of racketeering activity "or through collection of an unlawful debt."  18 U.S.C. § 1962(c).  A sufficiently pled claim under § 1962(c) requires a plaintiff to establish the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4)

of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557. In cases where the plaintiff can prove the collection of an unlawful debt, the plaintiff need not show a pattern of racketeering activity through multiple predicate acts. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 145 n. 5 (3d Cir. 2016) ("the collection of an unlawful debt is an act native to the RICO statute and does not require a pattern of activities to constitute a violation") (citing *United States v. Vastola*, 899 F.2d 211, 228 n. 21 (3d Cir. 1990)). The term "unlawful debt" is defined as:

> a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate;

18 U.S.C. § 1961.

Defendants move to dismiss the RICO claim on the following grounds: (1) the claim is time-barred; (2) Plaintiff's RICO case statement is vague and does not comply with Local Rule 7.1; (3) Plaintiff fails to allege an enterprise; (4) Plaintiff fails to allege that there was an effect on interstate commerce; (5) Plaintiff fails to allege an agreement existed among the Defendants to violate § 1962(c); and (6) Plaintiff fails to allege that Defendants knew about the alleged collection of unlawful debt. (ECF No. 44 at 17-18.)

## Statute of Limitations

Civil RICO claims are subject to a four-year statute of limitations. *See e.g., Forbes v. Eagleson*, 228 F.3d 471, 483 (3d Cir. 2000). The Third Circuit applies the injury discovery rule to determine when the statute of limitations begins to run. (*Id.* at 484). "Under the injury discovery rule, we must determine when the plaintiffs knew or should have known of their injury." (*Id.* at 484).

Resolution of the statute of limitations question in this case hinges on what constitutes Plaintiff's injury. Defendants take the position that while Plaintiff declares broadly that "the class has been injured financially through usurious loans and illegal collection tactics," the only tangible injury Plaintiff points to is the debiting of class members' bank accounts when the loan was repaid. (ECF No. 44 at 13.) This, Defendants surmise, took place in 2009 since payday loans must be paid in a matter of weeks and because Plaintiff states that she "is of the belief" that she repaid her loan several years ago. Thus, Defendants argue that the statute of limitations began to run in 2009 and the filing of this lawsuit in 2015 was outside of the four-year limit. Plaintiff takes the position that the clock began to tick when she received the harassing phone call in 2014. (ECF No. 53 at 8.)

As it is "the <u>collection</u> of an unlawful debt" that is specifically addressed in the RICO statute, the Court agrees with Plaintiff that the RICO statute of limitations began to run when Defendants attempted to collect on the debt, not when she may or may not have paid it off. Because Plaintiff alleges to have suffered such an action within four years of the filing of her original complaint, Plaintiff's RICO claim is not time-barred.

### RICO Case Statement

Defendants allege that Plaintiff's RICO case statement is also deficient pursuant to Local Rule 7.1. As discussed elsewhere in this section, Plaintiff states a claim under the RICO statute. In light of that, and after reviewing the RICO case statement, the Court will not dismiss the claim on the basis of Plaintiff's RICO case statement.

### Enterprise

Next, Defendants argue Plaintiff has failed to prove the enterprise element of a RICO claim. The RICO statute defines enterprise "broadly." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 368. Where an alleged enterprise consists of multiple individuals or entities, together they must have a structure such that three elements are met: (1) a common purpose; (2) relationships among those associated with the enterprise; and "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* (citing *Boyle v. United States*, 556 U.S. 938 (2009)). At the pleading stage, a plaintiff cannot simply list the entities involved in the alleged enterprise, but must "plead facts plausibly implying the existence of an enterprise with the [three necessary] structural attributes . . . ." (*Id.* at 369-70). This does not mean, of course, that Plaintiff must prove an enterprise at this stage.

Defendants argue Plaintiff simply lists the entities involved. The Court disagrees. The Amended Complaint and RICO case statement list the entities involve, allege that Defendant Brown owned all the corporations, that Defendant Beaver ran them, and that all of the Defendants worked together to issue usurious payday loans and then collect them using less than savory means. The facts alleged plausibly imply that the Defendants

together had a common purpose, a relationship, and longevity. While it is true that Plaintiff has not alleged in all cases, what specifically each Defendant's role was, at the pleading stage, Defendants do not get to blame Plaintiff for not being able to unravel their complicated web of shell companies without any discovery. The Court finds Plaintiff has pled an enterprise.

### Effect on Interstate Commerce

Defendants argue that Plaintiff has not adequately pled that the alleged activities affected interstate commerce. Showing an effect on interstate commerce is not typically difficult. Here, Plaintiff pled that Defendants operate in Tennessee, are incorporated on a Caribbean island, sell loans over the internet to individuals in other states, including Pennsylvania, and then attempt to collect those loans with (presumably interstate) phone calls. Based on these allegations, the Court need not expound further on the subject. Plaintiff has pled an effect on interstate commerce.

### Agreement and Knowledge

Lastly, Defendants argue Plaintiff has not alleged an agreement among the Defendants or knowledge. As already discussed, Plaintiff must allege an agreement to participate in "an endeavor which, if completed, would constitute a violation" of one of the other subsections of the RICO statute and knowledge that the predicate acts were part of the conspiracy to violate the RICO statute. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 373.

Plaintiff alleges that the Defendants agreed and had knowledge, but Defendants argue that is conclusory. Again the Court notes that we are at the pleading stage.

Plaintiff is not yet going to have extensive evidence of Defendants' collective mental state. However, it can be inferred from the allegations in the Amended Complaint that there was an agreement and knowledge among the Defendants. Defendants are closely related and it can reasonably be inferred that everyone involved in issuing usurious loans and collecting them in violation of RICO had knowledge that their actions were part of a conspiracy to violate RICO.[2]

Defendants' other argument is that a RICO conspiracy claim cannot be sustained alleging only agreement among parent and subsidiary corporations and individuals within those corporations. This issue, as it turns out, is complicated and unsettled. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, No. CIV.A. 07-2860(GEB), 2008 WL 5413105, at *13-*16 (D.N.J. Dec. 23, 2008) (discussing splits among District Courts within the Third Circuit as to whether the Third Circuit allows intra-corporate conspiracies under RICO and splits among the other Circuits). While the answer is more often than not that such a conspiracy claim cannot be sustained, there is an exception:

> Thus, a parent corporation cannot conspire with its wholly owned subsidiary to violate § 1962(d) of RICO because the two entities always have a "unity of purpose or a common design." There is a recognized exception, as pointed out above, in the case where a plaintiff alleges that the employees acted in pursuit of their own interests and not for the benefit of the corporation, or there is an allegation that entities no longer act as one and thus may be considered separate actors under the law. Therefore, to state a claim under § 1962(d), where a parent corporation has allegedly conspired with its wholly owned subsidiary, there must be some additional allegation, e.g., that the subsidiary was fraudulently created to accomplish the racketeering activity.

---

[2] With respect to Defendants' argument that they were acting within the scope of their businesses, RICO conspiracy claims can be brought against companies in the business of loaning money and companies in the business of collecting debts for "collection of an unlawful [and usurious] debt." *See Goldenstein*, 815 F.3d.

(*Id*. at \*15).  The Court construes the Amended Complaint as alleging such an exception. – i.e. – that these other corporations were "fraudulently created to accomplish the racketeering activity."   Accordingly, the Court will deny the motion to dismiss with respect to the RICO claim.[3]

## B.  Usury

Plaintiff's second claim is for usury in violation of Pennsylvania law.  Defendants argue that Plaintiff alleges in her Amended Complaint that she paid off the loan within a few weeks of taking the loan in 2009 and thus that any usury claim is time-barred.  The usury statute states:

> A person who has <u>paid a rate of interest</u> for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges: Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced <u>within four years from and after the time of such payment</u>. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

---

[3] It appears from the Amended Complaint that Plaintiff only brings a §1962(d) conspiracy claim for violations of §1962(c), but it is somewhat ambiguous.  The Amended Complaint titles the RICO claim as one for §1962(d) only, but is premised on allegations of violation of §1962(c).  Stand-alone §1962(c) claims may also be sustained under the RICO statute and do not require the added elements of a conspiracy.   Therefore the Court does not want to misconstrue the Amended Complaint as not bringing a §1962(c) claim if Plaintiff in fact intended to bring one.  Since Plaintiff will be granted leave to amend as to other claims, Plaintiff will also be permitted to clarify whether she is bringing a §1962(c) claim in addition to her §1962(d) claim.

41 Pa. Cons. Stat. § 502 (emphasis added). Thus a plaintiff may recover for usury only for interest and charges paid in excess of what is allowed by law within four years of when the lawsuit is commenced.

While the Court agrees with Plaintiff that she does not necessarily state in the Amended Complaint that she paid the loan off in full in 2009, it is not clear from the Amended Complaint when she paid what – including whether or not she paid anything following the call in 2014. Based on the clear language of the usury statute, if Plaintiff paid off the loan in 2009, or even if she did not, if she did not actually pay anything to Defendants following the phone call in 2014, that incident does not get her past the four-year statute of limitations. Accordingly, it is not clear from the Amended Complaint whether Plaintiff's usury claim is time-barred, and the Court will dismiss the claim without prejudice and grant Plaintiff leave to file a second amended complaint.[4]

### C. Fair Debt Collection Practices Act

Plaintiff brings a claim for violation of the Fair Debt Collection Practices Act (FDCPA) relating to the methods used by Defendants in attempting to collect on the debt. (ECF No. 35 ¶¶ 68-73.) Defendants argue that Plaintiff has failed to plead the elements of an FDCPA claim. (ECF No. 44 at 25-31.) In order to prevail on an FDCPA claim, Plaintiff must prove that: (1) she is a consumer; (2) the Defendant is debt collector within the meaning of the act; (3) the challenged practice involves an attempt to collect on a debt as defined by the FDCPA; and (4) the Defendant has violated a provision of the FDCPA in

---

[4] If the usury claim does move forward, issues relating to the usury laws in other states that may be applicable to other class members can be addressed either at class certification or summary judgment.

attempting to collect the debt.  *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015)

(quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

The first element does not appear to be in dispute.  Defendants do argue, however,

that they are not debt collectors under the meaning of the act because it exempts creditors

who attempt to collect on their own debts.  Plaintiff counters that Defendants can be liable

because they attempted to collect on the debts using a different name.  It is true that

creditors are typically exempt from the definition of "debt collector:"

> Pursuant to FDCPA, a creditor is defined as "any person who offers or
> extends credit creating a debt or to whom a debt is owed[.]" 15 U.S.C. §
> 1692a(4).  The Third Circuit distinguishes between "creditors" and "debt
> collectors" under FDCPA, explaining that "'[t]he FDCPA's provisions
> generally apply only to debt collectors.' ... 'Creditors—as opposed to debt
> collectors—generally are not subject to the FDCPA.'"  *Schaffhauser v.
> Citibank (S.D.) N.A.*, 340 Fed.Appx. 128, 130 n. 4 (2009) (citing *Pollice v. Nat'l
> Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir.2000)).  "'Creditors who collect
> in their own name and whose principal business is not debt collection ...
> are not subject to the Act.... Because creditors are generally presumed to
> restrain their abusive collection practices out of a desire to protect their
> corporate goodwill, their debt collection activities are not subject to the Act
> unless they collect under a name other than their own.'"  *Pollice*, 225 F.3d at
> 403 (citing *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir.1998)).

*Cooper v. Pressler & Pressler, LLP*, 912 F.Supp.2d 178, 183–84 (D.N.J. 2012).  Accordingly,

the FDCPA permits creditors "to collect its own debts, in its own name" without being

subject to its provisions.  (*Id*.)  "However, in certain circumstances a creditor may qualify

as a debt collector.  For example, the term debt collector specifically 'includes any creditor

who, in the process of collecting his own debts, uses any name other than his own which

would indicate that a third person is collecting or attempting to collect such debts.'"  (*Id*.)

(citing 15 U.S.C.§ 1692a(6)).

Defendants are correct that while District Courts within the Third Circuit have held that this false name exception applies, the Third Circuit has not addressed the question squarely. *Haber v. Bank of Am., N.A.*, No. CIV.A. 14-0169, 2014 WL 2921659, at *12 (E.D. Pa. June 27, 2014). Nevertheless, the Third Circuit has quoted the "under a name other than their own" language, *see, e.g., Pollice*, 225 F.3d at 403, and the Second, Fifth, and Seventh Circuits, as well as the Federal Trade Commission have found such an exception to exist. *See Haber*, 2014 WL 2921659, at *12 (collecting decisions). This interpretation is consistent with the language of the FDCPA, which unambiguously notes that the creditor exception applies to those collecting "under a name other than their own." *See* 15 U.S.C. § 1692a(6). It is also consistent with the Third Circuit's reasoning as to why creditors are typically excluded from the FDCPA. *See Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) ("Creditors who collect in their own name and whose principal business is not debt collection . . . . are not subject to the Act . . . . Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the Act unless they collect under a name other than their own.") (citing *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir.1998)). For these reasons, this Court thus holds, as Judge Pratter of the Eastern District did in *Haber*, that such an exception exists.

Here, it is plausible from the allegations in the Amended Complaint that certain Defendants attempted to collect the debt owed, at least originally, to MyCashNow under a different name. First, they called Plaintiff pretending to be the Altoona Police Department. Second, if MyCashNow loaned Plaintiff the money and another Defendant,

or Defendants collectively but through another one of the companies, was the one who attempted to collect the debt, that may also qualify under the exception for creditors who collect under a different name. [5] Defendants fault Plaintiff for not pleading which Defendant made the call. But it is understandable that Plaintiff would not know at this juncture, both because the caller pretended to be law enforcement and because of the number of Defendant companies that are interrelated in ways that are not yet clear. Accordingly, Plaintiff has sufficiently alleged that Defendants are debt collectors within the meaning of the FDCPA.

Defendants also challenge the third and fourth elements. With respect to the third element, they argue that Plaintiff failed to allege that the loan was for personal, family, or household purposes. (ECF No. 44 at 28.) Under the FDCPA, a qualifying debt must be primarily for "personal, family, or household purposes." 15 U.S.C. § 1692a(5). While Plaintiff does not address this specifically in the Amended Complaint, one can reasonably infer from the nature of a payday loan that it was likely used for "personal, family, or household purposes."

Lastly, Defendants argue that Plaintiff failed to allege specific debt collection conduct that violates the FDCPA and instead simply recites the language from the statute. The FDCPA prohibits the use of "any false, deceptive, or misleading representations or means in connection with the collection of any debt." Defendants' argument that Plaintiff

---

[5] Defendants argue that, if it exists at all, the exception only applies to creditors collecting their own debt under a false name. Even if this is true, the allegations that Defendants were all essentially working together is sufficient to allege that even if a different Defendant collected the debt owned by MyCashNow, it was still the entire enterprise's own debt or that it was all Defendant Brown's own debt.

simply copies the language from the statute in the form of conclusory allegations ignores the specific allegation relating to the call pretending to be the Altoona Police Department. This is a specific allegation of a violation of the FDCPA. Plaintiff has thus pled a violation of the FDCPA and the motion to dismiss will be denied with respect to that claim.

### A. Breach of Fiduciary Duty, Implied Covenant of Confidentiality, and Invasion of Privacy

Plaintiff also brings a pair of claims under three legal theories. One count alleges breaches of fiduciary duty and the implied covenant of confidentiality. Another count brings a claim for invasion of privacy. Plaintiff brings claims in the alternative, in the event Defendants did not make the call she received in 2014.

> Plaintiff received a call to her cell-phone from an individual who knew she had borrowed money from MyCashNow.com. Because cellular telephone numbers are not listed and because the individual knew of a private financial matter, only two possibilities exist. First, she received a call from persons associated with MyCashNow.com. Second, MyCashNow.com or its affiliates provided her information to third persons who then engaged in the illegal calls. In order to cover the second possibility, Plaintiff pled Counts Four and Five in the alternative. Plaintiff avers in these counts that defendants took her private financial information and disclosed the same to others in violation of the law.

(ECF No. 53 at 21). Defendants argue that there was no fiduciary relationship between Plaintiff and Defendants and that no such causes of action exist for breach of confidentiality and invasion of privacy.

To the extent Plaintiff brings a claim for breach of fiduciary duty, that claim will be dismissed. "Creditor-debtor relationships . . . . rarely are found to give rise to a fiduciary duty." *Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d 47, 53 (3d Cir. 1988) (citations omitted). Plaintiff acknowledges this fact but argues "that dynamic disappears in the

context of a lender betraying a borrower's confidentiality to third persons. In this regard, a borrow does place a special trust with the lender. If the lender betrays this trust in this context, then a breach of fiduciary duty would apply." (ECF No. 53 at 22-23.) The Court is unpersuaded by this argument for which Plaintiff cites no legal authority. To hold otherwise would require finding that the violation of a duty created the duty that it violated. Such a proposition does not hold up logically. Any claim for breach of fiduciary duty will be dismissed.

Similarly, the Court cannot find any basis for a cause of action for violation of Plaintiff's confidentiality. In support of such a claim, Plaintiff points to three sources. First, Plaintiff points to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801(a)), which prohibits financial institutions from disclosing nonpublic personal information. Second, she cites *Com. v. DeJohn*, 403 A.2d 1283, 1291 (Pa. 1979), which noted that under the Pennsylvania Constitution "bank customers have a legitimate expectation of privacy in records pertaining to their affairs kept at the bank." Third, Plaintiff cites *Burger v. Blair Medical Assoc., Inc.*, 928 A.2d 246 (Pa. Super. Ct. 2007), which allowed separate claims for invasion of privacy and breach of physician-patient confidentiality for the release of personal information by a healthcare provider. None of these sources appear to provide Plaintiff a cause of action. As Defendants point out, the Gramm-Leach-Bliley Act provides no private cause of action. *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) (collecting decisions). The *DeJohn* case makes such a finding in an entirely unrelated context and not involving a civil lawsuit. *See* 403 A2d at 1291 ("Since the records seized in the instant case were taken pursuant to an invalid subpoena, and appellant had a

legitimate expectation of privacy in those records, appellant has standing to challenge their admissibility."). Lastly, the *Burger* case found a separate cause of action for breach of physician-patient confidentiality based on an established tort and statute for same under Pennsylvania law. *See generally* 928 A.2d. There does not appear to be a similarly established tort for the type of confidentiality issues between the parties in this case. Accordingly, the claim for breach of confidentiality will be dismissed.

Pennsylvania does recognize a private cause of action for invasion of privacy. *See e.g., Krajewski v. Gusoff*, 53 A.3d 793, 805-06 (Pa. Super. Ct. 2012). "A cause of action for invasion of privacy is 'actually comprised of four analytically distinct torts: 1) intrusion upon seclusion, 2) appropriation of name or likeness, 3) publicity given to private life, and 4) publicity placing a person in false light.'" *Id.* at 805 (quoting *Larsen v. Philadelphia Newspapers, Inc.*, 543 A.2d 1181, 1188 (1988)). Plaintiff does not specify which tort she is relying upon, but the fourth would be the only one potentially applicable. A claim for invasion of privacy through the tort of intrusion upon seclusion is recognized by the Pennsylvania Courts: "To state a cause of action for the tort of invasion of privacy in Pennsylvania, a plaintiff must aver that there was an intentional intrusion on the seclusion of their private concerns which was substantially and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of normal sensibilities." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002). Therefore Plaintiff has alleged a claim for invasion of privacy.

### B. Unfair Trade Practices Consumer Protection Law

Plaintiff's final claim is for violation of Pennsylvania's UTPCPL which prohibits false advertising. "To state a claim under Pennsylvania's [UTP]CPL, plaintiffs must allege facts from which the court can plausibly infer: (1) deceptive conduct or representations by defendant; and (2) justifiable reliance by plaintiffs on defendant's deceptive conduct that caused plaintiffs' harm." *Papurello v. State Farm Fire & Cas. Co.*, 144 F.Supp.3d 746, 776 (W.D. Pa. 2015) (citing *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)). Defendants argue that Plaintiff failed to allege deception or justified reliance. Plaintiff does not appear to contest that this claim should be dismissed. Rather, payday loans are known to be a bad deal and the Court's own review of the Amended Complaint does not reveal any allegations of false advertising or reliance upon false advertising. The UTPCPL claim will be dismissed.

### C. Class

In addition to arguing for the dismissal of each of the claims in the Amended Complaint, Defendants challenge the sufficiency of the class alleged. (ECF No. 44 at 35-37.) While courts do sometimes dismiss class allegations before discovery, it is rare. *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F.Supp.3d 610, 623 (E.D. Pa. 2015). Here, Defendants assert that the class identified by Plaintiff is what is known as a "fail-safe class" and not typically permitted. A "fail-safe class" is one that is defined so that whether a person qualifies as a class member depends on whether the person has a valid claim. *Id.* The Court does not read Plaintiff's class description as strictly as Defendants do. Rather, the Court construes Plaintiff's class to consist of individuals who received

payday loans from Defendants in the states which have outlawed payday loans. This appears to be an ascertainable class, and the Court declines to dismiss the class allegations at this stage.

## VI. Leave to Amend

The law is well settled that, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Likewise, Federal Rule of Civil Procedure 15 embodies a liberal approach to amendment and directs that "leave shall be freely given when justice so requires" unless other factors weigh against such relief. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990). Factors that weigh against amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). A district court may therefore "properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989); *Davis v. Holder*, 994 F. Supp. 2d 719, 727 (W.D. Pa. 2014). As already discussed, the Court will grant Plaintiff leave to amend as to her usury claim. The Court finds that any amendment to the other claims being dismissed would be futile pursuant to the well-settled law discussed above.

**VII.    Conclusion**

For the reasons stated above, the Court will grant the motion to dismiss with respect to the usury, breaches of fiduciary duty and the implied covenant of confidentiality, and the UTPCPL claims; and the Court will deny the motion to dismiss with respect to the RICO, FDCPA, and invasion of privacy claims.  Plaintiff will be granted leave to amend the usury claim.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRYSTAL AURANDT, | ) | |
| | ) | **CIVIL ACTION NO. 3:15-275** |
| Plaintiff, | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| v. | ) | |
| | ) | |
| CAREY V. BROWN, RONALD | ) | |
| BEAVER, CREDIT PAYMENT | ) | |
| SERVICES, INC., MYCASHNOW.COM, | ) | |
| INC., CREDIT PROTECTION DEPOT, | ) | |
| INC., ACH FEDERAL, LLC, DISCOUNT | ) | |
| ADVANCES, INC., PAY DAY MAX, | ) | |
| LTD., OWLS NEST, LCC, MILLENIUM | ) | |
| FINANCIAL CONCEPTS INC., | ) | |
| SUPPORT SEVEN, LLC, and | ) | |
| ADDITIONAL UNKNOWN | ) | |
| DEFENDANTS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 31st day of March, 2017, upon consideration of the Defendants'
motion to dismiss Plaintiff's complaint (ECF No. 43), and for the reasons set forth in the
accompanying memorandum, **IT IS HEREBY ORDERED** that Defendants' motion is
**GRANTED IN PART** and **DENIED IN PART** as follows:

- The motion is **GRANTED** with respect to the claims for breach of fiduciary duty,
  breach of confidentiality, and violation of the UTPCPL, and these claims are
  **DISMISSED WITH PREJUDICE**.

- The motion is **GRANTED** with respect to the usury claim and the usury claim is
  dismissed with leave to amend.

- The motion is **DENIED** with respect to the RICO, Fair Debt Collection Practices Act, and invasion of privacy claims and in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff is granted 21 days from March 31, 2017, to file a second amended complaint supplementing the usury claim and clarifying whether a 1962(c) RICO claim is brought.

**BY THE COURT**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**