# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRYSTAL AURANDT, on Behalf of Herself and All Others Similarly Situated** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 3:15-cv-00275 KRG** |
| | ) | |
| | ) | **JUDGE KIM R.** |
| | ) | **GIBSON** |
| **v.** | ) | |
| | ) | |
| **CAREY V. BROWN, RONALD BEAVER, CREDIT PAYMENT SERVICES, INC. ("CPS"), MYCASHNOW.COM, INC. ("MYCASHNOW"), CREDIT PROTECTION DEPOT, INC. ("CPD"), ACH FEDERAL, LLC ("ACH FEDERAL"), DISCOUNT ADVANCES, INC. ("DISCOUNT ADV."), PAY DAY MAX, LTD. ("PAYDAYMAX"), OWLS NEST, LLC ("OWLS NEST"), MILLENIUM FINANCIAL CONCEPTS INC. ("MILLENIUM"), SUPPORT SEVEN, LLC ("SUPPORT SEVEN"), AND ADDITIONAL UNKNOWN DEFENDANTS,** | ) ) ) ) ) ) ) ) ) ) ) ) ) | **MOVING DEFENDANT'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND TO COMPEL ARBITRATION OF ALL REMAINING CLAIMS IN SECOND AMENDED COMPLIANT** |
| | ) | |
| Defendants | ) | |

**TABLE OF CONTENTS**

I.      PROCEDURAL HISTORY..................................................................................1

II.     THE RULE 12(B)(6) STANDARD.....................................................................3

III.    THE RICO CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A
        CLAIM UPON WHICH RELIEF CAN BE GRANTED, BECAUSE AS
        ALLEGED NO ENTERPRISE WAS IN EXISTENCE AT THE TIME THE
        ALLEGED WRONGFUL CONDUCT OCCURRED ......**Error! Bookmark not defined.**

IV.     THE USURY CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE
        A CLAIM UPON WHICH RELIEF CAN BE GRANTED, BECAUSE THE
        LAW OF THE CASE MANDATES DISMISSAL, AND BECAUSE
        PLAINTIFF'S AMENDMENTS ARE INCONSISTENT WITH THIS COURT'S
        ORDER OF MARCH 31, 2017 ...........................................................................5

V.      THE FDCPA CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A
        CLAIM UPON WHICH RELIEF CAN BE GRANTED, BECAUSE AS
        ALLEGED NONE OF THE DEFENDANTS COULD HAVE PLACED THE
        COLLECTION CALL .........................................................................................8

VI.     THE INVASION OF PRIVACY CLAIM SHOULD BE DISMISSED FOR
        FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
        BECAUSE, AS ALLEGED, THERE ARE NO FACTS TO SUPPORT THE
        ELEMENTS OF THE CLAIM ........................................**Error! Bookmark not defined.**

VII.    IF THE COURT DOES NOT DISMISS ALL CLAIMS, THEN THE COURT
        SHOULD COMPEL ARBITRATION ON ANY REMAINING CLAIMS
        PURSUANT TO THE ARBITRATION CLAUSE IN THE LOAN
        AGREEMENT ..............................................................11**Error! Bookmark not defined.**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Rothman v. City of Northfield</u>, 716 F. Supp. 2d 369, 372–73 (D.N.J. 2010).................................. 3

<u>Alexander v. Anthony Intern., L.P.</u>, 341 F.3d 256, 263 (3d Cir. 2003)......................................... 11

<u>Alfeche v. Cash Am. Intern., Inc.</u>, CIV.A. 09-0953, 2011 WL 3565078, at *5
    (E.D. Pa. Aug. 12, 2011) ........................................................................................................ 14

<u>Allee v. Medrano</u>, 416 U.S. 802, 828–29 (1974)........................................................................... 7

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)................................................................................ 11

<u>Aurandt v. Brown</u>, No. 3:15-275, 2017 U.S. Dist. LEXIS 48725, at *14 (W.D. Pa. Mar. 31,
    2017)................................................................................................................................... 5, 7, 9

<u>Bannett v. Hankin</u>, 331 F. Supp. 2d 354, 361 (E.D. Pa. 2004)..................................................... 12

<u>Babyage.com, Inc. v. Toys ""R" Us, Inc.</u>, 558 F. Supp. 2d 575, 580 (E.D. Pa. 2008) .................. 4

<u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007)        4

<u>Black v. JP Morgan Chase & Co.</u>, CIV.A. 10-848, 2011 WL 3940236, at *23
    (W.D. Pa. Aug. 25, 2011)...................................................................................................... 14

<u>Brown</u>, 2017 WL 1215451, at *6.................................................................................................... 7

<u>Clerk v. Cash Am. Net of Nevada, LLC</u>, CIV.A. 09-2245, 2011 WL 3740579, at *1
    (E.D. Pa. Aug. 25, 2011)........................................................................................................ 14

<u>Doheny v. Pennsylvania</u>, CV 16-1744, 2017 WL 1493857, at *2 (W.D. Pa. Apr. 26, 2017)........ 3

<u>E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates,
    S.A.S.</u>, 269 F.3d 187, 199–200 (3d Cir. 2001).......................................................................... 12

<u>Glunk v. Pennsylvania State Bd. of Med.</u>, 1:14-CV-659, 2016 WL 8730861, at *7
    (M.D. Pa. Sept. 12, 2016)......................................................................................................... 7

<u>Guidotti v. Legal Helpers Debt Resolution, LLC</u>, 716 F.3d 764, 776 (3d Cir. 2013)................. 12

<u>Harbison v. Louisiana-P. Corp.</u>, 13CV0814, 2014 WL 794319, at *4 (W.D. Pa. Feb. 27,
    2014)........................................................................................................................................... 7

<u>Hornicek v. Cardworks Servicing, LLC</u>, 2011 WL 2623274 (E.D. Pa June 29, 2011) ............... 13

<u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 319 (3d Cir. 2010)......................................... 4

Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc., 998 F.2d 145, 155
(3d Cir. 1993) ........................................................................................................ 12

King v. Adv. Am., CIV.A. 07-237, 2011 WL 3861898, at *8 (E.D. Pa. Aug. 31, 2011)............. 14

Kingsley Capital Mgt., LLC v. Sly, 820 F. Supp. 2d 1011, 1026 (D. Ariz. 2011) ....................... 12

Krajewski v. Gusoff, 53 A.3d 793, 805-06 (Pa. Super. Ct. 2012) .................................................. 9

Larsen v. Philadelphia Newspapers, Inc., 543 A.2d 1181, 1188 (1988).................................9

Leighton v. Chesapeake Appalachia, LLC, 1:13-CV-2018, 2013 WL 6191739, at *8
(M.D. Pa. Nov. 26, 2013)....................................................................................... 12

Medtronic AVE Inc. v. Cordis Corp., 100 Fed. Appx. 865, 869 (3d Cir. 2004) ......................... 13

Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp., 103 S. Ct. 927, 941 (1983)................. 13

Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d Cir. 1993) ....... 13

Prod. Source Intl., LLC v. Foremost Signature Ins. Co., CV 15-8704 (JBS/JS), 2017
WL 627428, at *3 (D.N.J. Feb. 15, 2017) .............................................................. 7

Rothman v. City of Northfield, 716 F. Supp. 2d 369, 372–73 (D.N.J. 2010)................................. 3

Sharon Steel Corp. v. Jewell Coal and Coke Co., 735 F.2d 775, 779 (3d Cir. 1984).................. 14

Shearson/American Express Inc. v. McMahan, 42 U.S. 220, 239 (1986)..........................14

Sherer v. Green Tree Servicing LLC, 548 F.3d 379 (5th Cir. 2008) ............................................. 13

Thomson-CSF, S.A. v. Am. Arb. Ass'n, 64 F.3d 773, 779 (2d Cir. 1995).................................... 13

United States. v. Union Corp., 194 F.R.D. 223, 239 (E.D. Pa. 2000) ........................................... 8

**Statutes**

Federal Rule of Civil Procedure 12(a)(4)(A)................................................................................. 14

Federal Rule of Civil Procedure 15(a)(1)(B) .................................................................................. 2

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... 4, 6

Federal Rule of Civil Procedure 15(a)(2) ...................................................................................... 6

9 U.S.C. § 1 .................................................................................................................................... 11

9 U.S.C. § 4 .................................................................................................................................... 12

## <u>MOVING DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND TO COMPEL ARBITRATION OF ALL REMAINING CLAIMS, IF ANY, IN SECOND AMENDED COMPLAINT</u>

Defendants Carey V. Brown ("Brown"), Credit Payment Services, Inc. ("CPS"), MyCashNow.Com, Inc. ("MyCashNow), Credit Protection Depot, Inc. ("CPD"), ACH Federal LLC ("ACH Federal"), Discount Advances, Inc. ("Discount Adv."), Pay Day Max, Ltd. ("Paydaymax"), Owls Nest, LLC ("Owls Nest"), Millenium Financial Concepts Inc. ("Millenium"), and Support Seven, LLC ("Support Seven") (collectively, the "Moving Defendants"), by and through their undersigned counsel, hereby file this brief in support of their motion to dismiss the RICO, Usury, FDCPA, and Invasion of Privacy Claims and to compel arbitration of any remaining claims (although none will remain if our Motion to Dismiss is granted in its entirety) in the Second Amended Complaint.

## I.    <u>PROCEDURAL HISTORY</u>

On October 23, 2015, Plaintiff filed a Complaint ("Complaint") against the defendants, setting forth five (5) claims for relief arising out of a loan agreement made on October 9, 2009 ("Loan Agreement") between Plaintiff and defendant MyCashNow.com, Inc. ("Defendant Mycashnow").  Specifically, Plaintiff alleged the following claims: (1) RICO Conspiracy; (2) Usury; (3) Fair Debt Collection Practices Act ("FDCPA"); (4) Breach of Fiduciary Duty and the Implied Duty of Confidentiality; and (5) Invasion of Privacy.  On February 26, 2016, the Moving Defendants filed a Motion to Dismiss Plaintiff's Complaint on several grounds, including on the basis of an arbitration clause within the Loan Agreement.

On March 17, 2016, Plaintiff filed an Amended Complaint ("First Amended Complaint") pursuant to Fed. R. Civ. P. 15(a)(1)(B).  The First Amended Complaint included the same five claims alleged in the Complaint, as well as an additional claim under the Pennsylvania Unfair

1

Trade Practices Consumer Protection Law ("UTPCPL").  On April 1, 2016, the Moving Defendants filed a Motion to Dismiss the First Amended Complaint.  In its brief in support of the motion, the Moving Defendants put Plaintiff on notice that they were expressly reserving the right to raise the issue of arbitration as grounds for dismissal if the Court did not dismiss *all* claims based on the arguments set forth in Defendant's Motion, which were entirely based on the pleadings and not on the merits.  (Dkt. No. 44, at p. 29, n. 19).

On March 31, 2017, the Court entered a Memorandum Order with respect to the Moving Defendants' Motion to Dismiss, granting Plaintiff's Motion as to the Usury, Breach of Fiduciary Duty, Implied Covenant of Confidentiality, and UTPCPL claims.  However, the Court did not dismiss the Amended Complaint in its entirety, and it *sua sponte* granted Plaintiff limited leave to amend the RICO and Usury Claims.  In its Order, the Court construed the Intent to Influence Claim broadly as having potentially alleged the specific Pennsylvania Invasion of Privacy Tort known as "intrusion upon exclusion."  On April 21, 2017, Plaintiff filed a Second Amended Complaint, amending both the RICO and Usury claims and some of the general allegations relating to the Usury claim (including removing prior allegations from the Complaint), but, otherwise, did not amend or seek leave to amend any other portions of the First Amended Complaint.

Because the Usury Claim, as amended, fails to allege the additional facts the Court required to survive the Statute of Limitations, the Usury Claim should be dismissed.  Because the RICO Claim as alleged demonstrates that an enterprise was not in existence at the time of the alleged collection call, and the FDCPA Claim as alleged demonstrates that none of the Defendants could have placed the collection call, both of those Claims should be dismissed. Because the Invasion of Privacy Claim fails to allege any facts to support the elements of the tort

defined by the Court in its Order, it should be dismissed.[1]  Further, because the Loan Agreement

contains a binding arbitration clause, which Plaintiff agreed to by clicking "I Agree" on the

website when completing the loan application, this Court should compel arbitration with respect

to any remaining claims alleged in the Second Amended Complaint, although assuming the

Court grants this Motion to Dismiss in its entirety, no claims will remain.

## II.    THE RULE 12(B)(6) STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a Plaintiff

must meet the pleading standard set out in Bell Atlantic v. Twombly, 550 U.S. 544 (2007) and its

progeny.  Accordingly:

> a plaintiff must make a "short and plain statement" providing the
> "grounds" of his "entitlement to relief." Bell Atlantic v. Twombly,
> 550 U.S. 544, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)
> (quoting Rule 8(a)(2)). This requires more than a statement that is
> merely *consistent with* a valid theory of recovery. Id. The
> statement must include "enough factual matter (taken as true) to
> *suggest*" a right to relief. Id. (parentheses in original) (emphasis
> added). That is, the statement must have "enough heft to show that
> the pleader is entitled to relief." Id. at 1966 (internal quotation
> marks omitted). It must "raise a right to relief above a speculative
> level." Id. at 1964.

Babyage.com, Inc. v. Toys ""R" Us, Inc., 558 F. Supp. 2d 575, 580 (E.D. Pa. 2008).

In adjudicating such a motion, the Court "must look beyond conclusory statements."  Twombly,

550 U.S. at 555 & n. 3.   The Third Circuit has stated that "[t]he test, as authoritatively

---

[1] Should the Court dismiss both the RICO and FDCPA Claim, then the Invasion of
Privacy Claim should also be dismissed on the basis that the Court lacks jurisdiction over this
state claim due to no federal claim remaining.  See e.g. Rothman v. City of Northfield, 716 F.
Supp. 2d 369, 372–73 (D.N.J. 2010) ("Under 28 U.S.C. § 1367(c), it is appropriate for a district
court to decline supplemental jurisdiction over state law claims if . . . the district court has
dismissed all claims over which it has original jurisdiction."); Doheny v. Pennsylvania, CV 16-
1744, 2017 WL 1493857, at *2 (W.D. Pa. Apr. 26, 2017) (declining supplemental jurisdiction
over state law claims when all federal claims were dismissed); see generally 28 U.S.C. §
1367(c).

3

formulated by <u>Twombly</u>, is whether the complaint alleges enough facts to state a claim to relief that is plausible on its face, which is to say, enough facts to raise a reasonable expectation that discovery will reveal evidence of illegality." <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 319 (3d Cir. 2010) (internal citations and quotation marks omitted).

**III.    THE RICO CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, BECAUSE NO ENTERPRISE WAS IN EXISTENCE AT THE TIME THE ALLEGED WRONGFUL CONDUCT OCCURRED**

In denying Defendants' prior motion to dismiss the RICO Claim, the Court found that "[t]he facts alleged plausibly imply that the Defendants together had a common purpose, a relationship, and longevity." Order, Docket No. 93, at p. 10.  The Court, however, also granted leave for Plaintiff to amend the RICO Claim to clarify whether they had alleged a substantive RICO claim under Section 1962(d) or solely a RICO Conspiracy claim under Section 1962(d). The Plaintiff chose to do so simply by adding two references to Section 1962(c) to their RICO Claim.  However, they also added the following language to paragraph 65 (in the Usury Claim): "Defendants operated their illegal payday business under their present names on a nationwide basis until or around September 13, 2013. . ."

In their Second Amended Complaint, Plaintiff chose to allege only two specific dates (having even dropped any reference to the date of the loan at issue). In paragraph 42 of the Second Amended Complaint, Plaintiff alleges "[t]hereafter, on October 23, 2014, Plaintiff Aurandt was contacted by agents or employees of MyCashNow and told to pay the sum of $1,100."  Then, in paragraph 65 of the Second Amended Complaint, Defendant added the language noted above regarding the defendants having ceased operations by September 13, 2013.

This amendment is fatal to the RICO Claim.[2]

It is axiomatic that to plead any cause of action for civil RICO, the enterprise must have been in existence at the time of the alleged wrongdoing (here the alleged collection call) since there cannot be a RICO conspiracy or substantive RICO claim if the enterprise or members thereof were not involved in the wrongful act.  See Order, Docket No. 93, at pp. 7-8 and 10 (noting that RICO requires proof of an enterprise and "longevity sufficient to permit these associates to pursue the enterprise's purpose").   Here, Plaintiff in the Second Amended Complaint admits that the defendants (and therefore the enterprise) ceased operations on September 13, 2013.  Second Amended Complaint ¶65.   Therefore, the alleged phone call seeking $1,100 from the plaintiff that was made on October 23, 2014, approximately 13 months after the enterprise ceased according to Plaintiff, could not have been the defendants or their alleged enterprise.  Accordingly, any "longevity sufficient to permit" Defendants "to pursue the enterprise's purpose" had long ended.  Hence, the RICO count must be dismissed.

## IV.   THE USURY CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, BECAUSE THE LAW OF THE CASE MANDATES DISMISSAL, AND BECAUSE PLAINTIFF'S AMENDMENTS ARE INCONSISTENT WITH THIS COURT'S ORDER OF MARCH 31, 2017

On March 31, 2017, this Court granted Plaintiff *limited* leave to "supplement[]" her usury claims so as to provide Plaintiff the opportunity to plead (if the facts supported it) that she made usurious payments on the loan after the alleged collection call was made.  (Docket No. 93).  Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent *or the court's leave*" (emphasis added), and here the Court only granted Plaintiff leave to "supplement" her usury allegations concerning the dates that she

---

[2] Defendants incorporate by reference all previous arguments made in their prior Motion to Dismiss.

made allegedly usurious payments on the loan.  Rather than amending the usury claim with such information, because Plaintiff, in fact, made no payments after the alleged collection call, Plaintiff instead *removed* factual averments from the Complaint relating to the usury allegations and inserted information implying that other borrowers may have made such payments within the statute of limitations.  However, the Court granted Plaintiff leave to amend her complaint only on the limited grounds set forth in the Court's Order and Plaintiff, without seeking leave of Court, made amendments that clearly exceeded the scope of the Court's Order.

Moreover, under the substantive standard applied to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiff has failed to set forth a claim upon which relief can be granted as her allegations do not set forth a timely claim.  Plaintiff's Second Amended Complaint now provides no timeline concerning the Named Plaintiff's payments on the loan referenced therein.  In her earlier pleadings, Plaintiff admitted that she had entered into the loan agreement on October 9, 2009.  (Compl., Docket No. 1, at ¶ 39; First Am. Compl., Docket No. 35, ¶ 39).  However, in the Second Amended Complaint Plaintiff excised all references to the dates of the loan, ostensibly in a misguided effort to circumvent the four-year statute of limitations.  The only allegation concerning the dates of the alleged loan is that Plaintiff allegedly received a phone call concerning the loan on October 23, 2014.  (Complaint, Docket No. 1, at ¶ 40; First Am. Compl., Docket No. 35, ¶ 40).

As this Court noted in its opinion of March 31, 2017, a four-year statute of limitations applies to usury claims under Pennsylvania law.  Aurandt v. Brown, CV 3:15-275, 2017 WL 1215451, at *6 (W.D. Pa. Mar. 31, 2017); see also 41 Pa. Cons. Stat. § 502.  Specifically, "a plaintiff may recover for usury only for interest and charges paid in excess of what is allowed by law within four years of when the lawsuit is commenced."  Brown, 2017 WL 1215451, at *6.

Here, Plaintiff, like in her earlier pleadings, has made no allegations concerning any loan payments made within four years of her filing her complaint.[3]  Accordingly, Plaintiff has failed to plead facts that set forth that she is entitled to relief.[4]  The law is clear that a pleading must set forth facts that show an entitlement to relief beyond the speculative level.  See e.g., Twombly, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.").  Plaintiff's pleading falls far below the Twombly standard and should be dismissed as she has not set forth any allegations that actionable usurious conduct occurred within the four-year statute of limitations.

Moreover, because Plaintiff's Second Amended Complaint merely parrots her First Amended Complaint (with respect to her loan), while setting out *even less* factual averments than in her First Amended Complaint, this Court's adjudication of the Usury Claim in its Order of March 31, 2017 remains the law of the case.[5]  Given that no extraordinary circumstances exist for this Court to revisit its prior decision, this Court should follow the law of the case doctrine

---

[3] The initial Complaint was filed on October 23, 2015.

[4] The fact that other putative class members could potentially pursue relief does not aid Plaintiff.  C.f. Allee v. Medrano, 416 U.S. 802, 828–29 (1974) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.").

[5] See e.g., Glunk v. Pennsylvania State Bd. of Med., 1:14-CV-659, 2016 WL 8730861, at *7 (M.D. Pa. Sept. 12, 2016), report and recommendation adopted, 1:14-CV-00659, 2016 WL 8710469 (M.D. Pa. Sept. 30, 2016) (law of the case compelled dismissal of amended complaint where amended complaint largely parroted earlier complaint); Harbison v. Louisiana-P. Corp., 13CV0814, 2014 WL 794319, at *4 (W.D. Pa. Feb. 27, 2014), aff'd, 602 Fed. Appx. 884 (3d Cir. 2015) (unpublished) (attempt to amend complaint was futile where it was simply a way to evade law of the case that stood contrary to plaintiff's position); Prod. Source Intl., LLC v. Foremost Signature Ins. Co., CV 15-8704 (JBS/JS), 2017 WL 627428, at *3 (D.N.J. Feb. 15, 2017) (law of the case applied to motion to dismiss amended complaint).

and dismiss the Usury Claim on that ground also.  See generally United States. v. Union Corp., 194 F.R.D. 223, 239 (E.D. Pa. 2000) ("Law of the case directs this court's exercise of its discretion and suggests that this court should be 'loathe' to revisit prior decisions in the absence of extraordinary circumstances, such as where the initial decision was clearly erroneous and where adherence to it would work a manifest injustice, where new evidence is available, or where supervening new law has been announced.") (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988)).

**V.   THE FDCPA CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, BECAUSE NONE OF THE DEFENDANTS COULD HAVE PLACED THE COLLECTION CALL SINCE THEY WERE NO LONGER OPERATING**

This Court has previously ruled that "[i]n order to prevail on an FDCPA claim, Plaintiff must prove that: (1) she is a consumer; (2) the Defendant is debt collector within the meaning of the act; (3) the challenged practice involves an attempt to collect on a debt as defined by the FDCPA; and (4) *the Defendant has violated a provision of the FDCPA in attempting to collect the debt.* Aurandt v. Brown, No. 3:15-275, 2017 U.S. Dist. LEXIS 48725, at *18-19 (W.D. Pa. Mar. 31, 2017)(emphasis added).  As with the RICO count in the Second Amended Complaint, the FDCPA count must be dismissed based upon similar grounds.

Plaintiff admits the defendants ceased operations on September 13, 2013.  Second Amended Complaint, at ¶ 65).  Plaintiff also admits the alleged phone call from the Altoona Police Department occurred on October 23, 2014.  (Second Amended Complaint, at ¶ 42).  Very simply, by her own pleading, plaintiff cannot establish that any of the Defendants "violated a provision of the FDCPA in attempting to collect the debt."  In fact, it establishes the opposite--- that none of the Defendants could have made the collection call on October 23, 2014, since they had ceased operations by September 13, 2013.    This count must be dismissed.

**VI.   THE INVASION OF PRIVACY CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THERE ARE NO FACTS ALLEGED TO SUPPORT THE ELEMENTS FOR THAT CLAIM**

In its original Complaint, First Amended Complaint, and Second Amended Complaint, as the basis for its claim of Invasion of Privacy, Plaintiff alleged (1) an alleged violation of the Gramm-Leach-Bailey Act; and (2) an alleged violation of unspecified "various state laws protecting personal information and personal financial information." (Complaint, Dkt. No. 1, at p. 18, ¶ 78; First Am. Complaint, Dkt. No. 35, at p. 18, ¶ 82; Second Am. Complaint, Dkt. No. 95, at p. 16, ¶ 79). Plaintiff also has alleged that Defendants disclosed personal information obtained from Plaintiff to "third parties who then engaged in an illegal scheme of unlawful debt collection;" and that Defendants' "knew or should have known that these third parties . . . would use the improperly disclosed personally identifiable information for the purposes of an illegal scheme of unlawful debt collection." (Complaint, Dkt. No. 1, at p. 18, ¶ 79-80; First Am. Complaint, at p. 18, ¶ 83-84; Dkt. No. 35, at ; Second Am. Complaint, Dkt. No. 95, at p. 16-17, ¶ 80-81)

In its Opinion adjudicating Defendants' Motion to Dismiss the First Amended Complaint, the Court agreed with Defendants that no private cause of action exists for violations of the Gramm-Leach-Bliley Act, but found that Pennsylvania does recognize a private cause of action for invasion of privacy. (Dkt. No. 93, at 19-20) (citing Krajewski v. Gusoff, 53 A.3d 793, 805-06 (Pa. Super. Ct. 2012). As the Court noted, however, under Pennsylvania law "[a] cause of action for invasion of privacy is 'actually comprised of four analytically distinct torts: 1) intrusion upon seclusion, 2) appropriation of name or likeness, 3) publicity given to private life, and 4) publicity placing a person in false light.'" Id. at 20 (citing Krajewski, 53 A.3d at 805, quoting Larsen v. Philadelphia Newspapers, Inc., 543 A.2d 1181, 1188 (1988)). Of the above

9

four choices, the Court reasoned that the only *potentially* applicable one is the first, namely a "claim for invasion of privacy through the tort of intrusion upon seclusion." Id.  However, as the Court recognized:

> To state a cause of action for the tort of invasion of privacy in Pennsylvania, a plaintiff must aver that there was an intentional intrusion on the seclusion of their private concerns which was substantially and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of normal sensibilities." Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002).

Id.

Not only has Plaintiff failed to satisfy the Twombly standard by failing to allege in their Second Amended Complaint "enough facts to state a claim to relief that is plausible on its face," but Plaintiff also has failed to even allege a "threadbare recital of the elements" for the intentional tort of "intrusion upon seclusion."   As the Court observed, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." (Opinion, Dkt. No. 93, at 6) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Here, Plaintiff makes no allegation regarding (and alleges no facts to support) the required elements, including failing to allege (1) an intentional intrusion on the seclusion of their private concerns; (2) that any such intrusion was substantially and highly offensive to Plaintiff; and (3) that the information disclosed caused Plaintiff mental suffering, shame, or humiliation.  Hence, the Court should dismiss the Invasion of Privacy Count since it fails to allege facts supporting the elements of the intentional tort of "intrusion upon exclusion."

VII.   **IF THE COURT DOES NOT DISMISS ALL CLAIMS, THEN THE COURT
SHOULD COMPEL ARBITRATION ON ANY REMAINING CLAIMS
PURSUANT TO THE ARBITRATION CLAUSE IN THE LOAN AGREEMENT**

### A.  The Applicable Legal Standard

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA"), makes arbitration agreements "enforceable to the same extent as other contracts."  <u>Alexander v. Anthony Intern., L.P.</u>, 341 F.3d 256, 263 (3d Cir. 2003).  The FAA provides, in pertinent part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.  In the Third Circuit, *"when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause,   a motion to compel arbitration should   be   considered   under a Rule 12(b)(6) standard without discovery's delay."*  <u>Guidotti v. Legal Helpers Debt Resolution, LLC</u>, 716 F.3d 764, 776 (3d Cir. 2013).

### B.  This Court Should Compel Arbitration on Any Remaining Claims

Plaintiff and Defendant MyCashNow entered into the Loan Agreement referenced in the Second Amended Complaint on October 9, 2009.  *See* Second Amended Complaint ¶ 39.  The Loan Agreement contains an arbitration clause, which provides as follows:

> **AGREEMENT TO ARBITRATE DISPUTES**
> You hereby agree that disputes and controversies *of every kind and nature* between the parties hereto *arising out of or in connection with this agreement as to the* existence, construction, validity, interpretation or meaning, *performance,* nonperformance, enforcement, operation, breach, continuance, or termination

11

therefore, as well as whether the controversy or dispute is subject to arbitration, and the amount of any loss or damage, shall be submitted to arbitration in a jurisdiction to be chosen by MyCashnow.com, Inc. pursuant to the commercial rules of the American Arbitration Association in effect at the time any arbitration proceeding is commenced, which rules are hereby incorporated by reference thereto and made a part of this agreement. The claim individually as provided above [sic]. This agreement not to bring or participate in class action suits is an independent agreement and shall survive the closing and repayment of the loan for which you are applying.

*See* Dkt. No. 29-1 (emphasis added).[6]  By clicking on "I Agree" in the online loan application,[7]

Plaintiff contractually agreed to submit the claims set forth in the Second Amended Complaint to

arbitration.[8]

---

[6] Moving Defendants had previously attached this loan agreement as Exhibit 1 to their Motion to Dismiss the original Complaint (Dkt. No. 29-1); and it was referenced by Plaintiffs in their Brief in Opposition to Defendants Motion to Dismiss the First Amended Complaint (Dkt. No. 53, at p. 12, n. 9, at p. 20, n. 11), and attached by Plaintiffs as Exhibit A thereto.  (Dkt. No. 53-1).

[7] The Loan Agreement states "By clicking 'I Agree' below you also agree to the Agreement to Arbitrate Disputes and the Agreement Not to Bring or Participate in Class Action Lawsuits." (Dkt. No. 29-1).  Once referred to Arbitration, the Moving Defendants intend to move to dismiss the Class Action allegations based upon, among other reasons, this class action waiver in the loan agreement.

[8] The arbitration clause is binding on Plaintiff as to all Moving Defendants given the close relationships between Moving Defendants, the broad scope of the arbitration clause, the fact that all claims arise from and relate to the loan agreement, and that all claims against the defendants are closely intertwined.  See, e.g., Bannett v. Hankin, 331 F. Supp. 2d 354, 361 (E.D. Pa. 2004) (non-signatories to arbitration agreement could compel arbitration where plaintiff's claims arose out of the agreement which included the arbitration clause); Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc., 998 F.2d 145, 155 (3d Cir. 1993); Leighton v. Chesapeake Appalachia, LLC, 1:13-CV-2018, 2013 WL 6191739, at *8 (M.D. Pa. Nov. 26, 2013); Kingsley Capital Mgt., LLC v. Sly, 820 F. Supp. 2d 1011, 1026 (D. Ariz. 2011); see also Thomson-CSF, S.A. v. Am. Arb. Ass'n, 64 F.3d 773, 779 (2d Cir. 1995) ("[T]he circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed"); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d Cir. 1993) (non-signatory "corporate sister" of signatory within scope of arbitration agreement); E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 199–200 (3d Cir. 2001); see generally Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d Cir. 1993) ("Where the parties to [an arbitration] clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to the signatories.").

It is well-settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp., 103 S. Ct. 927, 941 (1983). See also, Shearson/American Express Inc. v. McMahan, 42 U.S. 220, 239 (1986) (RICO cases are subject to arbitration agreements); Sherer v. Green Tree Servicing LLC, 548 F.3d 379 (5th Cir. 2008) (FDCPA claims subject to arbitration); Hornicek v. Cardworks Servicing, LLC, 2011 WL 2623274 (E.D. Pa June 29, 2011) (compelling arbitration of plaintiff's FDCPA claims); Clerk v. Cash Am. Net of Nevada, LLC, CIV.A. 09-2245, 2011 WL 3740579, at *1 (E.D. Pa. Aug. 25, 2011) (enforcing arbitration clause in "payday" loan agreement); King v. Adv. Am., CIV.A. 07-237, 2011 WL 3861898, at *8 (E.D. Pa. Aug. 31, 2011) (enforcing arbitration clause in "payday" loan agreement); Alfeche v. Cash Am. Intern., Inc., CIV.A. 09-0953, 2011 WL 3565078, at *5 (E.D. Pa. Aug. 12, 2011) (enforcing arbitration clause in "payday" loan agreement); Black v. JP Morgan Chase & Co., CIV.A. 10-848, 2011 WL 3940236, at *23 (W.D. Pa. Aug. 25, 2011), report and recommendation adopted, 2:10CV848, 2011 WL 4089411 (W.D. Pa. Sept. 14, 2011) (enforcing arbitration provision in credit card agreement); see generally Medtronic AVE Inc. v. Cordis Corp., 100 Fed. Appx. 865, 869 (3d Cir. 2004) (unpublished) (abiding by "the long line of cases that hold that arbitrability is ultimately a question for the arbitrator to resolve"); Sharon Steel Corp. v. Jewell Coal and Coke Co., 735 F.2d 775, 779 (3d Cir. 1984) ("[T]he Federal Arbitration Act gives the arbitrator the power to determine the scope of the arbitration clause as well as the substantive merits of the claim.").

Because the Loan Agreement is relied upon by Plaintiff as the basis for the claims set forth in the Second Amended Complaint and the arbitration clause is apparent from the face of

the loan agreement, this Court should compel arbitration on any remaining claims in the Second Amended Complaint.

## C. **CONCLUSION**

For the foregoing reasons, this Court should dismiss the RICO, Usury, FDCPA, and Invasion of Privacy Claims, and compel arbitration of any remaining claims (although none will remain if our Motion to Dismiss is granted in its entirety) in Plaintiffs' Second Amended Complaint.[9]

DATED: May 5, 2017

Respectfully Submitted,

INMAN FLYNN BIESTERFELD & BRENTLINGER, P.C.

By:            /s/ James M. Lord
James M. Lord (admitted *Pro Hac Vice*)
Colorado Bar No. 40747
INMAN FLYNN BIESTERFELD & BRENTLINGER, P.C.
1800 Gaylord Street
Denver, CO 80206
Tel:   (303) 861-5300

Attorneys for Moving Defendants

---

[9] Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), the time for filing an Answer to the Second Amended Complaint is tolled until 14 days after notice of the Court's ruling on this Motion.

14

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on May 5, 2017 the foregoing was filed electronically with the Clerk of the Court, using the CM/ECF system. Notice of the filing was sent to all parties who have appeared of record by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Those parties may access this filing through the Court's ECF system.

DATED: May 5, 2017         INMAN FLYNN BIESTERFELD & BRENTLINGER, P.C.

By:      /s/ James M. Lord
          James M. Lord, Esq.
          Counsel for Moving Defendants

15